**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| TRYON P. SISSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 20-05101-CV-SW-BP |
| v. | ) | |
| | ) | |
| | ) | |
| MANISH PATEL, PUSHPAK PATEL, | ) | |
| MITRA CAMDENTON, LLC, | ) | |
| MITRA NEOSHO, LLC, | ) | |
| MITRA MT VERNON, LLC, | ) | |
| MITRA HEDGEHOG, LLC, | ) | |
| CMG OPERATIONS, LLC, | ) | |
| MITRA MIDWEST OPERATIONS, LLC, | ) | |
| CHALAK MITRAS GROUP, LLC, and | ) | |
| KFC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT KFC CORPORATION'S RENEWED RULE 12(b)(6) MOTION TO
DISMISS AND SUGGESTIONS IN SUPPORT**

JENNER & BLOCK LLP
Daniel J. Weiss  ARDC No. 6256843
*Pro Hac Vice*
Kaitlin M. Leskovac  ARDC No. 6327228
*Pro Hac Vice*
353 North Clark Street
Chicago, Illinois 60654-3456

SCHARNHORST AST KENNARD GRIFFIN, PC
James D. Griffin        MO #33370
Cameron E. Grant        MO #72225
1100 Walnut, Suite 1950
Kansas City, Missouri 64106

*Attorneys for Defendant KFC Corporation*

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 5

I.  Sisson Fails To State A Claim For Tortious Interference Against KFC Corporation
(Count IV). .............................................................................................................. 6

    A.  The Amended Complaint Lacks Allegations That KFC Caused Or Induced A
Breach. ........................................................................................................6

    B.  The Amended Complaint Does Not Allege An Absence of Justification. ...................8

    C.  The Amended Complaint Does Not Allege A Valid Business Expectancy. ..............10

II.  Sisson Fails To State A Claim For Civil Conspiracy Against KFC Corporation
(Count V) ............................................................................................................... 12

III.  Independently, All Of Sisson's Claims Against KFC Corporation Are Time-Barred. ....... 13

CONCLUSION .................................................................................................................. 15

Case 3:20-cv-05101-BP   Document 39   Filed 01/22/21   Page 2 of 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Thompson Coburn LLP*,
   540 S.W.3d 910 (Mo. Ct. App. 2018).....................................................................................14

*Aitro v. Clapper*,
   No. 05-3120-CV-S-RED, 2005 WL 1384063 (W.D. Mo. June 8, 2005) ...............................14

*Allen v. Martin, Leigh & Laws, PC*,
   No. 6:18-03100-CV-RK, 2019 WL 470915 (W.D. Mo. Feb. 6, 2019) ..................................14

*Am. Traffic Sols., Inc. v. B & W Sensors, LLC*,
   No. 4:13CV0229 AGF, 2014 WL 1272509 (E.D. Mo. Mar. 27, 2014)..................................10

*Ariel Preferred Retail Grp., LLC v. CWCapital Asset Mgmt.*,
   No. 4:10CV623SNLJ, 2011 WL 4501049 (E.D. Mo. Sept. 28, 2011)...............................8, 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................................13

*Baldwin Props., Inc. v. Sharp*,
   949 S.W.2d 952 (Mo. Ct. App. 1997).....................................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................................5

*Birdsong v. Bydalek*,
   953 S.W.2d 103 (Mo. Ct. App. 1997).....................................................................................6

*Bootheel Ethanol Invs., L.L.C. v. Semo Ethanol Coop.*,
   No. 1:08CV59SNLJ, 2009 WL 398506 (E.D. Mo. Feb. 17, 2009) ........................................12

*Brown v. Great Circle*,
   No. 2:19-cv-04135-NKL, 2019 WL 6534163 (W.D. Mo. Dec. 4, 2019) ...............................12

*Bryan v. Sedgwick, LLP*,
   No. 16-CV-00278-W-BP, 2016 WL 9307475 (W.D. Mo. Aug. 2, 2016)
   (Phillips, J.)...........................................................................................................................5

*Church Mut. Ins. Co. v. Sands*,
   No. 14-CV-3119-S-DGK, 2014 WL 3385208 (W.D. Mo. July 9, 2014) ...........................7, 8

*Cook v. ACS State & Local Sols., Inc.*,
   663 F.3d 989 (8th Cir. 2011) .............................................................................................5, 13

*Glob. Control Sys., Inc. v. Luebbert*,
   No. 4:14-CV-657-DGK, 2016 WL 8730159 (W.D. Mo. Jan. 15, 2016).................................9

*Graham v. Hubbs Mach. & Mfg., Inc.*,
   92 F. Supp. 3d 935 (E.D. Mo. 2015).......................................................................................6

*Great Plains Tr. Co. v. Union Pac. R.R. Co.*,
   492 F.3d 986 (8th Cir. 2007) ................................................................................................13

*Hallmark Indus., Inc. v. Hallmark Licensing, LLC*,
   No. 4:18-CV-00236-DGK, 2018 WL 5828687 (W.D. Mo. Aug. 14, 2018) ..........................11

*Icard Stored Value Sols. L.L.C. v. W. Suburban Bank*,
   No. 4:07-CV-1539 CAS, 2008 WL 619236 (E.D. Mo. Mar. 3, 2008) ...................................11

*Kan. City Sand & Gravel, LLC v. Birmingham Drainage Dist.*,
   No. 08-0730-CV-W-SOW, 2009 WL 10672243 (W.D. Mo. Mar. 9, 2009) ...........................7

*Lancaster v. Bd. of Police Comm'rs*,
   No. 14-00171-CV-W-BP, 2014 WL 12884706 (W.D. Mo. July 1, 2014)
   (Phillips, J.) ....................................................................................................................13, 14

*Landers v. Monsanto Co.*,
   No. 1:17-CV-20-SNLJ, 2017 WL 3531378 (E.D. Mo. Aug. 17, 2017) .................................12

*Nettles v. UMB Bank, N.A.*,
   No. 03-00082-CV-W-GAF, 2010 WL 11618679 (W.D. Mo. Sept. 13, 2010).......................13

*PPW Royalty Tr. v. Barton*,
   No. 14-00513-CV-W-BP, 2015 WL 13263507 (W.D. Mo. Jan. 30, 2015)
   (Phillips, J.) .............................................................................................................................5

*Process Controls Int'l, Inc. v. Emerson Process Mgmt.*,
   No. 4:10CV645 CDP, 2011 WL 6091722 (E.D. Mo. Dec. 7, 2011) ......................................12

*Quality Res., Inc. v. Pfizer, Inc.*,
   No. 4:14-CV-1149 CEJ, 2015 WL 417997 (E.D. Mo. Jan. 30, 2015)..........................8, 9, 10

*Rolwing v. Nestle Holdings, Inc.*,
   437 S.W.3d 180 (Mo. 2014) ..................................................................................................13

*Salau v. Jones*,
   No. 2:14-cv-04307-NKL, 2015 WL 5999781 (W.D. Mo. Oct. 13, 2015)..............................12

*Trone Health Servs., Inc. v. Express Scripts Holding Co.*,
   No. 4:18-CV-467 RLW, 2019 WL 1207866 (E.D. Mo. Mar. 14, 2019) ..................................9

iii

*Wise Prop. Invs., LLC v. Manish Patel, et al.*,
 Case No. 6:14-cv-03014-BP (W.D. Mo.) (Phillips, J.).....................................................7, 15

**Statutes**

R. S. Mo. § 516.120(4) ...........................................................................................................14

R. S. Mo. § 516.110(1) ...........................................................................................................13

R. S. Mo. § 516.100 ................................................................................................................14

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................1, 5, 13, 15

Restatement (Second) of Torts § 766 cmt. h (Am. Law Inst. 1979) ..........................................6, 7

Restatement (Second) of Torts § 766B cmt. a (Am. Law Inst. 1979) ...........................................11

Federal Rule of Civil Procedure 9(b) ..........................................................................................10

Defendant KFC Corporation respectfully submits the following suggestions in support of its renewed motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the two counts Plaintiff Tryon P. Sisson asserts against it in his amended complaint (Dkt. 34, "Am. Compl.").

## INTRODUCTION

This case, a dispute between a landlord and his tenants, has virtually nothing to do with KFC Corporation. Sisson, the alleged landlord, leased three properties to KFC franchisees, not KFC Corporation. Sisson has disputes with those tenants related to the payment of rent and an assignment of the leases. KFC Corporation is not alleged to have been a party to any lease, any assignment, or any other agreement with Sisson. Indeed, KFC Corporation is not alleged to have ever interacted with Sisson in any way. As a matter of law, Sisson does not allege any basis to find that KFC Corporation somehow committed a tort against him.

Sisson amended his complaint after KFC Corporation and other defendants moved to dismiss his initial complaint, but Sisson has not repaired (and cannot repair) his fundamental failure to allege any valid claim against KFC Corporation. The gist of Sisson's amended complaint is that, in 2010, companies affiliated with the two individual defendants, Manish and Pushpak Patel, purchased three KFC franchises in Missouri that leased real estate from Sisson or his relatives. In 2011, one of those companies allegedly transferred the franchise businesses to new corporate affiliates also operated by the Patels (the "New Patel Franchisees"), including by assigning Sisson's leases to the New Patel Franchisees. In 2012, the New Patel Franchisees allegedly began failing to pay the full rent under the leases. Sisson has thus sued the Patels and various of their companies for the unpaid rent (Count I); the alleged wrongful assignments of the leases (Count II); and for allegedly tortiously interfering with the leases (Count III).

What do these allegations have to do with KFC Corporation? Very little, and certainly not enough to state a claim. Each of Sisson's leases allegedly provided that the tenant could assign

1

the lease without Sisson's consent so long as the assignee was a franchisee of KFC. KFC Corporation is not alleged to have had anything to do with that provision, which was part of a contractual agreement between Sisson and his tenants (not KFC Corporation). Nonetheless, Sisson apparently contends that by including such a provision in his leases, he created a duty for KFC Corporation to license only franchisees meeting "requirement[s] of proven operational experience" and "financial qualifications." (Am. Compl. ¶ 75.) Sisson alleges the New Patel Franchisees did not meet those qualifications, so KFC Corporation should not have licensed them. By licensing the new entities, KFC Corporation allegedly "facilitat[ed]" the assignments of the leases to the New Patel Franchisees, which later failed to pay the full rent. (*Id.* ¶ 116.) From those faulty leaps, Sisson concludes that KFC Corporation tortiously interfered with the leases and his business expectancies (Count IV) and conspired with the other defendants (Count V).

KFC Corporation established in its initial motion to dismiss why each count against it fails. In response, Sisson dropped one of his invalid claims against KFC Corporation (for aiding and abetting), but made no change to the underlying facts he alleges in support of his other theories. Sisson's general factual allegations against KFC Corporation, (*id.* ¶¶ 71-79), have not changed and, with respect to his allegations under Counts IV and V, (*id.* ¶¶ 113-28), he has made only cosmetic changes. These slight modifications do not establish any claim against KFC Corporation.

As before, Sisson's claims against KFC Corporation fail as a matter of law. KFC Corporation had no duty to Sisson—a third-party landlord with no relationship to KFC Corporation—with regard to the businesses that KFC Corporation elected to approve as franchisees. Sisson could not create such a duty merely by referring to KFC Corporation in a lease. If a party chooses to refer to the actions of a third party in its contract, it cannot sue the third party for "interfering" with the contract if it later disagrees with the third party's decision. KFC

2

Corporation did not agree to restrict its own business judgments for the benefit of Sisson, nor does the amended complaint establish any other limit on KFC Corporation's unqualified legal right to approve franchisees as it chooses. The amended complaint also does not allege that KFC Corporation induced any purported breach of the leases. Sisson similarly fails to allege a valid business expectancy. As a matter of law, Sisson has not alleged any valid tortious interference claim against KFC Corporation.

Sisson's tag-along claim for conspiracy also fails with respect to KFC Corporation. The amended complaint still lacks any non-conclusory allegations establishing an unlawful meeting of the minds between KFC Corporation and the other defendants.

As an independent matter, Sisson's claims against KFC Corporation are untimely. Each of Sisson's claims against KFC Corporation is subject to a five-year statute of limitations. Sisson's own allegations continue to establish that his claims accrued in 2012, at the latest. The limitations period thus expired well before Sisson filed his initial complaint in 2020.

Sisson has taken the opportunity to amend his pleading against KFC Corporation and has again failed to state a valid claim. For each reason, KFC Corporation respectfully requests that the Court dismiss all claims against KFC Corporation with prejudice.

## BACKGROUND[1]

***The leases.*** Sisson and his family members own three properties in Missouri that they have leased to businesses that operate KFC-franchised restaurants: the Camdenton property, the Neosho property, and the Mt. Vernon property. (Am. Compl. ¶¶ 17-18, 20-21, 23-24.)[2] Each lease

---

[1] The factual contentions contained herein are based on Sisson's amended complaint and are taken as true solely for purposes of this motion to dismiss.

[2] Sisson alleges that he brings this suit individually as the named landlord for the Camdenton and Neosho properties, and "as attorney-in-fact pursuant to executed Powers of Attorney for the other

3

provided that the tenant could assign its tenancy under the lease without the landlord's consent if the assignee was another business licensed as a KFC franchisee. (*Id.* ¶ 37.)

In or around November 2010, companies affiliated with the Patels purchased the three KFC franchise businesses operating in the Sisson-owned properties. (*Id.* ¶¶ 19, 22, 25-27, 30.) As part of the transaction, those businesses assigned their interests under the leases for the three Sisson-owned properties to a company affiliated with the Patels, Mitra Hedgehog, LLC ("Mitra Hedgehog"). (*Id.* ¶¶ 19, 22, 25, 30, 33.)

In March 2011, Mitra Hedgehog allegedly assigned its interests in the leases for the three Sisson-owned properties to the New Patel Franchisees, which were three companies also controlled by the Patels: Mitra Camdenton, LLC; Mitra Neosho, LLC; and Mitra Mt Vernon, LLC. (*Id.* ¶¶ 19, 22, 25, 29.) Each of those entities was a licensed KFC franchisee. (*Id.* ¶ 38.) In August 2011, Sisson "entered into amendments of those leases," including a reduction in the rent through July 2012. (*Id.* ¶ 41.) But when the rent reduction period ended in August 2012, the tenants allegedly continued to pay the reduced rent rather than the full rent. (*Id.* ¶¶ 43, 47, 49.) Sisson alleges that each of the New Patel Franchisees owes him unpaid rent from August 1, 2012 to the present, currently totaling approximately $1.3 million. (*Id.* ¶¶ 44, 48, 50.)

**Sisson's claims.** In Count I, Sisson has sued the Patels and their companies for the unpaid rent. (*Id.* ¶¶ 80-99.)

In Count II, Sisson has sued Mitra Hedgehog for alleged breaches of the duty of good faith and fair dealing because, he contends, the March 2011 assignments of the leases from that company to the New Patel Franchisees "evaded the spirit of the leases." (*Id.* ¶¶ 100-04.)

---

named landlord . . . on those properties," Sisson's wife, and the named landlords for the Mt. Vernon property, Sisson's parents. (Am. Compl. ¶ 2.) "Sisson" is used to refer to all landlords.

4

In Count III, Sisson has sued the Patels and several of their companies for allegedly tortiously interfering with the leases. (*Id.* ¶¶ 105-12.)

In Count IV, Sisson has sued KFC Corporation for allegedly tortiously interfering with the leases and his business expectancies. (*Id.* ¶¶ 113-21.) According to Sisson, KFC Corporation should not have approved the New Patel Franchisees to be KFC franchisees because those companies did not meet alleged "operational" or "financial" requirements to be franchisees. (*Id.* ¶ 75.) By approving the New Patel Franchisees, KFC Corporation allegedly "facilitat[ed]" the assignments of the leases to those entities. (*Id* ¶¶ 72-74, 116.)

In Count V, Sisson alleges that all of the defendants have taken part in a "civil conspiracy" to cause breaches of the leases. (*Id.* ¶¶ 122-28.)

## ARGUMENT

The Court should dismiss all counts against KFC Corporation with prejudice. "Dismissal under Rule 12(b)(6) is proper where the complaint fails to state a claim upon which relief can be granted." *PPW Royalty Tr. v. Barton*, No. 14-00513-CV-W-BP, 2015 WL 13263507, at *1 (W.D. Mo. Jan. 30, 2015) (Phillips, J.). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires specific facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bryan v. Sedgwick, LLP*, No. 16-CV-00278-W-BP, 2016 WL 9307475, at *1 (W.D. Mo. Aug. 2, 2016) (Phillips, J.) (quotation marks omitted). In ruling on a motion to dismiss, the court must accept the plaintiff's factual allegations as true, "but is not bound to accept as true a legal conclusion couched as a factual allegation." *Cook v. ACS State & Local Sols., Inc.*, 663 F.3d 989, 992 (8th Cir. 2011) (quotation marks omitted). Sisson's claims against KFC Corporation fail under those standards.

## I. Sisson Fails To State A Claim For Tortious Interference Against KFC Corporation (Count IV).

Sisson's Count IV against KFC Corporation for tortious interference fails as a matter of law. A claim for tortious interference with a contract or business expectancy requires: (1) a contract or valid business expectancy; (2) the defendant's knowledge of the contract or relationship; (3) "intentional interference by the defendant inducing or causing a breach of the contract or relationship"; (4) the absence of justification; and (5) damages. *Graham v. Hubbs Mach. & Mfg., Inc.*, 92 F. Supp. 3d 935, 943 (E.D. Mo. 2015).

As with his initial complaint, Sisson's Count IV fails because the amended complaint lacks fact-based allegations of: (a) intentional interference by KFC Corporation; and (b) an absence of justification. Rather than alleging new facts, Sisson instead attempts to tack-on a new legal theory that KFC Corporation interfered with an alleged business expectancy in addition to the leases. (*E.g.*, Am. Compl. ¶¶ 114-16.) This tactic does not save Count IV, because the amended complaint does not establish any valid business expectancy. Count IV should be dismissed.

### A. The Amended Complaint Lacks Allegations That KFC Caused Or Induced A Breach.

A required element of a tortious interference claim is "intentional interference by the defendant inducing or causing a breach of the contract or relationship." *Graham*, 92 F. Supp. 3d at 943. Inducing a breach "refers to . . . situations in which A ***causes*** B to choose one course of conduct rather than another . . . by persuasion or intimidation." Restatement (Second) of Torts § 766 cmt. h (Am. Law Inst. 1979) (emphasis added); *see also Birdsong v. Bydalek*, 953 S.W.2d 103, 111-12 (Mo. Ct. App. 1997) (citing § 766 and comment h with approval). Causing a breach "refers to . . . situations in which ***A leaves B no choice***," such as where "A destroys the goods that B is about to deliver to C." Restatement (Second) of Torts § 766 cmt. h (emphasis added). In Missouri, courts apply a two-part test with respect to these concepts: (1) whether "the defendant

6

***actively and affirmatively takes steps to induce the breach***; and (2) whether "the contract would have been performed absent interference from the defendant." *Church Mut. Ins. Co. v. Sands*, No. 14-CV-3119-S-DGK, 2014 WL 3385208, at *5 (W.D. Mo. July 9, 2014) (emphasis added) (quotation marks omitted).

Sisson's amended complaint lacks fact-based allegations establishing any of those requirements. The amended complaint does not allege facts that even approach establishing that KFC Corporation brought about any purported breach by persuasion or intimidation, or that, as a result of KFC Corporation's actions, the other defendants were left with no choice regarding their performance under the leases. *See* Restatement (Second) of Torts § 766 cmt. h; *cf. Kan. City Sand & Gravel, LLC v. Birmingham Drainage Dist.*, No. 08-0730-CV-W-SOW, 2009 WL 10672243, at *2 (W.D. Mo. Mar. 9, 2009) (finding the plaintiff did not allege intentional interference where the defendant "did not ask to be involved" in a permitting process between the plaintiff and a city; rather, the city conditioned permit approval on the defendant's recommendation, which the defendant had refused to provide). Indeed, at most, Sisson appears to allege that KFC Corporation *failed to prevent* the assignment of the leases, because it approved the New Patel Franchisees as KFC franchisees. (*E.g.*, Am. Compl. ¶¶ 38, 72.) Nothing in the Restatement or Missouri law, however, makes a non-party to a contract liable in tort for *failing to prevent* some other party's alleged contractual breaches.[3] Count IV thus falls well short of establishing that KFC Corporation "actively and affirmatively" did anything to "induce" the breach of which Sisson complains. *See Church Mut. Ins. Co.*, 2014 WL 3385208, at *5.

---

[3] Notably, in 2014, another landlord of a KFC franchisee, represented by the same attorneys as Sisson, brought essentially the same case against the Patels and several of their corporate affiliates arising out of nearly identical events, but did not sue KFC Corporation. *See Wise Prop. Invs., LLC v. Manish Patel, et al.*, Case No. 6:14-cv-03014-BP (W.D. Mo.) (Phillips, J.).

Sisson has not alleged facts establishing the second part of Missouri's two-part test either, *i.e.,* whether "the contract would have been performed absent [the defendant's] interference." *Id.* (quotation marks omitted). To withstand a motion to dismiss, a plaintiff must plead "that had it not been for the defendant's acts, the contract would have been performed." *Id.* (quotation marks omitted). Here, however, Sisson alleges that, from the outset, the Patels "*never* intended to meet the obligations under [the] existing leases for payment of full monthly rent on the purchased restaurant units." (Am. Compl. ¶ 28, emphasis added.) Sisson further alleges that all of the Patels' corporate entities are controlled by and dominated by the Patels, without separate corporate existences, making it unclear at best why the assignment from one Patel company to another had any effect. (*Id.* ¶¶ 86-88.) In short, the amended complaint establishes no plausible reason to conclude that, absent KFC Corporation's alleged actions, the other defendants would have paid the rent or otherwise performed under the leases.

### B. The Amended Complaint Does Not Allege An Absence of Justification.

As before, Sisson's Count IV also fails for the separate reason that it lacks factual allegations establishing an absence of justification, which Missouri defines as "the absence of a legal right to justify the actions taken by the defendant in [allegedly] inducing the breach." *Ariel Preferred Retail Grp., LLC v. CWCapital Asset Mgmt.*, No. 4:10CV623SNLJ, 2011 WL 4501049, at *3 (E.D. Mo. Sept. 28, 2011). A defendant is justified in interfering with another's contract if it has a "legal right . . . to take the actions about which a plaintiff complains" and does not employ improper means, *i.e.*, conduct that is independently wrongful. *See Quality Res., Inc. v. Pfizer, Inc.*, No. 4:14-CV-1149 CEJ, 2015 WL 417997, at *4 (E.D. Mo. Jan. 30, 2015) (quotation marks omitted).

Sisson's allegations do not meet those requirements. Sisson faults KFC Corporation for approving the New Patel Franchisees as franchisees, but Sisson does not (and cannot) allege any

restriction on KFC Corporation's legal right to approve franchisees as it deems appropriate. Sisson alleges that KFC Corporation did not follow its usual standards in approving the New Patel Franchisees, (Am. Compl. ¶ 75), but, even assuming that is true, Sisson does not allege that KFC Corporation lacked the legal right to approve franchisees however it deemed appropriate, or to change its standards. Indeed, the amended complaint does not plead any facts that would establish a legal duty *owed by KFC Corporation to Sisson* requiring KFC Corporation to apply its standards in any particular way. Absent any alleged restriction on KFC Corporation's right to approve franchises, KFC was free to act in its own "self-interest," as Sisson alleges it did. (*Id.* ¶ 79); *see Glob. Control Sys., Inc. v. Luebbert*, No. 4:14-CV-657-DGK, 2016 WL 8730159, at *3 (W.D. Mo. Jan. 15, 2016) (concluding the plaintiff did not state a claim for tortious interference in part because altering one's "ordinary business practices" did not constitute improper means); *see also Trone Health Servs., Inc. v. Express Scripts Holding Co.*, No. 4:18-CV-467 RLW, 2019 WL 1207866, at *7 (E.D. Mo. Mar. 14, 2019) (dismissing tortious interference claim where the defendants' alleged conduct was permissible under the parties' agreements); *Pfizer*, 2015 WL 417997, at *4 (similar).

Sisson attempts to address this pleading defect by alleging that KFC Corporation acted without justification because it lacked a "legitimate interest in approving [the New Patel Franchisees]." (Am. Compl. ¶ 118.) This rote statement of a legal conclusion, however, cannot substitute for plausible allegations of fact, which Count IV lacks. Further, Sisson's conclusory statement about KFC Corporation's "legitimate interest" gets the law wrong. Missouri law does not require that a defendant have a legitimate interest in the contract at issue to be justified in acting as a plaintiff complains. *Baldwin Props., Inc. v. Sharp*, 949 S.W.2d 952, 957 (Mo. Ct. App. 1997). Justification exists if the defendant had an unqualified legal right to take the action, as KFC Corporation did here. *See, e.g.*, *Pfizer*, 2015 WL 417997, at *4.

Sisson's alternative attempt to address the lack of factual allegations establishing the absence of justification also fails. He alleges that KFC Corporation employed "improper means" because it "created a false impression through franchisee approval that [the New Patel Franchisees] were financially viable." (Am. Compl. ¶ 119.) Sisson, however, does not allege that KFC Corporation misstated any *fact* about the New Patel Franchisees, much less made any such misstatement *to him*. Nor does Sisson allege that he was actually deceived by anything KFC Corporation did. In Missouri, improper means refers to conduct that is "independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or common law." *Ariel Preferred Retail Grp.*, 2011 WL 4501049, at *3 (quotation marks omitted). Sisson's allegations do not suffice. *See Am. Traffic Sols., Inc. v. B & W Sensors, LLC*, No. 4:13CV0229 AGF, 2014 WL 1272509, at *6 (E.D. Mo. Mar. 27, 2014) (noting that Rule 9(b)'s heightened pleading standard applies to a claim of tortious interference if the claim rests on an allegation of fraudulent or misleading conduct).

In short, Sisson cannot hold KFC Corporation liable in tort for making business decisions it had an unqualified legal right to make because those decisions allegedly had a negative impact on Sisson's contracts with the other defendants. *See Ariel Preferred Retail Grp.*, 2011 WL 4501049, at *4 (dismissing tortious interference claim where the plaintiff provided no factual support that any of the alleged actions constituted improper means). Sisson's tortious interference claim should be dismissed.

### C. The Amended Complaint Does Not Allege A Valid Business Expectancy.

Sisson attempts to rescue Count IV by adding a theory that KFC Corporation interfered with a "business expectancy," but this effort also fails. (*See, e.g.,* Am. Compl. ¶¶ 114-16.) To state a claim for tortious interference with a business expectancy, a plaintiff must first allege a valid business expectancy, that is, "[a] probable future business relationship that gives rise to a

10

reasonable expectancy of financial benefit." *Hallmark Indus., Inc. v. Hallmark Licensing, LLC*, No. 4:18-CV-00236-DGK, 2018 WL 5828687, at *4 (W.D. Mo. Aug. 14, 2018) (quotation marks omitted). To survive a motion to dismiss, a plaintiff must identify a "specific future business relationship[]" allegedly harmed by the defendant's conduct. *Id.*

Sisson's amended complaint does not identify, or even suggest, a future business relationship harmed by KFC Corporation's alleged conduct. Rather, Sisson alleges that, by approving the New Patel Franchisees, KFC Corporation interfered with his "valid business expectancies that only solvent entities would be lessees on [the Camdenton, Neosho, and Mt. Vernon] properties by virtue of the lease provision restricting assignments without landlord consent to duly approved KFC franchisees." (Am. Compl. ¶ 114.) Those allegations, at most, pertain to an existing, contractual relationship, not a future, prospective one. However, the tort of tortious interference with a business expectancy is intended to protect prospective business relationships "not yet reduced to contract"; it does not apply to expectations with respect to the implementation of terms in an existing contract. *See* Restatement (Second) of Torts § 766B cmt. a. Further, even if he had identified a valid expectancy, Sisson's claim against KFC Corporation would fail for the reasons discussed above—*i.e.*, a lack of intentional interference by KFC Corporation and a failure to allege an absence of justification. *See Icard Stored Value Sols., L.L.C. v. W. Suburban Bank*, No. 4:07-CV-1539 CAS, 2008 WL 619236, at *4 (E.D. Mo. Mar. 3, 2008) (noting that the requirements of intentional interference and absence of justification apply to tortious interference claims based on business expectancies). Sisson has thus failed to state a claim for tortious interference with a business expectancy.

11

## II. Sisson Fails To State A Claim For Civil Conspiracy Against KFC Corporation (Count V).

Sisson's tag-along claim for civil conspiracy against KFC Corporation, Count V, also fails as a matter of law. In Missouri, to state a claim for civil conspiracy, a plaintiff must allege: "(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and, (5) the plaintiff was thereby damaged." *Process Controls Int'l, Inc. v. Emerson Process Mgmt.*, No. 4:10CV645 CDP, 2011 WL 6091722, at *2 (E.D. Mo. Dec. 7, 2011). Pleading a meeting of the minds requires fact-based allegations of "active participation done with a unity of purpose, common design, or understanding." *Brown v. Great Circle*, No. 2:19-cv-04135-NKL, 2019 WL 6534163, at *2 (W.D. Mo. Dec. 4, 2019). "A mere allegation of a conspiracy without specific facts demonstrating a meeting of the minds among the conspirators fails to state a claim upon which relief can be granted." *Bootheel Ethanol Invs., L.L.C. v. Semo Ethanol Coop.*, No. 1:08CV59SNLJ, 2009 WL 398506, at *5 (E.D. Mo. Feb. 17, 2009) (quotation marks omitted).

Here, Sisson's allegations concerning KFC Corporation lack the hallmark of the meeting-of-the-minds element: a unity of purpose. He pleads no facts plausibly suggesting that KFC Corporation agreed to join in a scheme to breach leases. *See Landers v. Monsanto Co.*, No. 1:17-CV-20-SNLJ, 2017 WL 3531378, at *6 (E.D. Mo. Aug. 17, 2017) (dismissing civil conspiracy claim where the plaintiffs did not allege that the defendant's co-conspirators agreed to help achieve the conspiracy's aim); *Salau v. Jones*, No. 2:14-cv-04307-NKL, 2015 WL 5999781, at *7 (W.D. Mo. Oct. 13, 2015) (dismissing civil conspiracy claim where the plaintiff did not allege that the defendants "made a conscious agreement"). In fact, rather than alleging that KFC Corporation and the other defendants shared a unity of purpose, Sisson alleges that, at all times, KFC Corporation acted "in its own financial self-interest." (*See* Am. Compl. ¶ 79.)

12

Further, the amended complaint's allegations concerning KFC Corporation and the alleged conspiracy are entirely conclusory. (*E.g.*, *id.* ¶ 126.) Merely throwing KFC Corporation into a list of defendants alleged to have taken part in a "deliberate scheme" does not satisfy federal pleading requirements. At most, Sisson's allegations about KFC Corporation are equally consistent with lawful conduct (*e.g.*, a franchisor licensing franchisees according to its own business decisions) as with some type of illicit conspiracy. Where a plaintiff's allegations "might also be equally attributable to lawful parallel conduct," the plaintiff does not make out a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nettles v. UMB Bank, N.A.*, No. 03-00082-CV-W-GAF, 2010 WL 11618679, at *3 (W.D. Mo. Sept. 13, 2010) (dismissing civil conspiracy claim on same basis). Count V should be dismissed with respect to KFC Corporation.

## III. Independently, All Of Sisson's Claims Against KFC Corporation Are Time-Barred.

As an independent matter, all of Sisson's claims against KFC Corporation should be dismissed as untimely. "Where the complaint establishes the claim is barred by the applicable statute of limitations, dismissal under Rule 12(b)(6) is appropriate." *Lancaster v. Bd. of Police Comm'rs*, No. 14-00171-CV-W-BP, 2014 WL 12884706, at *1 (W.D. Mo. July 1, 2014) (Phillips, J.). "A federal court sitting in diversity applies the statute-of-limitations rules of the forum." *Great Plains Tr. Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 992 (8th Cir. 2007).

In his amended complaint, Sisson alleges that his claims against KFC Corporation are subject to a ten-year statute of limitations because they derive from his primary breach of contract claim (Count I). (Am. Compl. ¶ 52 (citing R. S. Mo. § 516.110(1)).) This is a legal conclusion (not a factual allegation) and it is incorrect. *See Cook*, 663 F.3d at 992. The statutory provision Sisson cites applies only to breach of contract claims and only those claims in which a plaintiff seeks to enforce a defendant's written promise to pay money. *See Rolwing v. Nestle Holdings, Inc.*, 437 S.W.3d 180, 182-83 (Mo. 2014). Missouri law clearly provides for a five-year statute of

limitations for Sisson's tortious interference and civil conspiracy claims against KFC Corporation. *See* R. S. Mo. § 516.120(4); *Allen v. Martin, Leigh & Laws, PC*, No. 6:18-03100-CV-RK, 2019 WL 470915, at *4 (W.D. Mo. Feb. 6, 2019) (tortious interference with contract); *Aitro v. Clapper*, No. 05-3120-CV-S-RED, 2005 WL 1384063, at *3 (W.D. Mo. June 8, 2005) (civil conspiracy).

"In Missouri, a cause of action accrues when the damage is sustained and 'capable of ascertainment.'" *Lancaster*, 2014 WL 12884706, at *1 (quoting R. S. Mo. § 516.100). The capable-of-ascertainment test is objective: a cause of action accrues when "a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *Aguilar v. Thompson Coburn LLP*, 540 S.W.3d 910, 914 (Mo. Ct. App. 2018) (quotation marks omitted).

Here, Sisson's own allegations establish that his claims are barred by the five-year statute of limitations. The key allegations are the following: sometime before March 2011, KFC Corporation approved the New Patel Franchisees, (Am. Compl. ¶¶ 19, 22, 25, 38, 75); in March 2011, Mitra Hedgehog assigned the leases at issue to the New Patel Franchisees (*id.* ¶¶ 19, 22, 25); on August 1, 2011, the parties to the leases amended those leases (*id.* ¶ 41); and on August 1, 2012, the tenants allegedly defaulted on the leases due to non-payment of rent (*id.* ¶¶ 43, 47, 49).

It is clear from those allegations that Sisson's claims against KFC Corporation accrued in 2011 or, at the latest, August 2012. Indeed, KFC Corporation is not alleged to have done anything at all after approving the New Patel Franchisees, which allegedly occurred nearly a decade ago, before the March 2011 assignments. By August 2011, Sisson was executing amendments to the leases with the New Patel Franchisees, and thus was on notice that the leases had been assigned. (*See id.* ¶ 41.) Sisson even had the prior tenant, Mitra Hedgehog, sign a guaranty as to the modified rent payments in 2011, making clear that Sisson understood that Mitra Hedgehog was no longer

14

the tenant.  (*Id.* ¶ 42.)  And, by August 2012, the New Patel Franchisees had defaulted on the leases, putting Sisson on notice of any legal claims he might have.  (*Id.* ¶¶ 43, 47, 49.)

Thus, more than ***eight years*** before this action was filed in October 2020, Sisson knew that the leases had been assigned to the New Patel Franchisees and that the New Patel Franchisees were not paying the rent.[4]  Sisson alleges that the Patel defendants continued to breach the leases after August 2012, by failing to pay rent each month (*id.* ¶ 53), but KFC Corporation's alleged conduct is limited to the 2011 timeframe.  To the extent Sisson had any claims against KFC Corporation, the time to bring those claims passed years ago.  All of Sisson's claims against KFC Corporation should be dismissed with prejudice.

## CONCLUSION

Sisson has now twice failed to allege valid claims against KFC Corporation.  For the reasons stated, Counts IV and V of the amended complaint should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[4] In *Wise Property Investments, LLC v. Manish Patel, et al.*, Case No. 6:14-cv-03014-BP (W.D. Mo.) (Phillips, J.), the plaintiff, a landlord of a KFC franchisee represented by the same counsel as in this case, sued the Patels and several of their corporate affiliates.  The events and timeline of this prior suit, which was brought in 2014, are nearly identical to Sisson's amended complaint here and further demonstrate that a reasonable landlord would have been on notice of the claims Sisson pursues here years earlier.

Respectfully Submitted,

Dated:  January 22, 2021

**KFC Corporation, Inc.**

*/s/ Daniel J. Weiss*

Daniel J. Weiss  ARDC No. 6256843
*Pro Hac Vice*
Kaitlin M. Leskovac  ARDC No. 6327228
*Pro Hac Vice*
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:    (312) 923-4517
Facsimile:    (312) 527-0484
Email: DWeiss@jenner.com
        KLeskovac@jenner.com

James D. Griffin        MO #33370
Cameron E. Grant        MO #72225
SCHARNHORST AST KENNARD GRIFFIN, PC
1100 Walnut, Suite 1950
Kansas City, Missouri 64106
Telephone:    (816) 268-9400
Facsimile:    (816) 268-9409
Email: JGriffin@sakg.com
        CGrant@sakg.com

*Attorneys for Defendant KFC Corporation*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2021, I caused a copy of the forgoing motion and

suggestions in support to be served on all counsel of record via the Court's electronic filing system.

/s/ Daniel J. Weiss
Daniel J. Weiss