# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| TRYON P. SISSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:20-cv-005101 |
| ) | |
| MANISH PATEL, et al., ) | |
| ) | |
| Defendants. ) | |

## SUGGESTIONS IN SUPPORT OF
## THE MITRA DEFENDANTS' MOTION TO DISMISS
## THE AMENDED COMPLAINT

Respectfully submitted,

**BERKOWITZ OLIVER LLP**
Jeffrey D. Morris     MO Bar # 45243
Nick J. Kurt     MO Bar # 52216
Stephanie C. Bradshaw     MO Bar # 67564
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone: (816) 561-7007
Facsimile: (816) 561-1888
Email: jmorris@berkowitzoliver.com
        nkurt@berkowitzoliver.com
        sbradshaw@berkowitzoliver.com

**Attorneys for Mitra Defendants**

# TABLE OF CONTENTS

I. BACKGROUND ........................................................................................................... 1

    A. The Camdenton, Neosho, and Mt. Vernon Leases ............................................. 1

    B. The Rent Dispute ................................................................................................ 2

II. ARGUMENT ................................................................................................................ 3

    A. Plaintiff's Claims Are Barred, in Whole or in Part, by the Applicable Statute of Limitations ............................................................................................ 4

        1. Breach of Contract ................................................................................... 5

        2. Breach of the Duty of Good Faith and Fair Dealing ............................... 6

        3. Tortious Interference ................................................................................ 7

        4. Conspiracy ................................................................................................ 8

    B. Plaintiff's Tortious Interference and Conspiracy Claims Also Fail for Additional Reasons ............................................................................................. 9

    C. Plaintiff Cannot Bring Claims as Attorney-in-Fact on Behalf of Third Parties ................................................................................................................ 11

III. CONCLUSION ........................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997) ...................... 11

*Airlines Reporting Corp. v. S & N Travel, Inc.*, 857 F. Supp. 1043 (E.D.N.Y. 1994) ................ 11

*Ariel Preferred Retail Grp. v. CWCapital Asset Mgmt.*, No. 4:10CV623SNLJ,
2011 WL 4501049 (E.D. Mo. Sept. 28, 2011) .................................................................. 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 4

*Associated Ins. Mgmt. Corp. v. Ark. Gen. Agency, Inc.*, 149 F.3d 794 (8th Cir. 1998) ............... 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 4

*Brown v. Great Circle*, No. 2:19-cv-04135-NKL, 2019 WL 6534163
(W.D. Mo. Dec. 4, 2019) .................................................................................................. 10

*Bus. Men's Assurance Co. of Am. v. Graham*, 984 S.W.2d 501 (Mo. 1999) .............................. 6

*Capital One Bank v. Creed*, 220 S.W.3d 874 (Mo. App. 2007) ................................................... 6

*Consul Gen. of Republic of Indon. v. Bill's Rentals, Inc.*, 330 F.3d 1041
(8th Cir. 2003) ................................................................................................................... 11

*D'Arcy & Assocs., Inc. v. K.P.M.G. Peat Marwick, L.L.P.*, 129 S.W.3d 25
(Mo. App. 2004) .......................................................................................................... 6, 7, 8

*Graham v. Hubbs Mach. & Mfg., Inc.*, 92 F. Supp. 3d 935 (E.D. Mo. 2015) .............................. 9

*Graves v. CAM2 Int'l LLC*, No. 3:19-cv-05089-SRB, 2020 WL 3968040
(W.D. Mo. July 13, 2020) .................................................................................................. 4

*Hampton Foods, Inc. v. Wetterau Fin. Co.*, 831 S.W.2d 699 (Mo. App. 1992) ........................... 6

*In re Engle Cases*, 767 F.3d 1082 (11th Cir. 2014) ................................................................... 12

*Johnson v. State Mut. Life Assurance Co. of Am.*, 942 F.2d 1260 (8th Cir. 1991) ...................... 7

*Lancaster v. Bd. of Police Comm'rs*, No. 14-00171-CV-W-BP, 2014 WL 12884706
(W.D. Mo. July 1, 2014) .................................................................................................... 9

*Rolwing v. Nestle Holdings, Inc.*, No. ED99401, 2013 WL 5629430
(Mo. App. Oct. 15, 2013) ................................................................................................... 5

*Snelling v. Kenny*, 491 S.W.3d 606 (Mo. App. 2016) .................................................................. 8

*Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 403 F. Supp. 3d 257
 (S.D.N.Y. 2019) .................................................................................................... 11

*Trone Health Servs., Inc. v. Express Scripts Holding Co.*, No. 4:18-CV-467 RLW,
 2019 WL 1207866 (E.D. Mo. Mar. 14, 2019) .................................................... 10

Wieburg v. GTE Sw. Inc., 272 F.3d 302 (5th Cir. 2001) ........................................... 12

*Young v. City of St. Charles*, 244 F.3d 623 (8th Cir. 2001) ........................................ 4

**Statutes**

Mo. Rev. Stat. § 516.100 ............................................................................................ 6

Mo. Rev. Stat. § 516.110.1 ......................................................................................... 4

**Other Authorities**

6A Fed. Prac. & Proc. Civ. § 1555 (3d ed.) .............................................................. 12

**Rules**

Fed. R. Civ. P. 17 .................................................................................................11, 12

The Mitra Defendants[1] submit the following suggestions in support of their motion to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim for relief.

I. BACKGROUND

   A. The Camdenton, Neosho, and Mt. Vernon Leases

In July and August 2006, Plaintiff, a California resident, purchased property in Camdenton and Neosho, Missouri, with his wife. Doc. 34 ¶¶ 2, 18, 21. Later that year, Plaintiff's parents purchased property in Mt. Vernon, Missouri. *Id.* at ¶ 24. Each of these three properties was subject to a 20-year lease, executed in April 2005, under which the property was operated as a KFC restaurant (the "Camdenton Lease," "Neosho Lease," and "Mt. Vernon Lease," individually, and the "Leases," collectively). *Id.* at ¶¶ 17, 20, 23.

Several years later, in 2010, Plaintiff alleges that three Texas LLCs—each of which is owned by Texas residents Manish and Pushpak Patel—purchased a number of KFC restaurants, including the restaurants in Camdenton, Neosho, and Mt. Vernon. *Id.* at ¶¶ 26-27, 30. Plaintiff alleges that Chalak Mitras Group, LLC ("CMG") arranged the financing for this transaction, while the rights under the leases to actually operate the restaurants were assigned to CMG Operations, LLC ("CMG Operations") and Mitra Hedgehog, LLC ("Hedgehog"). *Id.* at ¶ 30. The Camdenton, Neosho, and Mt. Vernon Leases were all assigned to Hedgehog. *Id.* at ¶ 33.

In March 2011, Hedgehog assigned its rights under those Leases to three Missouri LLCs, also owned by the Patels: Mitra Camdenton, LLC ("Mitra Camdenton"), Mitra Neosho, LLC ("Mitra Neosho"), and Mitra Mt. Vernon, LLC ("Mitra Mt. Vernon"), each of which was a KFC

---

[1] The Mitra Defendants are: Manish Patel, Pushpak Patel, Chalak Mitras Group, LLC, Mitra Hedgehog, LLC, CMG Operations, LLC, Mitra Midwest Operations, LLC, Mitra Camdenton, LLC, Mitra Neosho, LLC, and Mitra Mt. Vernon, LLC. The Mitra Defendants include all Defendants to this lawsuit except Defendant KFC Corporation.

1

franchisee. *Id.* at ¶¶ 34, 38. This was expressly permitted under the terms of the Leases, each of which provided that the tenant could assign its tenancy without landlord consent if the assignee was another licensed KFC franchisee. *Id.* at ¶ 37. Mitra Neosho and Mitra Mt. Vernon later assigned the Neosho and Mt. Vernon Leases to Mitra Midwest Operations, LLC ("Mitra Midwest") in April 2013. *Id.* at ¶ 55.

### B. The Rent Dispute

In August 2011, the parties entered into amendments to the Leases to resolve claims for unpaid back rent and to provide temporary rent modification through August 2012. *Id.* at ¶ 41. As alleged in the Amended Complaint, Hedgehog guaranteed rent payments for the period of rent modification under the amendments to the Camdenton, Neosho, and Mt. Vernon Leases. *Id.* at ¶ 42. Hedgehog thus began making the lower, modified rent payments. *Id.* Plaintiff alleges that, when the modification period ended, Hedgehog continued paying the modified amount, and that Hedgehog has only paid the lower, modified rent amount since August 1, 2012. *Id.* at ¶¶ 43, 47, 49.

Now, over eight years after this supposed dispute first arose, Plaintiff brings this lawsuit. Plaintiff purports to bring this action both individually and as "attorney-in-fact" for his wife (as the other landlord under the Camdenton and Neosho Leases) and his parents (as landlords under the Mt. Vernon Lease). *Id.* at ¶ 2. Four of Plaintiff's five claims are directed at some, or all, of the Mitra Defendants[2]:

In Count I, Plaintiff brings a breach of contract claim against all Mitra Defendants, alleging that Mitra Camdenton, Mitra Neosho, Mitra Mt. Vernon, and Mitra Midwest breached the Leases by failing to pay full rent. Plaintiff also alleges those entities are "uncapitalized shell companies,"

---

[2] The remaining claim pertains only to Defendant KFC Corporation: Count IV for tortious interference.

and thus the Court must pierce the corporate veil to hold the rest of the Mitra Defendants liable. *Id.* at ¶¶ 80-99.

In Count II, Plaintiff brings a claim against Hedgehog for breach of the implied duty of good faith and fair dealing. Plaintiff alleges Hedgehog breached this duty when it "concocted and executed a scheme" to assign the Leases to the allegedly "uncapitalized" Mitra Camdenton, Mitra Neosho, and Mitra Mt. Vernon entities in March 2011. *Id.* at ¶¶ 100-104.

In Count III, Plaintiff brings a claim for tortious interference against the Patels, Hedgehog, CMG Operations, Mitra Midwest, and CMG. Plaintiff alleges these defendants tortiously interfered with the Camdenton, Neosho, and Mt. Vernon Leases by inducing or facilitating the breach of those Leases through the Mitra Camdenton, Mitra Neosho, Mitra Mt. Vernon, and Mitra Midwest "shell companies." *Id.* at ¶¶ 105-112.

Finally, Count V asserts a claim for civil conspiracy against all Defendants—i.e., all Mitra Defendants as well as Defendant KFC Corporation. Plaintiff alleges that Defendants conspired: (1) to initially segregate and assign the leases for the lower-performing restaurants acquired in the 2010 transaction to Hedgehog, including the Camdenton, Neosho, and Mt. Vernon Leases; and (2) to further assign those Leases to the supposed "shell companies," without landlord consent, and with the intent and understanding that those entities would not make full rent payments and that the landlords would be left without recourse. *Id.* at ¶¶ 122-128.

## II.   ARGUMENT

This lawsuit—although it tacks on various time-barred ancillary theories of recovery—is essentially an action for breach of contract to recover allegedly overdue rent. The Mitra Defendants thus bring this motion under Rule 12(b)(6) to narrow the scope of what is truly at stake. Specifically, and as set forth in further detail below, the Mitra Defendants move this Court to

3

dismiss Plaintiff's time-barred claims for failure to state a claim to relief; and, indeed, several of those claims also require dismissal for alternative, independent reasons.

The purpose of a motion under Rule 12(b)(6) is to test the legal sufficiency of a complaint and eliminate those actions that "are fatally flawed in their legal premises and deigned to fail, thereby sparing the litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). A court must dismiss an action under Rule 12(b)(6) where the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 12(b)(6) also authorizes dismissal of a claim that "lacks a cognizable legal theory or where the law provides no relief." *Graves v. CAM2 Int'l LLC*, No. 3:19-cv-05089-SRB, 2020 WL 3968040, at *3 (W.D. Mo. July 13, 2020).

Although, on a Rule 12(b)(6) motion, courts accept all well-pleaded facts as true and grant all reasonable inferences in the nonmoving party's favor, this principle does not apply to legal conclusions or formulaic recitations of the elements of a cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, where a complaint fails to state a claim for relief that rises above the "speculative level," dismissal is appropriate. *See Twombly*, 550 U.S. at 555.

> A. **Plaintiff's Claims Are Barred, in Whole or in Part, by the Applicable Statute of Limitations**

As an initial matter, Plaintiff's claims against the Mitra Defendants are barred, either in whole or in part, by the applicable statute of limitations. In his Amended Complaint, Plaintiff attempts to preempt any statute of limitations defense by alleging that each of his claims is subject to the ten-year statute of limitations for "[a]n action upon any writing . . . for the payment of money." Doc. 34 ¶ 52; *see also* Mo. Rev. Stat. § 516.110.1. This allegation fails for multiple reasons. First, as discussed below, the applicable limitations period for the majority of Plaintiff's claims against the Mitra Defendants—if not all of those claims—is five years, not ten. As such,

4

Case 3:20-cv-05101-BP   Document 46   Filed 01/27/21   Page 8 of 18

those claims are clearly time barred and must be dismissed. Second, even assuming the ten-year statute of limitations in Mo. Rev. Stat. § 516.110.1 applies to Count I for breach of contract, Plaintiff's allegation that this ten-year period should be applied to <u>all of his causes of action</u> as "derivative" of his breach claim—even his interference and conspiracy claims, which sound in tort—fails. Even if such an argument had support in the law (and the Mitra Defendants do not concede that it does), Counts II, III, and V are all based on allegations separate and apart from the purported breach of the Leases. They are not "derivative" of the breach claim.

In sum, Plaintiff's claims are barred, either in whole or in part, by the applicable statutes of limitations as follows:

### 1. Breach of Contract

Count I for breach of contract is premised on alleged breaches of the Leases. Plaintiff alleges that, since August 1, 2012, Mitra Camdenton, Mitra Neosho, Mitra Mt. Vernon, and—"to the extent [it] is an assignee of any of [the] leases under a valid assignment"—Mitra Midwest have failed to timely pay all rent due and owing under the Leases. Doc. 34 ¶¶ 43, 47, 49, 83.

Under Missouri law, breach of contract claims may be subject to either the ten-year statute of limitations set forth in Mo. Rev. Stat. § 516.110.1 for "[a]n action on any writing . . . for the payment of money" (cited in the Amended Complaint) or the five-year limitations period set forth in Mo. Rev. Stat. § 516.120.1 for "[a]ll actions upon contracts, obligations or liabilities, express or implied." Indeed, both the five-year and the ten-year statute may apply to the same contract, depending on which contractual provision provides the basis for suit. *See Rolwing v. Nestle Holdings, Inc.*, No. ED99401, 2013 WL 5629430, at *4 (Mo. App. Oct. 15, 2013). "[I]n order for the ten-year statute of limitations to apply, the money sued for must be the same money promised by the writing, and not based on an ancillary contract term." *Id.* To that end, courts have found that, even though a written promise to pay money existed, because the suit "s[ought] instead

5

damages for the breach of another term of the contract" the five-year statute of limitations applied. *See Hampton Foods, Inc. v. Wetterau Fin. Co.*, 831 S.W.2d 699, 701 (Mo. App. 1992). Here, the breach complained of is the alleged failure to revert back to the full monthly rent payments following the period of rent modification, as provided under the August 2011 amendments to the Leases. Plaintiff alleges Hedgehog continued paying the modified amount, but did not revert back to the full rent payments as was required. Plaintiff also alleges other breaches of the Leases unrelated to money (*e.g.*, Doc. 34 ¶¶ 45-46), which would be subject to the five-year statute of limitations set forth in Mo. Rev. Stat. §§ 516.120.1.

Applying the five-year statute of limitations, Count I is clearly barred to the extent premised on conduct occurring prior to October 21, 2015 (five years before the Amended Complaint was filed). The limitations period begins to run "when damage is sustained and becomes capable of ascertainment." *Bus. Men's Assurance Co. of Am. v. Graham*, 984 S.W.2d 501, 507 (Mo. 1999); *see also* Mo. Rev. Stat. § 516.100. Damage is "capable of ascertainment" when it can be discovered or is made known. *D'Arcy & Assocs., Inc. v. K.P.M.G. Peat Marwick, L.L.P.*, 129 S.W.3d 25, 29 (Mo. App. 2004). Plaintiff's claims for breach thus began to run when Hedgehog (which Plaintiff claims was the entity actually making the payments) continued paying the reduced rent after the modification period allegedly expired in August 2012; at this point, Plaintiff's damages were capable of ascertainment. Any claims accruing between August 2012 and five years prior to filing of this litigation are thus time barred and subject to dismissal.

### 2. Breach of the Duty of Good Faith and Fair Dealing

Count II against Hedgehog for breach of the implied duty of good faith and fair dealing is time barred in its entirety. This claim is governed by the five-year limitations period set forth in Mo. Rev. Stat. § 516.120.1. *See Capital One Bank v. Creed*, 220 S.W.3d 874, 878 (Mo. App. 2007) ("A claim for breach of contract evidenced by act or implied by law is governed by the five-year

6

statute."); *see also Johnson v. State Mut. Life Assurance Co. of Am.*, 942 F.2d 1260, 1265 (8th Cir. 1991). As with Plaintiff's breach of contract claim, the limitations period begins to run when the damage is sustained and becomes capable of ascertainment—i.e., when it can be discovered or is made known. *See D'Arcy & Assocs.*, 129 S.W.3d at 29.

Here, Count II is entirely premised on Hedgehog's March 2011 assignment of the Leases to the Mitra Camdenton, Mitra Neosho, and Mitra Mt. Vernon "shell companies." *See* Doc. 34 ¶ 102. Specifically, in Count II, Plaintiff alleges that "[b]y assigning the tenancies" under the Leases, Hedgehog "exercised a judgment conferred by the express terms of the leases in a manner that evaded the spirit of the leases and denied [Plaintiff] and the other landlords the expected benefit of those leases." *Id.* at ¶ 103. Based on these allegations, the alleged damage was sustained and capable of ascertainment in March 2011 (the point when Hedgehog assigned the Leases to the alleged "shell companies," *see id.* at ¶¶ 19, 22, 25), and, in any event, no later than August 2011 (when the parties executed the amendments to the Leases, at which point Plaintiff had to have known that Hedgehog had assigned the Leases to Mitra Camdenton, Mitra Neosho, and Mitra Mt. Vernon, *see id.* at ¶ 41). The statute of limitations thus began running almost a <u>decade</u> before Plaintiff filed this action. Count II is clearly time barred and must be dismissed in its entirety.

### 3. Tortious Interference

Plaintiff's Count III for tortious interference is likewise time barred. The crux of Count III is that the Patels, along with CMG, Hedgehog, CMG Operations, and Mitra Midwest, interfered with the Leases by creating and utilizing the alleged uncapitalized "shell companies"—i.e., Mitra Camdenton, Mitra Neosho, Mitra Mt. Vernon, and potentially Mitra Midwest itself—to avoid their obligations under the Leases. *Id.* at ¶ 109. It is well established that, under Missouri law, tortious interference claims are subject to the five-year limitations period set forth in Mo. Rev. Stat. § 516.120.4. *See D'Arcy & Assocs.*, 129 S.W.3d at 29 (applying five-year statute of limitations to

7

tortious interference claim). Like Plaintiff's other claims, this limitations period begins to run when the damage is sustained and becomes capable of ascertainment. *Id.*

Here, Plaintiff's damages were capable of ascertainment, and the limitations period thus began to run, at the point when the "shell companies" were set up and assumed the Leases. As alleged in the Amended Complaint, Mitra Camdenton, Mitra Neosho, and Mitra Mt. Vernon were formed no later than March 2011, which is when the assignments were made, and which is well outside the five-year statute of limitations. And, to the extent this claim is premised on the creation of, and assignments to, Mitra Midwest, those assignments were made in April 2013 and thus those allegations also fall outside the applicable limitations period. Plaintiff's Count III for tortious interference is barred and must be dismissed in its entirety.

### 4. Conspiracy

Finally, Count V for civil conspiracy is also barred in its entirety by the applicable statute of limitations. In Count V, Plaintiff alleges a conspiracy related to: (1) the initial segregation and assignment of the leases for the "lower-performing" restaurants to Hedgehog; and (2) the subsequent assignments to the supposed uncapitalized "shell companies." Doc. 34 ¶ 124. Like Plaintiff's tortious interference claim, the five-year statute of limitations in Mo. Rev. Stat. § 516.120.4 applies. *See Snelling v. Kenny*, 491 S.W.3d 606, 616 (Mo. App. 2016) (civil conspiracy). Again, this limitations period begins to run when the damage is sustained and capable of ascertainment. *See D'Arcy & Assocs.*, 129 S.W.3d at 29.

Under the applicable statute of limitations, in order to be timely, Plaintiff's claim for conspiracy would have to be premised on acts occurring before October 21, 2015, the five-year period immediately preceding filing of this litigation. But the acts complained of by Plaintiff occurred well prior to this date. In the Amended Complaint, Plaintiff pleads that the alleged decision to segregate lower-performing restaurants and assign those units to Hedgehog was made

at the time of the 2010 transaction. Doc. 34 ¶ 31. And the Leases were assigned to the alleged "shell companies" in March 2011 (Mitra Camdenton, Mitra Neosho, and Mitra Mt. Vernon) and April 2013 (Mitra Midwest). *Id.* at ¶¶ 19, 22, 25, 55. These allegations fall well outside the five-year statute of limitations. As such, Count V for conspiracy is time barred and must be dismissed.

For all of these reasons, Plaintiff's claims are barred, either in whole or in part, by the applicable statutes of limitations. Count II for breach of the implied duty of good faith and fair dealing, Count III for tortious interference, and Count V for conspiracy are barred in their entirety. Count I is barred to the extent it is premised on breaches of the Leases occurring prior to October 21, 2015. Those time-barred claims must be dismissed under Rule 12(b)(6). *See Lancaster v. Bd. of Police Comm'rs*, No. 14-00171-CV-W-BP, 2014 WL 12884706, at *1 (W.D. Mo. July 1, 2014) ("Where the complaint establishes the claim is barred by the applicable statute of limitations, dismissal under Rule 12(b)(6) is appropriate.").

### B. Plaintiff's Tortious Interference and Conspiracy Claims Also Fail for Additional Reasons

Certain of Plaintiff's claims also fail for additional, independent reasons, meriting dismissal. First—and, again, putting aside the fact that this claim is time barred—Plaintiff cannot show the requisite "absence of justification" necessary to sustain Count III for tortious interference. Under Missouri law, in order to state a claim for tortious interference, Plaintiff must allege: (1) the existence of a contract; (2) the defendant's knowledge of that contract; (3) intentional interference by the defendant inducing or causing a breach of that contract; (4) the absence of justification; and (5) damages. *Graham v. Hubbs Mach. & Mfg., Inc.*, 92 F. Supp. 3d 935, 943 (E.D. Mo. 2015). The fourth element—"absence of justification"—is defined as "the absence of a legal right to justify the actions taken by the defendant in inducing the breach." *Ariel*

*Preferred Retail Grp. v. CWCapital Asset Mgmt.*, No. 4:10CV623SNLJ, 2011 WL 4501049, at *3 (E.D. Mo. Sept. 28, 2011).

Here, Count III alleges that the Patels, CMG, CMG Operations, Mitra Midwest, and Hedgehog interfered with the Leases by assigning those Leases to uncapitalized "shell" entities in order to avoid paying full rent. Doc. 34 ¶ 109. But the Amended Complaint lacks factual allegations sufficient to establish an absence of justification for those assignments. To the contrary, Plaintiff's allegations affirmatively establish that Hedgehog was legally justified in making the assignments that form the basis for this claim. Plaintiff alleges in his Amended Complaint that the Leases permitted Hedgehog to assign its tenancies under those Leases without the landlords' prior written consent <u>if the assignee was another KFC franchisee</u>. *Id.* at ¶ 37. And the very next allegation specifically acknowledges that the supposed "shell companies" were, in fact, approved KFC franchises. *Id.* at ¶ 38. Plaintiff's allegations thus establish that Hedgehog had an unequivocal right under the Leases to take the actions upon which Plaintiff premises his tortious interference claim. Count III therefore fails and must be dismissed. *See Trone Health Servs., Inc. v. Express Scripts Holding Co.*, No. 4:18-CV-467 RLW, 2019 WL 1207866, at *7 (E.D. Mo. Mar. 14, 2019) (dismissing tortious interference claim where the defendants' alleged actions were "sanctioned by the parties' agreements").

Second, turning to Plaintiff's Count V for conspiracy, even if not time barred that claim nonetheless fails because the underlying theory is fatally flawed. To plead a claim for civil conspiracy under Missouri law, a plaintiff must allege a "meeting of the minds" among the defendants, which requires allegations of "active participation done with a unity of purpose, common design, or understanding." *Brown v. Great Circle*, No. 2:19-cv-04135-NKL, 2019 WL 6534163, at *2 (W.D. Mo. Dec. 4, 2019). Here, the alleged "unity of purpose" is essentially the

intent to avoid rent obligations under the Leases. Doc. 34 ¶ 123. But it makes no sense that Defendants could have a "unity of purpose" to effect a scheme that was wholly dependent on Plaintiff's conduct or, in this case, the total absence of any conduct by Plaintiff. Plaintiff sat on his hands, accepting the reduced rent payments set forth in the Amendment for years, effectively allowing this alleged "scheme" to go unchecked. He had the power to end it at any time yet chose not to do so. The requisite unity of purpose cannot exist under these circumstances.

### C. Plaintiff Cannot Bring Claims as Attorney-in-Fact on Behalf of Third Parties

Finally, each of Plaintiff's claims fails to the extent he purports to bring it as "attorney-in-fact" for third parties: on behalf of his wife with respect to the Camdenton and Neosho Leases, and on behalf of his parents with respect to the Mt. Vernon Lease. Doc. 34 ¶ 2. To the extent Plaintiff does indeed hold powers of attorney for his wife and parents, those instruments do not authorize him to bring claims on their behalf because he is not the "real party in interest."

Under Rule 17(a), every federal lawsuit must be prosecuted in the name of the "real party in interest"—i.e., the "party who, under governing substantive law, possesses the rights to be enforced." Fed. R. Civ. P. 17(a)(1); *Consul Gen. of Republic of Indon. v. Bill's Rentals, Inc.*, 330 F.3d 1041, 1045 (8th Cir. 2003). As a general rule, the grant of a power of attorney does not, standing alone, enable the attorney-in-fact to bring suit in his own name. *See, e.g.*, *Associated Ins. Mgmt. Corp. v. Ark. Gen. Agency, Inc.*, 149 F.3d 794, 797-98 (8th Cir. 1998); *Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 403 F. Supp. 3d 257, 266 (S.D.N.Y. 2019) ("[I]t is well established that '[t]he grant of a power of attorney . . . is not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring suit in his own name.'") (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17-18 (2d Cir. 1997)); *Airlines Reporting Corp. v. S & N Travel, Inc.*, 857 F. Supp. 1043, 1046-47 (E.D.N.Y. 1994) ("A person authorized to bring suit solely on the basis of a power of attorney is

not a real party in interest; courts have uniformly denied such a party the right to sue in its own name."). And attorneys-in-fact are not included on Rule 17(a)'s list of individuals authorized to prosecute an action on behalf of another in their own name. *See* Fed. R. Civ. P. 17(a)(1).

In his Amended Complaint, Plaintiff attempts to stave off dismissal on these grounds by adding an allegation that "[a]ll of the other named landlords have ratified the filing and prosecution of this action by [Plaintiff] so that this action may proceed as if it had been originally commenced by the real parties in interest"—apparently a reference to Rule 17(a)(3). Doc. 34 ¶ 2; *see* Fed. R. Civ. P. 17(a)(3). But the purpose of Rule 17(a)(3)—which provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action"—is "to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought." 6A Fed. Prac. & Proc. Civ. § 1555 (3d ed.).

There was no such "understandable mistake" in selecting the parties here. The original complaint identified Plaintiff's wife as a co-landlord for the Camdenton and Neosho Properties and Plaintiff's parents as sole landlords for the Mt. Vernon Property. Doc. 1 ¶ 2. It appears that, for whatever reason, Plaintiff's wife and parents simply do not want to be named parties to this lawsuit. That is their prerogative, but is not grounds to apply Rule 17(a)(3), which is inapplicable under these circumstances. *See, e.g.*, *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 308 (5th Cir. 2001) ("[M]ost courts have interpreted the last sentence of Rule 17(a) as being applicable only when the plaintiff brought the action in her own name as the result of an understandable mistake, because the determination of the correct party to bring the action is difficult."); *In re Engle Cases*, 767 F.3d 1082, 1109 (11th Cir. 2014) (noting that "[t]he Advisory Committee's comments make clear . . .

that while [Rule 17(a)(3)] was added 'in the interests of justice,' '[t]he provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made'").

In sum, under these circumstances, Plaintiff cannot maintain claims on behalf of his wife and parents in his own name. Plaintiff is permitted only to assert his own claims in this action, and all claims asserted on behalf of third parties should be dismissed. This includes all claims related to the Mt. Vernon Lease—under which only Plaintiff's parents are landlords.

### III. CONCLUSION

For the foregoing reasons, the Mitra Defendants respectfully request that the Court grant their motion and: dismiss Plaintiff's Count II (breach of the duty of good faith and fair dealing), Count III (tortious interference), and Count V (civil conspiracy) under Rule 12(b)(6), in their entirety, as they pertain to the Mitra Defendants; dismiss Count I (breach of contract), in part, as it pertains to the Mitra Defendants; and enter such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

**BERKOWITZ OLIVER LLP**

By: */s/ Stephanie C. Bradshaw*
Jeffrey D. Morris     MO Bar #45243
Nick J. Kurt     MO Bar #52216
Stephanie C. Bradshaw    MO Bar #67564
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone: (816) 561-7007
Facsimile: (816) 561-1888
Email: jmorris@berkowitzoliver.com
       nkurt@berkowitzoliver.com
       sbradshaw@berkowitzoliver.com

**Attorneys for Mitra Defendants**

# CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Stephanie C. Bradshaw*
**Attorney for Mitra Defendants**
