IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| TRYON P. SISSON, | ) |
| Plaintiff, | ) |
| | ) Case No. 20-05101-CV-SW-BP |
| v. | ) |
| MANISH PATEL, et al., | ) |
| Defendants. | ) |

**DEFENDANT KFC CORPORATION'S REPLY SUGGESTIONS
IN SUPPORT OF ITS RENEWED RULE 12(b)(6) MOTION TO DISMISS**

KFC Corporation respectfully submits this reply in support of its motion to dismiss.

## INTRODUCTION

Sisson, a landlord, has rent disputes with his tenants. KFC Corporation's *only* alleged connection to those disputes is that it licensed the current tenants as KFC franchisees in 2011 (the "New Patel Franchisees"). Sisson's improbable theory is that KFC Corporation committed a *tort* against him by licensing those businesses, because his leases allowed for an assignment to KFC franchisees, and Sisson therefore had a right to expect that KFC Corporation would license only businesses that would be creditworthy tenants for his leases.

As KFC Corporation established in its motion, that theory fails to state a claim, for two independent reasons. First, Sisson cannot create a duty for KFC Corporation to limit the franchisees it licenses by including language about those franchising decisions in his leases. Much of Sisson's opposition argues that KFC Corporation was aware of a "scheme" by the Patel defendants, but, critically, the only supposedly wrongful *action* that Sisson alleges on the part of KFC Corporation was *approving its own franchisees*. (*See* Dkt. 47 ("Opp.") at 1, 4-5.) Sisson does not (and cannot) allege any facts that would override KFC Corporation's unqualified right to

1

make its own franchising decisions. This fundamental defect leaves Sisson unable to allege required elements of his interference claims (Count IV) and his conspiracy claim (Count V).

<u>Second</u>, as an independent matter, KFC Corporation's approval of the new franchisees in 2011 is beyond the five-year statute of limitations that applies to each of Sisson's claims against it. Indeed, the amended complaint lacks any allegation that KFC Corporation did *anything at all* after 2011. Sisson's alleged injury was apparent by 2012, at the latest, when the new franchisees allegedly defaulted on the leases. Sisson now argues that the limitations period is renewed each month the tenants fail to pay the rent, but the "continuing tort" doctrine does not apply because KFC Corporation is not alleged to have undertaken any continuing misconduct. Sisson's theory that a *ten*-year statute of limitations applies to his conspiracy claim is wrong.

Sisson has now tried and failed to repair the defects in his claims against KFC Corporation. Dismissal with prejudice is appropriate.

**I.    Sisson Fails To State A Claim For Tortious Interference Against KFC (Count IV).**

   **A.    The Amended Complaint Lacks Allegations That KFC Induced A Breach.**

As KFC Corporation established (Dkt. 39 ("Mot.") at 6-8), a tortious interference plaintiff must allege that (1) "the defendant actively and affirmatively t[ook] steps to induce the breach," and (2) absent the defendant's interference, "the contract would have been performed." *Church Mut. Ins. Co. v. Sands*, No. 14-CV-3119-S-DGK, 2014 WL 3385208, at *5 (W.D. Mo. July 9, 2014) (quotation marks omitted). Sisson's amended complaint fails on both requirements.

Regarding the first prong, Sisson argues that KFC Corporation "facilitated" breaches of the leases by approving the New Patel Franchisees, but this is not enough. (Opp. at 3-4.) Sisson's own authorities show that active, affirmative misconduct designed to induce a breach is required. In *Bell v. May Department Stores Co.*, the court held that a tortious interference claim requires a

2

Case 3:20-cv-05101-BP   Document 49   Filed 02/19/21   Page 2 of 12

showing that the defendant "*actively* and *affirmatively* took steps to induce the breach." 6 S.W.3d 871, 878 (Mo. banc 1999) (emphasis added) (quotation marks omitted). The plaintiff in that case met that standard with evidence that the defendant affirmatively published "false and negative information" about the plaintiff to credit agencies. *Id.* at 876. And in *InfoDeli, LLC v. Western Robidoux, Inc.* the court applied the same "active[] and affirmative[]" test, finding that the defendant "took *affirmative steps* to induce a breach" by "engaging in negotiations with Plaintiffs" under false pretenses. No. 4:15-CV-00364-BCW, 2016 WL 6921623, at *3 (W.D. Mo. Mar. 7, 2016) (emphasis added).[1]

In contrast, where a defendant "did not ask to be involved" in the relationship between the contracting parties, but merely had an independent approval right, the exercise of that right did not constitute "intentional interference." *Kan. City Sand & Gravel, LLC v. Birmingham Drainage Dist.*, No. 08-0730-CV-W-SOW, 2009 WL 10672243, at *2 (W.D. Mo. Mar. 9, 2009) (no intentional interference where city conditioned approval of plaintiff's permit on defendant's recommendation, which it did not provide). In the same way, Sisson has not alleged any active and affirmative steps taken by KFC Corporation to intrude on the leases. *See Rail Switching Servs., Inc. v. Marquis-Missouri Terminal, LLC*, 533 S.W.3d 245, 258-59 (Mo.App. E.D. 2017) (citing Restatement (Second) of Torts § 766 (1979)) ("Generally, allegations of tortious interference with a contract refer to the defendant's intrusion on an existing contract.").

Nor has Sisson alleged that KFC Corporation *induced* a breach. "Missouri law defines *induce* as to move and lead (as by persuasion or influence), to inspire, call forth or bring about by

---

[1] Sisson cites *InfoDeli* to argue that "facilitat[ing]" a breach is enough, but *InfoDeli* does not say that. 2016 WL 6921623, at *3. The court used the word "facilitate" to describe software copying, but the conduct that made the defendant liable was taking "*affirmative steps* to induce a breach" through bogus negotiations. *Id.* (emphasis added).

3

influence or stimulation." *Tamko Roofing Prods., Inc. v. Smith Eng'g Co.*, 450 F.3d 822, 830 (8th Cir. 2006) (quotation marks omitted) (emphasis added); *see also* Restatement (Second) of Torts § 766 cmts. h, k. Here, the leases themselves *allowed* assignment to KFC franchisees without the landlord's consent. (*E.g.*, Dkt. 34 ("Am. Compl.") ¶ 37.) At most, Sisson alleges that KFC Corporation *failed to stop* an assignment to the New Patel Franchisees, but that is a far cry from "inspir[ing]" or "call[ing] forth" an alleged breach. *See Tamko,* 450 F.3d at 830.

As to the second prong, that "the contract would have been performed" absent KFC Corporation's action, Sisson argues only that "the Patels would not have been able to execute their scheme but for KFC Corporation's approval" of the new entities. (Opp. at 5.) That contention, however, falls well short of alleging that the Patels would have *paid the rent* if KFC Corporation had done something different. Sisson's own allegations say the opposite.[2] Sisson has thus failed to allege facts meeting Missouri's two-part test for interfering conduct, foreclosing his Count IV.

### B. The Amended Complaint Does Not Allege An Absence Of Justification.

KFC Corporation also established that Sisson's claim fails for the independent reason that he cannot allege that KFC Corporation lacked justification for its actions. (Mot. at 8-10.) In response, Sisson concedes that KFC Corporation had a legal right to approve franchisees as it saw fit (Opp. at 6 ("true in the abstract")), but he insists that KFC Corporation lacked justification because it did not have a "legitimate interest" in approving *these* franchisees. (*Id.* at 5.) Sisson himself, however, alleges that KFC Corporation received "royalties, advertising fees[,]" and other amounts in connection with licensing these companies, all of which are clearly "legitimate interests" of a franchisor. (Am. Compl. ¶ 76.) Further, even though Sisson repeatedly argues that

---

[2] Sisson alleges that the Patels "never intended" to pay the rent, (Am. Compl. ¶ 28); the Patels "demand[ed] reductions of monthly rent" even before they purchased the restaurants, (*id.* ¶ 27); and, by August 2011, Sisson already had "claims for unpaid back rent," (*id.* ¶ 41).

KFC Corporation had no "legitimate business purpose" in licensing so-called "shell companies" (Opp. at 5-7), Sisson himself alleges that KFC Corporation obtained *guaranties* from other Patel-owned businesses (Am. Compl. ¶¶ 38, 78), making it clear that KFC Corporation was not making its decisions based solely on the creditworthiness of the new companies.[3] Even putting that aside, the law is clear that a defendant need not identify any particular economic interest so long as it "has an unqualified legal right to do the action of which the petition complains." *Baldwin Props., Inc. v. Sharp*, 949 S.W.2d 952, 957 (Mo.App. W.D. 1997) (quotation marks omitted). It is undeniable that KFC Corporation has an unqualified right to license its own franchisees.

Separately, Sisson argues that KFC Corporation acted without justification because it supposedly employed "improper means." (Opp. at 6-7.) "Improper means," however, refers to conduct that would form an independent basis for liability—*e.g.,* torts such as fraud or threats of violence. *See Ariel Preferred Retail Grp., LLC v. CWCapital Asset Mgmt.*, No. 4:10CV623SNLJ, 2011 WL 4501049, at *3 (E.D. Mo. Sept. 28, 2011). Nothing in the pleading alleges such conduct by KFC Corporation. In his brief, Sisson makes vague reference to using the corporate form for an "improper purpose" (Opp. at 6), but Sisson does not allege that *KFC Corporation* misused any corporate form. Count IV fails for this additional reason.

    **C.**    **The Amended Complaint Does Not Allege A Valid Business Expectancy.**

KFC Corporation also established that Sisson's theory that KFC Corporation interfered with an alleged "expectancy" fails. (Mot. at 10-11.) In response, Sisson argues that "a business expectancy may be based on an existing enforceable contract" and he purportedly had an "expectancy that only solvent entities would be lessees" (Opp. at 7), but he is wrong on the law.

---

[3] There is nothing improper about contracting with a company that is backed by a guaranty. Indeed, Sisson himself similarly entered into rent agreements with the new franchisees that were guaranteed by another Patel-owned business. (*Id.* ¶¶ 41-42.)

The type of business expectancy "based on an existing enforceable contract" discussed in Missouri cases is an expectancy of *continued business* from a counterparty under an existing contract. *E.g.*, *BMK Corp. v. Clayton Corp.*, 226 S.W.3d 179, 191-92 (Mo.App. E.D. 2007). That is not what Sisson alleges. Rather, he alleges an expectation as to the characteristics of future, as-yet unidentified tenants. That alleged "expectancy" runs afoul of the basic principle that an alleged business expectancy "cannot be too indefinite or remote." *John Beal, Inc. v. Roofpros, Inc.*, No. 4:16 CV 1151 CDP, 2016 WL 7439214, at *3 (E.D. Mo. Dec. 27, 2016).[4] In all events, even if Sisson had alleged a protectable expectancy (he has not), his claim would fail for the same reasons discussed above—a lack of intentional interference by KFC Corporation and a failure to allege an absence of justification. (*See* Mot. at 11.) Count IV should be dismissed.

## II. Sisson Fails To State A Claim For Civil Conspiracy Against KFC (Count V).

KFC Corporation also established in its motion that Sisson's claim for civil conspiracy should be dismissed. (*Id.* at 12-13.) The amended complaint lacks any non-conclusory allegations that KFC Corporation agreed to join and advance the Patels' alleged scheme, or that KFC Corporation undertook any wrongful conduct in support of a conspiracy.

In response, Sisson argues that he has pleaded "circumstantial indication[s]" from which the Court may infer an illicit meeting of the minds (Opp. at 9-10), but circumstantial allegations are not enough where they are "merely consistent with" potential liability and equally consistent with lawful conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice [to state a claim]."). Such is the case here. Sisson alleges

---

[4] Sisson's cited authority on this point is inapposite. *See Rail Switching Servs.*, 533 S.W.3d at 263-66 (holding plaintiff did *not* plead a valid business expectancy after concluding plaintiff's alleged contract with defendant was void).

that KFC Corporation approved the New Patel Franchisees, which it had an unqualified legal right to do. (Am. Compl. ¶ 75.) In addition, Sisson alleges that KFC Corporation accepted from the Patels various sums incident to a typical franchisor-franchisee relationship, including "past-due amounts," "franchise transfer and restructure fees," "continued royalties, advertising fees[,] and other sums." (*Id.* ¶ 76.) None of those allegations suggest wrongdoing any more than they suggest lawful conduct on the part of KFC Corporation; they therefore cannot support Count V.[5]

### III. Independently, All Of Sisson's Claims Against KFC Are Time-Barred.

As an independent matter, KFC Corporation established that Sisson's claims against it are barred by the five-year statute of limitations contained in Mo. Rev. Stat. § 516.120. (Mot. at 13-15.) Sisson's own allegations show that he was on notice of any alleged injury from the approval of the new franchisees by August 2012, at the latest, by which time the leases had been assigned to those companies and they had defaulted. (Am. Compl. ¶¶ 19, 22, 25, 43, 47, 49.)

Sisson makes only two arguments in response: (1) he says his tortious interference claims against KFC Corporation have not yet accrued because he supposedly suffers a new injury every time the new franchisees do not pay the full rent; and (2) his conspiracy claim is subject to a *ten*-year statute of limitations. (Opp. at 11-15.) Both arguments are wrong.

**1. The statute has run on Count IV.** A cause of action accrues when "a reasonable person would have been put on notice that an injury and substantial damages may have occurred

---

[5] Sisson cites *Global Control Systems, Inc. v. Luebbert*, No. 4:14-CV-657-DGK, 2016 WL 8730159, at *4 (W.D. Mo. Jan. 15, 2016), for the proposition that a court may infer a meeting of the minds from allegations of "knowledgeable participation" (Opp. at 10), but the plaintiff's allegations in that case differ materially from Sisson's. In *Luebbert*, a single defendant (Luebbert) was closely connected to two other defendants: his own company (Atlas) and a different company that he "began working at." *Id.* at *1. In that context, the court held that the plaintiff had alleged sufficient facts to establish that all of the defendants had a "unity of purpose" or "common design." *Id.* at *4. In contrast, here, Sisson has failed to plead that KFC Corporation did anything other than approve franchisees according to its own, lawful interests.

and would have undertaken to ascertain the extent of the damages." *Aguilar v. Thompson Coburn LLP*, 540 S.W.3d 910, 914 (Mo.App. E.D. 2018) (quotation marks omitted). Here, the only allegedly interfering *act* by KFC Corporation was the alleged approval of the New Patel Franchisees as KFC franchisees in 2011. (*See* Am. Compl. ¶ 116.) That act allegedly allowed the assignment of the leases to the New Patel Franchisees, which Sisson characterizes as a breach of the duty of good faith and fair dealing. (*Id.* ¶¶ 103, 116.) And the amended complaint establishes that Sisson was on notice as to any injury from the assignments by August 2012, at the latest, when the New Patel Franchisees defaulted. (*Id.* ¶¶ 43, 47, 49.)

Sisson does not contest any of the foregoing. Instead, he argues that additional rent defaults by the *tenants* after 2012 somehow toll his time to sue *KFC Corporation*. (Opp. at 14.) Under Sisson's theory, the statute of limitations against KFC Corporation will not begin to run "until the end of the lease terms in 2025," more than *fourteen years* after KFC Corporation approved the new franchisees! (*Id.*) That is not the law. As the court explained in *D'Arcy & Associates., Inc. v. K.P.M.G. Peat Marwick, L.L.P.*, the "continuing tort exception" does not apply where the defendant commits a single act of alleged interference, even if the resulting damages "may continue to develop" over time. 129 S.W.3d 25, 30 (Mo.App. W.D. 2004). That is because "[a]ccrual requires only that *some* damage be sustained and be capable of being ascertained." *Id.* at 29 (emphasis added).[6] Here, KFC Corporation's alleged interference was completed in 2011 and produced at least some alleged damages by August 2012. (Am. Compl. ¶¶ 19, 22, 25, 43, 47, 49.) Indeed, the specific *breach* that Sisson alleges KFC Corporation "facilitate[ed]" was the assignment of the leases to the new franchisees, not a failure to pay rent years later. (*Id.* ¶ 116.)

---

[6] *See also Allen v. Martin, Leigh & Laws, PC,* No. 6:18-03100-CV-RK, 2019 WL 470915, at *3-5 (W.D. Mo. Feb. 6, 2019) (tortious interference claim arising out of the sale of property accrued when damages were first ascertained).

Sisson does not allege any continuing conduct (or any conduct at all) by KFC Corporation after 2011. The statute thus began to run by 2012, at the latest.

Sisson nonetheless argues that language in Mo. Rev. Stat. § 516.100 regarding "more than one item of damage" allows him to wait until the final lease payment to sue KFC Corporation, but courts applying Missouri law have rejected the same reasoning. For example, the Eight Circuit held that "damages resulting from a single wrong that develop and become more serious over time" *do not* constitute "separate items of damage" under that statute. *Nettles v. Am. Tel. & Tel. Co.*, 55 F.3d 1358, 1363 (8th Cir. 1995).[7] The *D'Arcy* court expressly considered section 516.100 but held that continuing damages flowing from an alleged act of interference did not extend the statute of limitations. 129 S.W.3d at 28-30. The same result applies here.

As a last-ditch effort, Sisson argues that he should be able to sue KFC Corporation for unpaid rent that arose in the last five years because each alleged underpayment "constitutes a separate cause of action" (Opp. at 14-15), but this argument just rehashes the same mistakes as above. Sisson does not develop a "separate cause of action" against KFC Corporation every month; he has sued KFC Corporation for a single act of alleged interference that occurred more than five years before the institution of this action. That claim is time-barred.

**2. The statute has run on Count V.** Sisson's argument regarding his conspiracy claim is equally misplaced. Sisson argues that the statute of limitations for this claim is ten years rather than five because, although civil conspiracy is a tort, his conspiracy claim relates to a breach of contract and therefore adopts a ten-year limitations period from Mo. Rev. Stat. § 516.110(1), which relates to contract actions "for the payment of money." Sisson cannot identify *any* Missouri case

---

[7] Instead, the "critical date for purposes of section 516.100 is the date on which a plaintiff could have first successfully maintained a lawsuit." *Premier Bank v. Tierney*, Nos. 95-1003-CV-W-1-6, 95-1005-CV-W-1-6, 1997 WL 176704, at *4 (W.D. Mo. Apr. 8, 1997).

ever adopting this convoluted theory, for good reason. Missouri courts have long held that the statute of limitations for the tort of civil conspiracy claims is *five* years. *Olean Assocs., Inc. v. Knights of Columbus*, 5 S.W.3d 518, 521-22 (Mo.App. E.D. 1999) (affirming dismissal of conspiracy claim under "five-year statute of limitations"); *May v. AC & S, Inc.*, 812 F. Supp. 934, 943 (E.D. Mo. 1993) ("A conspiracy cause of action is governed by the five year statute of limitations of § 516.120."). Sisson does not cite a single Missouri case (and we have found none) applying a different statute of limitations to a claim of civil conspiracy.

Instead, Sisson attempts to find support from dicta in *Dean v. Noble*, 477 S.W.3d 197 (Mo.App. W.D. 2015), and a practice guide interpreting that case, but *Dean* does not help Sisson. There, the court held that a five-year statute of limitations barred the plaintiff's fraud claim, which the court held also doomed the plaintiff's conspiracy claim, because the conspiracy claim was "derivative" of the fraud claim. *Id.* at 206. Sisson attempts to draw from that holding the notion that the statute of limitations for a conspiracy claim is always "derivative" of whatever other wrongdoing is alleged, and therefore can expand *beyond* five years, but neither *Dean* nor any other Missouri case that we have located has so held. Any such holding would be wrong, because, whatever the other misconduct alleged, civil conspiracy is a *tort*, *Suppes v. Curators of Univ. of Mo.*, 613 S.W.3d 836, 855 (Mo.App. W.D. 2020), and is therefore subject to the five-year statute of limitations for torts, Mo. Rev. Stat. § 516.120.

In sum, Sisson's claims against KFC Corporation, filed more than five years after Sisson knew he had allegedly been injured by the lease assignments, are untimely.

## CONCLUSION

KFC Corporation respectfully requests that the Court dismiss Counts IV and V of the amended complaint with prejudice.

Respectfully Submitted,

Dated: February 19, 2021　　　　**KFC Corporation, Inc.**

*/s/ Daniel J. Weiss*

Daniel J. Weiss　ARDC No. 6256843
*Pro Hac Vice*
Kaitlin M. Leskovac　ARDC No. 6327228
*Pro Hac Vice*
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:　(312) 923-4517
Facsimile:　(312) 527-0484
Email: DWeiss@jenner.com
　　　　KLeskovac@jenner.com

James D. Griffin　　MO #33370
Cameron E. Grant　　MO #72225
SCHARNHORST AST KENNARD GRIFFIN, PC
1100 Walnut, Suite 1950
Kansas City, Missouri 64106
Telephone:　(816) 268-9400
Facsimile:　(816) 268-9409
Email: JGriffin@sakg.com
　　　　CGrant@sakg.com

***Attorneys for Defendant KFC Corporation***

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 19, 2021, I caused a copy of the forgoing reply suggestions to be served on all counsel of record via the Court's electronic filing system.

*/s/ Daniel J. Weiss*
Daniel J. Weiss
