IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| TRYON P. SISSON, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | )   No. 20-05101-CV-SW-BP |
| | ) |
| MANISH PATEL, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### ORDER AND OPINION GRANTING KFC CORPORATION'S
### MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiffs leased property to some of the Defendants and have now asserted a myriad of claims arising from that relationship. Pending is a Motion for Judgment on the Pleadings filed by Defendant KFC Corporation, ("KFC"), which seeks judgment on Count V of the Second Amended Complaint. The motion, (Doc. 63), is **GRANTED**.

### I. BACKGROUND

Plaintiffs' properties were leased to entities that used the properties to operate KFC franchises. Those entities, other entities related to them, and the two individual defendants (Manish Patel and Pushpak Patel) are collectively referred to as "the Patel Defendants;"[1] Manish Patel and Pushpak Patel are referred to as "the Patels."

The three franchises at issue were part of a larger purchase of 32 franchises by the Patels, (Doc. 57, ¶ 30), and had leases on Plaintiffs' properties in place when the Patels purchased them. The newly purchased franchises were separated into two groups; one group was considered healthy and the other was considered "lower-performing." (Doc. 57, ¶ 31.) The Patel Defendants allegedly employed an array of limited liability companies to finance, own and operate the lower performing

---

[1] The entities are: Mitra Camdenton, Mitra Neosho, Mitra Mt. Vernon, Mitra Hedgehog, CMG Operations, Mitra Midwest Operations, and Chalak Mitras Group, all of which are limited liability companies.

franchises so that the LLCs liable on the leases were uncapitalized or undercapitalized, insulating them (and the Patels) from liability and to create leverage from which the Patel Defendants could negotiate rent concessions and avoid "lease liability." (*E.g.*, Doc. 57, ¶¶ 28, 34-36, 38, 40.) However, absent Plaintiffs' consent the tenancies on the three leases could only be conveyed to an operator of a KFC franchise. To effectuate their plan the Patel Defendants "informed [KFC] of their plan to segregate underperforming stores in order to shield themselves from lease liability if store performance did not improve . . . ." (Doc. 57, ¶ 71.) Armed with this knowledge, and aware of the restriction on conveying the leases, in 2011 KFC approved the franchises' transfer to under- or uncapitalized LLCs, even though doing so was contrary to KFC internal policies for approving franchises. (Doc. 57, ¶¶ 74-75.) In return, KFC "received substantial sums of money in exchange for granting . . . franchisee approval to the various entities created by [the Patels] for purposes of avoiding lease liability," including "more than $1.2 million in past due amounts . . . franchise transfer and restructure fees, and . . . other sums paid by [the Patels] through their various entities." (Doc. 57, ¶ 76.)

Later in 2011, relying on the poor financial condition of the LLCs, the Patel Defendants negotiated with Plaintiffs to resolve claims over past-due rent and reduce the rent for a year; the agreement provided that the rent would return to the original levels after the year. (Doc. 57, ¶ 41.) But, when the rent returned to the original levels on August 1, 2012, the Patel Defendants continued paying the reduced rent, thereby creating ever-increasing rent arrearages each month. (Doc. 57, ¶¶ 43, 47, 49.)

The Second Amended Complaint asserts five claims, but only Counts I, IV and V are relevant to the issues raised in KFC's motion. Count I asserts a breach of contract claim against the Patel Defendants, alleging that they breached the leases by failing to pay the full rent after it

2

Case 3:20-cv-05101-BP   Document 75   Filed 06/11/21   Page 2 of 7

returned to the original amount in 2012. (*E.g.*, Doc. 57, ¶ 83.)  Count IV asserts that KFC tortiously interfered with the original leases by approving the franchise transfers. (*E.g.*, Doc. 57, ¶¶ 116-17.) Count V asserts that all Defendants – including KFC – are liable under a theory of Civil Conspiracy.

Two Motions to Dismiss were filed, one by the Patel Defendants and one by KFC.  The motions raised similar arguments relating to the statute of limitations and the legal sufficiency of some of the claims.  The motions were granted in part and denied in part; Counts I and V were not dismissed but Count IV was dismissed.[2]  Count I was not dismissed because the Court held that it states a claim for breach of a written agreement to pay money, and for that claim the statute of limitations is ten years. (Doc. 58, pp. 7-8.)[3]  Count IV was dismissed because the statute of limitations for the claim is five years, the claim accrued when Plaintiffs learned KFC had approved the transfer to LLCs that were undercapitalized, and Plaintiffs gained this knowledge in August 2011. (Doc. 58, p. 14.)

In addressing Count V, the Court first noted that civil conspiracy is not an independent cause of action, but rather a form of vicarious liability that imposes liability on one who does not actually commit a wrong if they agreed to help (and did help) the wrongdoer. (Doc. 58, pp. 14-15.)  The Court then interpreted Count V as "alleg[ing] that Defendants conspired to breach the written obligation to pay rent" so the statute of limitations was ten years. (Doc. 58, p. 16.)  The Court then (1) held the Second Amended Complaint sufficiently alleged a meeting of the minds between the Patel Defendants to breach the leases by not paying rent and (2) rejected KFC's

---

[2] Count II, which asserts a claim for breach of the duty of good faith and fair dealing against one of the Patel Defendants, was dismissed.  Count III, which asserts tortious interference with contract against some of the Patel Defendants, was not dismissed.  But as stated these claims are not relevant to the present discussion.

[3] All page numbers are those generated by the Court's CM/ECF system.

3

argument that it could not be liable because it had a different purpose than the Patel Defendants. (Doc. 58, p. 16.) The Court did not specifically address whether the Second Amended Complaint adequately alleged that KFC joined in the meeting of the minds with the Patel Defendants.

KFC now seeks judgment on the pleadings, arguing that "[n]othing in Count V links KFC Corporation to a failure to pay rent," (Doc. 63, p. 2), and that "what Plaintiffs allege is that KFC Corporation participated in a scheme to avoid liability [by helping] the Patels assign the leases from one corporate entity to another in March 2011." (Doc. 72, p. 1.) Plaintiffs contend that KFC has misconstrued the Second Amended Complaint and misread the Court's prior Order. (Doc. 69, p. 1.) The Court resolves these arguments below.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A motion for judgment on the pleadings should be granted when, accepting all facts pled by the nonmoving party as true and drawing all reasonable inferences from the facts in favor of the nonmoving party, the movant has clearly established that no material issue of fact remains and that the movant is entitled to judgment as a matter of law." *Schnuck Markets, Inc. v. First Data Merch. Servs. Corp.*, 852 F.3d 732, 737 (8th Cir. 2017). In other words, the Court reviews a 12(c) motion under the standard that governs 12(b)(6) motions. This standard requires the Court to "accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiffs." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008); *see also Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

4

> alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *E.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013).

The question underlying the parties' arguments is: what does Count V allege that KFC conspired to do? This issue was not fully addressed by the parties in their prior motions and thus was not fully addressed by the Court, but it is a significant question because "[a]lthough civil conspiracy has its own elements that must be proven, it is not a separate and distinct action. Rather, it acts to hold the conspirators jointly and severally liable for the underlying act." *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. 2012) (en banc) (cleaned up). Thus, it is necessary to identify "the underlying act" that Count V asserts KFC is vicariously liable for.

No independent tort or contract claim is asserted in Count V. It uses phrases such as "avoiding rent obligations" and "dodging rent payments," (*e.g.*, Doc. 57, ¶¶ 123, 126), but these phrases are unclear in at least two respects. First, it is not clear if they are referring to contract or tort claims. Second, it is not clear if they are referring to (1) rent obligations that were past due and for which the Patel Defendants obtained concessions after the transfers in 2011, (2) the rent due on the leases as they existed in 2011, for which the Patel Defendants were able to obtain a rent reduction for one year, or (3) the rent due in 2012 and beyond. The Court's prior Order operated on the premise that it was the third of these possibilities. Now that the parties have focused on "what Count V alleges as to KFC," the Court concedes that Count V may have been intended to

encompass all three possibilities – but regardless, the Court agrees that KFC is entitled to judgment on Count V.

In opposing KFC's original motion, Plaintiffs described Count V as based on the second option listed above: they argued that KFC conspired to help the Patels "dodge rent payments *on existing leases* by assigning those leases to uncapitalized shell companies that were created for the express purpose of avoiding lease liability." (Doc. 47, p. 12 (emphasis supplied).) Thus, Plaintiffs defended Count V as it related to KFC by focusing on the events of 2011 and the plan to create leverage to renegotiate the leases and resolve then-existing arrearages. This is essentially a summary of the tortious interference theory originally advanced in Count IV – but because Count IV is time barred, a claim of civil conspiracy based on that theory is also time barred.

The only conspiracy claim that would not be time barred is based on the breaches of the leases by failing to pay the rent in full beginning in 2012. To assert a claim against a party for civilly conspiring to breach a contract, a plaintiff must allege that (1) two or more persons; (2) with an objective of breaching a contract; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) the plaintiff was damaged. *See Western Blue Print*, 367 S.W.3d at 22. And, as the Court previously held, Count V states such a theory with respect to the Patel Defendants. But even if this is Plaintiffs' theory with respect to KFC (despite Plaintiffs' characterization of Count V when they responded to KFC's prior motion), the Court holds that the Second Amended Complaint does not allege that KFC conspired with any other Defendant to not pay the full rent in 2012. There is not even an allegation that the Patel Defendants had a plan in 2011 to pay less than full rent in 2012. And the allegations about KFC joining in a plan with the Patel Defendants specifically reference the events in 2011 and the plan to enable the franchises' transfer to undercapitalized LLCs; the plan to breach rent obligations beginning in

6

2012 is not mentioned in connection with KFC. (Doc. 57, ¶¶ 71, 74, 76.) In arguing otherwise Plaintiffs point to the Second Amended Complaint's references (previously discussed) to KFC's agreement to and involvement in the Patel Defendants' plan to "avoid liability" – but that phrase is too vague to be understood as referring to the rent obligations in 2012. Moreover, when Plaintiffs sought to refer to the 2012 rent obligations, they did so with specificity, (*e.g.*, Doc. 57, ¶¶ 43, 47, 49, 83), but there is no such specific reference in connection with KFC.

There are many allegations that KFC had a meeting of the minds with the Patel Defendants in 2011 to facilitate the transfer of the franchises so that the Patel Defendants could have leverage to negotiate concessions regarding past due rent and future rent obligations. However, all claims based on these allegations are time barred. And there are no allegations that KFC had a meeting of the minds with any of the Patel Defendants to fail to pay the full rent obligation in 2012, so KFC cannot be vicariously liable for those breaches. KFC is entitled to judgment on Count V.

### III. CONCLUSION

The Motion for Judgment on the Pleadings, (Doc. 63), is **GRANTED** and KFC is granted judgment on Count V.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
**DATE**: June 11, 2021   UNITED STATES DISTRICT COURT