**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION**

**TRYON P. SISSON, et al.,**

**Plaintiffs,**

**v.**

**Case No. 3:20-cv-05101-BP**

**MANISH PATEL, et al.,**

**Defendants.**

**SUGGESTIONS IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs Tryon P. Sisson, Shanon G. Sisson, Tryon N. Sisson and Dolores A. Sisson submit these suggestions in support of their Motion for Partial Summary Judgment (Doc. #105), filed October 22, 2021.

# Table of Contents

Table of Authorities ............................................................................................................ ii

Statement of Uncontroverted Material Facts ...................................................................... iv

    I.    The Properties and Leases at Issue in this Case .......................................... iv

    II.    Facts Establishing the Underlying Breaches of the Leases ........................... vii

    III.   Facts Establishing that the Court Should Pierce the Corporate Veil to
          Impose Liability on Manish Patel and Pushpak Patel ................................. xiii

Introduction .......................................................................................................................... 1

Argument and Authorities ..................................................................................................... 1

    I.    Plaintiffs are Entitled to Summary Judgment on Their Claim for Breach
         of Contract Against the Named Tenants on the Subject Leases ..................... 2

    II.    The Court Should Pierce the Corporate Veil of the Uncapitalized Shell
         Companies to Hold Manish Patel and Pushpak Patel Liable for Damages
         on the Claims Against those Entities ............................................................ 7

         A.    Manish Patel and Pushpak Patel had Complete Control and Domination
              Over the Finances, Policies and Business Practices of the Shell Companies ....... 8

         B.    Manish Patel and Pushpak Patel used Their Control Over the Shell
              Companies for the Improper Purpose of Avoiding Lease Obligations ............... 10

         C.    Plaintiffs have been Injured by Their Inability to Collect Judgments
              from the Shell Companies .................................................................... 12

Conclusion .......................................................................................................................... 13

# Table of Authorities

## Cases

*66, Inc. v. Crestwood Commons Redevelopment Corp.*, 998 S.W.2d 32 (Mo. 1999) .......................8, 10

*Assurance Gen. Contracting, LLC v. Ekramuddin*, 604 S.W.3d 761 (Mo. Ct. App. 2020) ...............4

*BP Prods. N. Am. Inc. v. Walcott Enters., Inc.*,
No. 08-6038-CV-SJ-HFS, 2009 WL 3229024 (W.D. Mo. Sept. 30, 2009) ................................6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................................1

*Clark v. Am. Family Mut. Ins. Co.*, 92 S.W.3d 198 (Mo. Ct. App. 2002) .........................................2

*Hibbs v. Berger*, 430 S.W.3d 296 (Mo. Ct. App. 2014) .......................................................7

*Icke v. Adams*, No. 4:06CV00685 ERW, 2008 WL 4938413 (E.D. Mo. Nov. 14, 2008) ................6

*John Knox Vill. v. Fortis Constr. Co.*, 449 S.W.3d 68 (Mo. Ct. App. 2014) .....................................8

*K.C. Roofing Ctr. v. On Top Roofing, Inc.*, 807 S.W.2d 545 (Mo. Ct. App. 1991) ...........................10

*Keveney v. Mo. Military Acad.*, 304 S.W.3d 98 (Mo. 2010)..................................................2

*Miller v. Gammon & Sons, Inc.*, 67 S.W.3d 613 (Mo. Ct. App. 2001) ...............................................4

*Mo. Ozarks Radio Network, Inc. v. Baugh*, 598 S.W.3d 154 (Mo. Ct. App. 2020) ...........................7

*Mobius Mgmt. Sys., Inc. v. W. Physicians Search, LLC*,
175 S.W.3d 186 (Mo. Ct. App. 2005) ..............................................................7-8, 10, 12

*Real Estate Investors Four, Inc. v. Am. Design Grp., Inc.*,
46 S.W.3d 51 (Mo. Ct. App. 2001)...................................................................... 8, 12-13

*Schlingman v. Reed*, 750 S.W.2d 501 (Mo. Ct. App. 1988) ...............................................7

*State ex rel. Family Support Div. v. Steak'm Take'm, LLC*,
524 S.W.3d 584 (Mo. Ct. App. 2017)...........................................................................7

*State ex rel. Nixon v. Childers*, 243 S.W.3d 403 (Mo. Ct. App. 2007) ...............................................2

*Tran v. Dave's Elec. Co.*, 361 S.W.3d 417 (Mo. Ct. App. 2011) ...................................................2

**Statutes and Rules**

Mo. Rev. Stat. § 408.020 ...................................................................................................4

Fed. R. Civ. P. 1 ...............................................................................................................1

Fed. R. Civ. P. 56 .............................................................................................................1

Case 3:20-cv-05101-BP   Document 106   Filed 10/22/21   Page 4 of 34

<u>**Statement of Uncontroverted Material Facts**</u>[1]

**I.    The Properties and Leases at Issue in this Case**

<u>**The Camdenton Property**</u>

1.     Plaintiffs Tryon P. Sisson and Shanon G. Sisson are the owners of the real property located at 298 East U.S. Highway 54, Camdenton, Missouri 65020 (the "Camdenton Property"). (Declaration of Tyron P. Sisson ("TPS Decl."), attached as **EXHIBIT 1**, ¶ 2.)

2.     Tryon P. Sisson and Shanon G. Sisson purchased the Camdenton Property in August 2006 and took assignment of all rights and interest as landlords under a commercial lease for that property originally executed on April 6, 2005 (the "Camdenton Lease"). (TPS Decl., **EX. 1**, ¶¶ 2-3; *see also* Lease Agreement attached as **EXHIBIT 2**.)

3.     The Camdenton Lease was made for a 20-year term and included the following rent schedule: (a) $9,246.16 per month for the first ten (10) years of the lease; (b) $9,708.47 per month for the next five (5) years of the lease; and (c) $10,193.89 per month for the last five (5) years of the lease. (Camdenton Lease, **EX. 2**, at 1, § 3.)

4.     Defendant Mitra Hedgehog, LLC became the tenant under the Camdenton Lease by virtue of an Assignment and Assumption of Lease from Table Rock Restaurants dated November 16, 2010. (TPS Decl., **EX. 1**, ¶ 4; *see also* Assignment and Assumption of Lease attached as **EXHIBIT 3**.)

5.     Mitra Camdenton, LLC became the tenant under the Camdenton Lease by virtue of an Assignment and Assumption of Lease from Mitra Hedgehog dated March 9, 2011. (TPS Decl., **EX. 1**, ¶ 6; *see also* Assignment and Assumption of Lease attached as **EXHIBIT 5**.)

---

[1]  These statements of fact are referred to in the body of the brief as: "SoF ¶ ___".

**The Neosho Property**

6.     Plaintiffs Tryon P. Sisson and Shanon G. Sisson are the owners of the real property located at 3075 Gardner-Edgewood Drive, Neosho, Missouri 64850 (the "Neosho Property). (TPS Decl., **EX.** 1, ¶ 9.)

7.     Tryon P. Sisson and Shanon G. Sisson purchased the Neosho Property in July 2006 and took assignment of all rights and interest as landlords under a commercial lease for that property originally executed on April 6, 2005 (the "Neosho Lease"). (TPS Decl., **EX. 1**, ¶¶ 9-10; *see also* Lease Agreement attached as **EXHIBIT 8**.)

8.     The Neosho Lease was made for a 20-year term and included the following rent schedule: (a) $8,944.54 per month for the first ten (10) years of the lease; (b) $9,391.76 per month for the next five (5) years of the lease; and (c) $9,861.35 per month for the last five (5) years of the lease. (Neosho Lease, **EX. 8**, at 1, § 3.)

9.     Defendant Mitra Hedgehog, LLC became the tenant under the Neosho Lease by virtue of an Assignment and Assumption of Lease from Table Rock Restaurants dated November 16, 2010. (TPS Decl., **EX. 1**, ¶ 11; *see also* Assignment and Assumption of Lease attached as **EXHIBIT 9**.)

10.     Mitra Neosho, LLC became the tenant under the Neosho Lease by virtue of an Assignment and Assumption of Lease from Mitra Hedgehog dated March 9, 2011. (TPS Decl., **EX. 1**, ¶ 13; *see also* Assignment and Assumption of Lease attached as **EXHIBIT 11**.)

**The Mt. Vernon Property**

11.     Plaintiffs Tryon N. Sisson and Dolores A. Sisson are the owners of the real property located at 1101 East Mt. Vernon Boulevard, Mt. Vernon, Missouri 65712 (the "Mt. Vernon Property). (Declaration of Tryon N. Sisson ("TNS Decl."), attached as **EXHIBIT 24**, ¶ 2.)

12.     Tryon N. Sisson and Dolores A. Sisson purchased the Mt. Vernon Property in October 2006 and took assignment of all rights and interest as landlords under a commercial lease for that property originally executed on April 6, 2005 (the "Mt. Vernon Lease"). (TNS Decl., **EX. 24**, ¶¶ 2-3; *see also* Lease Agreement attached as **EXHIBIT 25**.)

13.     The Mt. Vernon Lease was made for a 20-year term and included the following rent schedule: (a) $8,083.51 per month for the first ten (10) years of the lease; (b) $8,487.68 per month for the next five (5) years of the lease; and (c) $8,912.07 per month for the last five (5) years of the lease. (Mt. Vernon Lease, **EX. 25**, at 1, § 3.)

14.     Defendant Mitra Hedgehog, LLC became the tenant under the Mt. Vernon Lease by virtue of an Assignment and Assumption of Lease from Table Rock Restaurants dated November 16, 2010. (TNS Decl., **EX. 24**, ¶ 4; *see also* Assignment and Assumption of Lease attached as **EXHIBIT 26**.)

15.     Mitra Mt Vernon, LLC became the tenant under the Mt. Vernon Lease by virtue of an Assignment and Assumption of Lease from Mitra Hedgehog dated March 9, 2011. (TNS Decl., **EX. 24**, ¶ 6; *see also* Assignment and Assumption of Lease attached as **EXHIBIT 28**)

## II.    Facts Establishing the Underlying Breaches of the Leases[2]

16.    Effective January 1, 2011, the landlords entered into lease amendments with Mitra Hedgehog on all three properties that provided temporary rent reductions for each of the three leases. These amendments were all eventually cancelled when Mitra Hedgehog failed to make the rent payments required by the amendments. (TPS Decl., **EX. 1**, ¶¶ 5, 12; TNS Decl., **EX. 24**, ¶ 5; *see also* Amendments of Leases attached as **EXHIBITS 4, 10 and 27**.)

17.    Effective August 1, 2011, the landlords entered into second lease amendments with each of the current tenants on the three properties (Mitra Camdenton, Mitra Neosho and Mitra Mt. Vernon) that acknowledged the cancellation of the first lease amendments, acknowledged that rent payments had not been made as required under the first lease amendments, and provided for a new temporary rent reduction for each lease. (TPS Decl., **EX. 1**, ¶¶ 8, 15; TNS Decl., **EX. 24**, ¶ 8; *see also* Second Amendments of Leases attached as **EXHIBITS 7, 13 and 30**.)

18.    The second lease amendments for the three properties are not materially different and all provide as follows with respect to the temporary rent modification on each property:

> The Parties agree to modify Paragraph 3 of the Lease to allow for a temporary modification of Rent as described herein below. The parties agree that Tenant's monthly Rent obligation under the Lease for the period consisting of August 1, 2011 through July 31, 2012 shall be Four Thousand Eight Hundred Seventy Five Dollars ($4,875.00) per month ($58,500.00 for the calendar year). After and effective August 1, 2012, the Rent shall resume and continue throughout the remainder of the Lease Term in such amounts as originally set forth in the Lease, unless additional rent modifications are agreed to in writing by the Parties. The parties acknowledge and agree that the Rent reduction set forth in this Amendment is a temporary reduction for the period described herein only and it does not extend beyond said period during the Lease Term.

---

[2] For sake of efficiency, where the events and actions are taken by all Plaintiffs together and are the same for all three properties at issue in this case, collective reference is made in the statements of fact to "landlords" (meaning all named Plaintiffs) and the "three properties" (meaning the Camdenton Property, the Neosho Property, and the Mt. Vernon Property).

(TPS Decl., **EX. 1**, ¶ 16; TNS Decl., **EX. 24**, ¶ 9; *see also* Second Amendments of Leases attached as **EXHIBITS 7, 13 and 30**, at 1, § 3.)

19.     Mitra Hedgehog's guarantee of payment obligations applied only to amounts due under the second lease amendments and did not extend to future payment obligations under the primary leases after the temporary rent modifications expired. (TPS Decl., **EX. 1**, ¶ 17; Deposition of Manish Patel, attached as **EXHIBIT 32**, at 128:11-129:7, 129:22-130:8; *see also* emails attached as **EXHIBIT 14**.)

20.     After the 12-month period of the temporary rent reductions expired and the rent returned to full value on all three properties as of August 1, 2012, Mitra Hedgehog continued to pay only $4,875 in rent every month on each lease for each of the three properties. (TPS Decl., **EX. 1**, ¶ 18; TNS Decl., **EX. 24**, ¶ 11; Manish Patel Depo., **EX. 32**, at 65:2-66:4; Deposition of Pushpak Patel, attached as **EXHIBIT 33**, at 129:6-13, 131:3-12.)

21.     Mitra Midwest Operations, LLC became the tenant under both the Neosho Lease and the Mt. Vernon Lease by virtue of assignments from the respective tenants on those properties (Mitra Neosho and Mitra Mt Vernon) dated April 26, 2013. (TPS Decl., **EX. 1**, ¶ 19; TNS Decl., **EX. 24**, ¶ 12; *see also* Assignment and Assumption of Leases attached as **EXHIBITS 15 and 31**.)

22.     After it became the tenant on the Neosho Lease and the Mt. Vernon Lease, Mitra Midwest Operations continued to pay only $4,875 in rent each month on those leases. (TPS Decl., **EX. 1**, ¶ 20; TNS Decl., **EX. 24**, ¶ 13.)

23.     In early 2013, Manish Patel was working with Metropolitan Capital Advisors to re-finance the loan on stores that would be operated by Mitra Midwest Operations, including the res-

taurants on the Neosho Property and Mt. Vernon Property owned by Plaintiffs. Manish Patel authorized Jessica Rodriguez with Metropolitan Capital Advisors to work on behalf of the Mitra entities to obtain Landlord Consent and Estoppel forms in conjunction with this refinancing. (TPS Decl., **EX. 1**, ¶ 21; *see also* emails attached as **EXHIBIT 16**.)

24. After reviewing the proposed Landlord Consent and Estoppel forms provided by Ms. Rodriguez, Tryon P. Sisson email Ms. Rodriguez advising that Plaintiffs could not sign those forms because they incorrectly represented that rent was paid in full on the leases for the Neosho and Mt. Vernon restaurants. Mr. Sisson specifically advised Ms. Rodriguez that the temporary rent reductions on the leases for the properties expired, and that rent had returned to the full amount effective August 1, 2012. He advised her that $36,625.85 was due and owing in unpaid rent on the Neosho Lease and that $28,876.59 was due and owing in un-paid rent on the Mt. Vernon Lease. (TPS Decl., **EX. 1**, ¶ 22; *see also* email attached as **EXHIBIT 17**.)

25. Ms. Rodriguez forwarded Mr. Sisson's email regarding unpaid rent to Manish Patel, asking him to "please read the email below and advise." (TPS Decl., **EX. 1**, ¶ 23; *see also* email attached as **EXHIBIT 18**; *see also* Pushpak Patel Depo., **EX. 33**, at 132:20-133:16.)

26. In May 2017, Tryon P. Sisson sent a letter to Pushpak Patel advising him of continued defaults on the leases for all three properties at issue in this case. The letter specifically advised Pushpak Patel that the temporary rent reductions for the properties under the second lease amendments had expired, that the rent due had returned to the full value under the leases, and that substantial amounts of back rent were due on each property because the Mitra entities had continued to pay only $4,875 each month on each of the leases. (TPS Decl., **EX. 1**, ¶ 24; *see also* letter attached as **EXHIBIT 19**.)

27. Mr. Sisson's May 2017 letter to Pushpak Patel was sent via Federal Express with tracking to ensure delivery. Pushpak Patel later confirmed by email that he had received the letter via Federal Express. (TPS Decl., **EX. 1**, ¶ 25; *see also* email attached as **EXHIBIT 20**.)

28. Following delivery of Mr. Sisson's May 2017 letter, the parties engaged in negotiations to attempt to resolve the unpaid back rent and determine a new rental rate moving forward for each of the three properties. (TPS Decl., **EX. 1**, ¶ 26; *see also* letter attached as **EXHIBIT 21**.) These negotiations were not successful. (TPS Decl., **EX. 1**, ¶ 26.)

29. In September 2017, Tryon P. Sisson directed his attorney to send further correspondence to Pushpak Patel regarding lease defaults for unpaid rent and negotiations to potentially resolve the matter. (TPS Decl., **EX. 1**, ¶ 27; *see also* letter attached as **EXHIBIT 22**.)

30. This letter prompted a follow up letter from counsel representing the Mitra entities, acknowledging receipt of the letter from Mr. Sisson's attorney and indicating a willingness to continue negotiations to resolve the matter. (TPS Decl., **EX. 1**, ¶ 28; *see also* letter attached as **EXHIBIT 23**.) Further negotiations were not successful. (TPS Decl., **EX. 1**, ¶ 28.)

31. The restaurant on the Camdenton Property was closed in or around May 2017. (Second Am. Compl., Doc. #57, ¶ 45; Answer, Doc. #61, ¶ 45.)

32. After the Camdenton restaurant was closed, and continuing to the present day, the Mitra entities maintained possession of the property and continued to pay rent on the property in the amount of $4,875 per month, keep insurance on the property, make routine inspections of the property, maintain the condition of the property, and pay real estate taxes on the property. (Pushpak Patel Depo., **EX.33**, at 110:7-111:18, 116:15-118:12.)

33. After the Camdenton restaurant was closed, Mitra Hedgehog attempted as quickly as possible to sublease the property. (Pushpak Patel Depo., **EX. 33**, at 111:19-112:23.) Pushpak Patel is not aware of any sublease opportunity that was presented to the landlords of the Camdenton property for consent. (*Id.* at 119:14-23, 162:10-14.) Email correspondence produced by Defendants indicates that a prospective subtenant decided not to move forward with leasing the property due to the condition of the property and cost of repair. (*See* emails attached as **EXHIBIT 34** at MITRA 010038-010040.)

34. At all times pertinent to this lawsuit, the landlords have performed all obligations required by the leases for all three properties. (TPS Decl., **EX. 1**, ¶ 29; TNS Decl., **EX. 24**, ¶ 15.)

35. Manish Patel testified at his deposition that he is not aware of any conditions under the lease that the landlords failed to perform. (Manish Patel Depo., **EX. 32**, at 160:9-12.)

36. Underpayments on the leases for all three properties have continued to the present, with Mitra Hedgehog and/or Mitra Midwest Operations paying just $4,875 each month for rent on each lease. From August 2012 to October 2021, the total amount of unpaid rent on the Camdenton Lease is $530,944.23; the total amount of unpaid rent on the Neosho Lease is $495,971.53; and the total amount of unpaid rent on the Mt. Vernon Lease is $396,137.45. The accrued pre-judgment interest on the unpaid rent (calculated on a monthly basis as simple interest at the statutory rate of 9 percent per annum) totals $211,449.87 on the Camdenton Lease; $197,270.45 on the Neosho Lease; and $156,793.29 on the Mt. Vernon Lease. These sums will all continue to grow as rent is underpaid each month and pre-judgment interest accumulates. (TPS Decl., **EX. 1**, ¶ 30 & Schedule A; TNS Decl., **EX. 24**, ¶ 16 & Schedule A.)

37.     The landlords have never agreed orally or in writing to any further rent modification after the second lease amendments on the three properties expired as of August 1, 2012. Since that time, the landlords also have never agreed to accept reduced rent payments in full satisfaction of the amounts due under those leases, and they have never deliberately or affirmatively acquiesced to the underpayments of rent or relinquished their rights to challenge those payments or seek damages for breach of the leases. No payment of rent has ever been tendered to the landlords with the express condition that it be accepted in full satisfaction of the rent due and owing. (TPS Decl., **EX. 1**, ¶ 31; TNS Decl., **EX. 24**, ¶ 17.)

38.     Manish Patel admitted in his deposition that the landlords never told him verbally or in writing that they were accepting monthly payments of $4,875 in full satisfaction of the rent due on each of the three properties. He also admitted that there was never another agreement after the second lease amendments expired to modify the rent on those properties. (Manish Patel Depo., **EX. 32**¸ at 69:5-70:1, 163:23-164:15.)

39.     Pushpak Patel admitted in his deposition that the landlords never told him verbally that they were accepting monthly payments of $4,875 in full satisfaction of the rent due on each of the three properties. (Pushpak Patel Depo., **EX. 33**, at 17:9-23.)

40.     Manish Patel acknowledged in his deposition that the rent on all three properties has been underpaid since the second lease amendments expired and the rent returned to full value. (Manish Patel Depo., **EX. 32**, at 65:20-67:10; 81:11-20; 151:2-11.)

41.     In emails exchanged on June 5, 2017, regarding negotiations to resolve the rent dispute on the three properties, Chalak Mitras Group Managing Director Al Bhakta wrote to Pushpak Patel: "You need to deal with arrears. [Tryon P. Sisson] is expecting some payment towards a huge

back balance." Pushpak Patel responded: "ok makes sense." (*See* emails attached as **EXHIBIT 35** at MITRA 010956; *see also* Pushpak Patel Depo., **EX. 33**, at 138:22-144:24.)

42.     In a January 26, 2019, email to Pushpak Patel regarding the properties at issue in this case, Mitra property manager Thomas Michael wrote: ". . . we have been paying 50% of the rent stated in the lease on all three sites for a number of years. I do not have a current tally, but I believe our outstanding rent could be ~$900m," meaning $900,000. (*See* emails attached as **EXHIBIT 36** at MITRA 009802; *see also* Pushpak Patel Depo., **EX. 33**, at 160:20-161:22, 165:8-17.)

43.     In a July 18, 2019, email discussing potential options to offer to buy the Camdenton Property from the owners, Pushpak Patel wrote: "I doubt that he will sell us for $350k, as we owe them more than that in back rent." (*See* emails attached as **EXHIBIT 37** at MITRA 010045; *see also* Pushpak Patel Depo., **EX. 33**, at 153:17-155:8.)

## III.     Facts Establishing that the Court Should Pierce the Corporate Veil to Impose Liability on Manish Patel and Pushpak Patel

44.     In November 2010, an Asset Purchase Agreement was executed to acquire rights of operation for a portfolio of 32 restaurants from Table Rock Restaurants. Counsel for the acquiring parties explained the deal as follows:

> As you may know, [Chalak Mitras Group] is purchasing these assets as-is, essentially, in exchange for a very low purchase price. Our clients have performed significant due diligence, however, and are satisfied that they are getting a very good deal. . . .
>
> Manish Patel and Pushpak Patel are approved franchisees and are the sole owners of CMG Operations, LLC, and Mitra Hedgehog, LLC. Those two LLCs will be the operating entities and will hold the franchise agreements. As is explained below, the operating entities will also hold the leases. They will lease the equipment, inventory, etc. from Chalak Mitras Group, LLC, and will be given the right to operate the stores for Chalak Mitras Group, LLC, in exchange for payment of profits to Chalak Mitras Group, LLC. . . .

(Laura Hebert email attached as **EXHIBIT 38**, at MITRA 001051; *see also* Manish Patel Depo., **EX. 32**, at 25:5-26:6, 31:10-34:4.)

45. Manish Patel and Pushpak Patel were the two managers to Chalak Mitras Group. (Pushpak Patel, **EX. 33**, at 33:15-25.)

46. Mannish Patel and Pushpak Patel knew that many of the stores being acquired from Table Rock Restaurants were under lease to the property owners. They were able to review those leases before the deal closed, knew the terms of those leases (including rent), and took assignment of the leases voluntarily with the understanding and knowledge that they would be legally obligated to pay the rent required by those leases. (Manish Patel Depo., **EX. 32**, at 40:18-23, 41:16-42:1, 42:11-43:6; Pushpak Patel Depo., **EX. 33**, at 28:13-18, 30:4-18, 71:2-6.)

47. Manish Patel and Pushpak Patel also performed due diligence before the acquisition closed, including review of store financials that showed them some restaurants in the portfolio were profitable and others were losing money. (Pushpak Patel Depo., **EX. 33**, at 25:14-26:11.)

48. After the Asset Purchase Agreement with Table Rock Restaurants closed, the 32 restaurants acquired in the deal were immediately allocated between two entities—CMG Operations and Mitra Hedgehog. (Manish Patel Depo., **EX. 32**, at 43:7-12.)

49. The division of restaurants between the two operating entities was based "strictly on economics"—"healthier stores" were assigned to CMG Operations and "underperforming stores" were assigned to Mitra Hedgehog. (Manish Patel Depo., **EX. 32**, at 50:17-51:10, 88:9-90:8.)

50. Other than the restaurant allocations, there was no operational difference between Mitra Hedgehog and CMG Operations. (Manish Patel Depo., **EX. 32**, at 91:15-21.)

51.     The Camdenton, Neosho and Mt. Vernon restaurants were considered "underper-forming stores" and were assigned to Mitra Hedgehog at the outset. (Manish Patel Depo., **EX. 32**, at 56:21-57:11, 90:1-8.)

52.     Manish Patel considered Tyron Sisson to be an "unfriendly" landlord because they could not come to terms on new rent and he believed Mr. Sisson was "a landlord that's not going to work with" the Mitra entities. (Manish Patel Depo., **EX. 32**, at 121:21-7.)

53.     Manish Patel and Pushpak Patel are (and always have been) the creators, managers and 50/50 owners of Mitra Hedgehog, CMG Operations, Mitra Camdenton, Mitra Neosho, Mitra Mt. Vernon and Mitra Midwest Operations. (Manish Patel Depo., **EX. 32**, at 36:3-37:7; 51:21-52:5, 149:24-150:8; Pushpak Patel Depo., **EX. 33**, at 31:9-19, 57:3-6, 57:15-58:8, 101:18-102:10.)

54.     Manish Patel and Pushpak Patel are the two individuals completely responsible for making all decisions of Mitra Hedgehog, CMG Operations, Mitra Camdenton, Mitra Neosho, Mitra Mt. Vernon and Mitra Midwest Operations regarding all the transactions at issue in this case. (Manish Patel Depo., **EX. 32**, at 52:6-10, 83:16-84:1, 150:9-21; Pushpak Patel Depo., **EX.33**, at 31:20-23, 57:7-9.)

55.     Manish Patel signed and filed the creation documents for Mitra Camdenton, Mitra Neosho, Mitra Mt. Vernon with the Missouri Secretary of State. (*See* Articles of Organization, attached as **EXHIBIT 39**.)

56.     The respective assignments of the leases for the three properties to Mitra Cam-denton, Mitra Neosho and Mitra Mt Vernon were made without landlord consent pursuant to Section 26 of each lease, which states in part: ". . . Tenant may assign this Lease . . . to a KFC Corpo-ration franchisee or licensee (an "Approved Franchisee"), without consent of Landlord." Mitra

Camdenton, Mitra Neosho and Mitra Mt Vernon were all approved KFC franchisees that had received the rights to operate the restaurants on the respective properties through franchise assignments from Mitra Hedgehog. (TPS Decl., **EX. 1**, ¶¶ 7, 14; TNS Decl., **EX. 24**, ¶ 7; *see also* Assignment of Franchise attached as **EXHIBITS 6, 12 and 29**.)

57.     Manish Patel and Pushpak Patel were responsible for making and executing the decision to have Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon approved as KFC franchisees so that the respective leases for each property could be assigned to those entities. (Manish Patel Depo., **EX. 32**, at 59:21-60:13, 133:1-12; Pushpak Patel Depo., **EX. 33**, at 58:9-60:5.)

58.     Pushpak Patel signed each lease assignment to Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon as the manager of those companies and Manish Patel signed the assignments as the manager of Mitra Hedgehog. (Manish Patel Depo., **EX. 32**, at 131:10-132:19, 133:13-134:9; *see also* Assignment and Assumption of Lease attached as **EXS. 5, 11 and 28**.)

59.     Manish Patel signed each franchise assignment to Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon in a dual capacity as both manager of those entities and manager of Mitra Hedgehog, and Pushpak Patel signed as a witness on the assumption of franchisee obligations by Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon. (*See* Assignment of Franchise and Release attached as **EXS. 6, 12 and 29**.)

60.     No consideration was paid by Mitra Camdenton, Mitra Neosho and Mitra Mt. Vernon for the assignments of the leases. (Manish Patel Depo., **EX. 32**, at 132:20-25.)

61.     Manish Patel admitted in his deposition that avoiding lease liability was one reason why the leases for the Camdenton, Neosho and Mt. Vernon restaurants were assigned to Mitra

Camdenton, Mitra Neosho and Mitra Mt. Vernon (what he referred to as "single-purpose enti-ties"). Avoiding vendor liability was another reason. (Manish Patel Depo., **EX. 32**, at 43:21-44:16, 45:9-13, 46:13-47:10, 52:11-53:11.)

62.     In December 2012, Manish Patel sent an email to Sunny Sajnani of Metropolitan Capital Advisors in connection with refinancing of the bank loan on the restaurant portfolio stating that the single-purpose entities (including Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon) did not have employer identification numbers and "were just scare tactics for landlords." (Emails attached as **EXHIBIT 40**, at MITRA 010963; *see also* Manish Patel Depo., **EX. 32**, at 134:14-136:16, 140:12-141:1.)

63.     Manish Patel explained in his deposition that Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon did not have any functional existence and were used to scare Plaintiffs into giving rent concessions on the leases for the properties because Plaintiffs were "not really working with" Manish Patel and Pushpak Patel on the issue of rent. (Manish Patel Depo., **EX. 32**, 141:2-142:19, 144:1-8.)

64.     The parties have made the following stipulations regarding the financial condition of Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon:

(a)     From their creation to their dissolution, Mitra Camdenton, LLC, Mitra Mt Vernon, LLC, and Mitra Neosho, LLC had no cash or operating capital. They held the leases for the properties and the franchise agreements for the restaurants. They did not have operating capital to pay rent or the other expenses of the restaurant operations.

(b)     After the Camdenton lease was assigned to Mitra Camdenton, LLC, Mitra Hedge-hog, LLC continued to pay all operating expenses at the Camdenton property, in-cluding rent payments.

(c)     After the Mt. Vernon and Neosho leases were assigned to Mitra Mt Vernon, LLC and Mitra Neosho, LLC respectively, Mitra Hedgehog, LLC continued to pay all operating expenses at the Mt. Vernon and Neosho properties, including rent payments due through May 2013 (paid April 23, 2013). Thereafter, following an assignment of the leases to Mitra Midwest Operations, LLC, and starting with the rent payments due for June 2013 (paid May 23, 2013), Mitra Midwest Operations, LLC has paid all operating expenses at the Mt. Vernon and Neosho properties, including rent payments.

(d)     The assets and liabilities of the Camdenton, Mt. Vernon, and Neosho properties have been claimed on the financial statements of either Mitra Hedgehog, LLC or Mitra Midwest Operations, LLC since November 2010. At no time did Mitra Camdenton, LLC, Mitra Mt Vernon, LLC, and Mitra Neosho, LLC have the ability to independently operate the respective restaurants.

(e)     Mitra Camdenton, LLC, Mitra Mt Vernon, LLC, and Mitra Neosho, LLC had no income, employees, bank accounts, or tax returns.

(f)     At all times since November 2010, entities other than Mitra Camdenton, LLC, Mitra Mt Vernon, LLC, and Mitra Neosho, LLC have procured insurance coverage, utility services and business licenses for operation of the restaurants on the Camdenton, Mt. Vernon, and Neosho properties.

(Stipulations attached as **EXHIBIT 41**.)

65.     Manish Patel and Pushpak Patel were responsible for deciding that all financial operations for the restaurants at issue in this case would be run through Mitra Hedgehog and/or Mitra Midwest Operations and that Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon would not have any bank accounts, would not have any cash or operating capital, would not file any separate tax returns, would not have any employees, and would not make any rent payments. (Pushpak Patel Depo., **EX. 33**, at 60:13-66:5.)

66.     Pushpak Patel admitted in his deposition that a judgment against Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon would be uncollectible from any of those entities. (Pushpak Patel Depo., **EX. 33**, at 168:5-170:7.)

## Introduction

The Court should grant summary judgment in favor of Plaintiffs on their claim for breach of contract because the undisputed facts show that the tenants on the three commercial leases at issue in this case have not paid the full amount of rent due and owing on those leases. The undisputed facts also show that three of those tenants—Defendants Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon—are uncapitalized shell companies admittedly created by Defendants Manish Patel and Pushpak Patel for the improper purpose of avoiding liability on the leases. Under the circumstances, the Court should pierce the corporate veil of the uncapitalized shell companies to hold the Patels liable for the damages assessed against those companies.

This is not the first time the Court has been faced with claims against the Patels and their companies for improper conduct culminating in breach of a lease. The facts in this case are virtually identical to those in the *Wise* Lawsuit, where this Court granted summary judgment on a breach of contract claim and pierced the corporate veil of an uncapitalized shell company to impose liability against the Patels. (*See* Doc. #105-1.) The Court should reach the same result here.

## Argument and Authorities

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment "should . . . be granted so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1).

1

## I.     Plaintiffs are Entitled to Summary Judgment on Their Claim for Breach of Contract Against the Named Tenants on the Subject Leases

Under Missouri law, the essential elements of a breach of contract claim are: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010). Missouri courts recognize that these elements are appropriate for determination as a matter of law on summary judgment. *State ex rel. Nixon v. Childers*, 243 S.W.3d 403, 405 (Mo. Ct. App. 2007) ("Where . . . the essential facts are not in question, disputes arising from the interpretation and application of a contract are matters of law for the court."); *Clark v. Am. Family Mut. Ins. Co.*, 92 S.W.3d 198, 201 (Mo. Ct. App. 2002) ("Summary judgment is particularly appropriate if the issue to be resolved is construction of a contract that is unambiguous on its face.").

In this case, all essential elements on the breach of contract claim are readily established. For the first element, the existence and terms of the relevant contracts are found in the leases for each of the three properties. (SoF ¶¶ 2-3, 7-8, 12-13.) With respect to the second element, Plaintiffs have performed all obligations required by those leases. (SoF ¶ 34.) Defendant Manish Patel testified that he is unaware of any conditions under the leases that Plaintiffs failed to perform or satisfy. (SoF ¶ 35.)[3]

The record also demonstrates clear breaches of each of the three leases starting in August 2012, when temporary rent modifications in the second amendment for each lease expired and the

---

[3] Manish Patel and Pushpak Patel are the owners and managing members of the entity defendants in this case. (SoF ¶ 53.) Their statements constitute binding admissions on those entities under Missouri law. *See Tran v. Dave's Elec. Co.*, 361 S.W.3d 417, 422 n.6 (Mo. Ct. App. 2011) (testimony of corporate officer that "establishes the basic facts of plaintiff's case" will support judgment as a matter of law against corporate entity).

rent returned to full value under the original lease for each property. (SoF ¶¶ 17-18.) The second lease amendments expressly provided that "[a]fter and effective August 1, 2012, the Rent shall resume and continue throughout the remainder of the Lease Term in such amounts as originally set forth in the Lease, unless additional rent modifications are agreed to in writing by the Parties." (SoF ¶ 18.) No other rent modifications have even been agreed to by the parties since the second lease amendments expired. (SoF ¶ 37.) Manish Patel acknowledged this fact in this deposition. (SoF ¶ 38.)

When the rent modifications in the second lease amendments expired and the rent returned to full value, Mitra Hedgehog continued to pay just the modified amount of $4,875 each month for rent on each lease. (SoF ¶ 20.) When the Neosho Lease and Mt. Vernon Lease were later assigned to Mitra Midwest Operations starting in May 2013, that entity continued to pay just $4,875 each month for rent on those two leases. (SoF ¶¶ 21-22.) These breaches through underpayment of rent have continued to the present. (SoF ¶ 36.) Plaintiffs have never agreed to accept reduced rent payments in full satisfaction of the amounts due under the leases and no rent payment has ever been tendered to Plaintiffs with the express condition that it be accepted in full satisfaction of the rent due and owing. (SoF ¶ 37.) Manish Patel and/or Pushpak Patel were notified in writing on at least three occasions of Plaintiff's position that the rent on the leases had returned to full value and that the leases were in default for underpayment. (SoF ¶¶ 23-30.)

Manish Patel and Pushpak Patel admitted that Plaintiffs never agreed verbally or in writing to accept reduced monthly payments of $4,875 in full satisfaction of the rent due and owing under the leases. (SoF ¶¶ 38-39.) To the contrary, Manish Patel acknowledged in his deposition that rent on all three properties has been underpaid since the second lease amendments expired and the rent returned to full value. (SoF ¶ 40.) In internal email correspondence, Pushpak Patel and other Mitra

representatives have also acknowledged that huge amounts of unpaid rent are due and owing on the leases for all three properties. (SoF ¶¶ 41-43.)

Damages in this case are readily established. They include unpaid rent to date on each of the leases, as well as pre-judgment interest on those liquidated sum of damages at the statutory rate of 9 percent per annum. Mo. Rev. Stat. § 408.020; *see also Miller v. Gammon & Sons, Inc.*, 67 S.W.3d 613, 624-25 (Mo. Ct. App. 2001) (permitting recovery of pre-judgment interest on breach of lease claim under Section 408.020 because "the rental payments due under the lease were fixed and ascertainable"). "Awards of pre-judgment interest are not discretionary; if the statute applies, the trial court must award pre-judgment interest." *Assurance Gen. Contracting, LLC v. Ekramuddin*, 604 S.W.3d 761, 772 (Mo. Ct. App. 2020).

The Camdenton Lease called for monthly rent payments of $9,246.16 per month from August 2012 to March 2015; $9,708.47 per month from April 2015 to March 2020; and $10,193.89 per month from April 2020 to the present. (SoF ¶ 3.) At all times since August 2012, the named tenant on the lease has been Mitra Camdenton, although Mitra Hedgehog has always made the rent payments of $4,875 per month. (SoF ¶¶ 5, 64(b).) To date, the total amount of unpaid rent under the Camdenton Lease is $530,944.23 and the accrued pre-judgment interest is $211,449.87. (SoF ¶ 36.) Altogether the total current damages on the claim against Mitra Camdenton for breach of the Camdenton Lease are **$742,394.10**.[4]

---

[4] These damages will continue to grow each month as rent is underpaid and additional pre-judgment interest accumulates. (SoF ¶ 36.) In addition to these damages, Plaintiffs seek to recover costs of repair for the Camdenton Property that are a product of a breach of the maintenance provision of the Camdenton Lease. (*See* Second Am. Compl., Doc. #57, ¶ 45.) This breach and the amount of the cost-of-repair damages are subject to factual dispute that cannot be resolved on summary judgment. Plaintiffs also seek punitive damages on their civil conspiracy claim (*id.* ¶ 128), which is another issue that cannot be resolved on summary judgment. Along with these additional measures of damage, Plaintiffs at trial will request any further sums of unpaid rent and pre-judgment interest that accumulate between the filing of this motion and the entry of final judgment.

4

The Neosho Lease called for monthly rent payments of $8,944.54 per month from August 2012 to March 2015; $9,391.76 per month from April 2015 to March 2020; and $9,861.35 per month from April 2020 to the present. (SoF ¶ 8.) From August 2012 to April 2013, the named tenant on the Neosho Lease was Mitra Neosho, although Mitra Hedgehog made rent payments of $4,875 per month. (SoF ¶¶ 10, 64(c).) For that period of time, the total amount of unpaid rent on the Neosho Lease was $36,625.86 and accrued prejudgment interest is $29,117.56.[5] (SoF ¶ 36 & Schedule A to Declaration of Tryon P. Sisson (Ex. 1).) The total current damages on the claim against Mitra Neosho for breach of the Neosho Lease are **$65,743.42**.

Since May 2013, the named tenant on the Neosho Lease has been Mitra Midwest Operations, which has continued to pay $4,875 per month in rent under the lease. (SoF ¶¶ 21-22, 64(c).) For that period of time, the total amount unpaid rent on the Neosho Lease is $459,345.67 and the accrued pre-judgment interest is $168,152.89.[6] (SoF ¶ 36 & Schedule A to Declaration of Tryon P. Sisson (Ex. 1).) Altogether, the total current damages on the claim against Mitra Midwest Operations for breach of the Neosho Lease are **$627,498.56**.

The Mt. Vernon Lease called for monthly rent payments of $8,083.51 per month from August 2012 to March 2015; $8,487.68 per month from April 2015 to March 2020; and $8,912.07 per month from April 2020 to the present. (SoF ¶ 13.) From August 2012 to April 2013, the named tenant on the Mt. Vernon Lease was Mitra Mt Vernon, although Mitra Hedgehog made the rent

---

[5] These figures are determined by reference to the Schedule of damages for the Neosho Property attached to the Declaration of Tryon P. Sisson (Exhibit 1 to this motion). They are the Total Unpaid rent and Total Accrued Interest from August 2012 through April 2013.

[6] These figures are determined by reference to the Schedule of damages for the Neosho Property attached to the Declaration of Tryon P. Sisson (Exhibit 1 to this motion). They are the Total Unpaid Rent and Total Accrued Interest minus the amounts that had accumulated prior to May 2013 when Mitra Midwest Operations took assignment of the Neosho Lease.

5

payments of $4,875 per month. (SoF ¶¶ 15, 64(c).) For that period of time, the total amount of unpaid rent on the Mt. Vernon Lease was $28,876.59 and the accrued prejudgment interest is $22,956.89.[7] (SoF ¶ 36 & Schedule A to Declaration of Tryon N. Sisson (Ex. 24).) Altogether, the total current damages on the claim against Mitra Mt Vernon for breach of the Mt. Vernon Lease are **$51,833.48**.

Since May 2013, the named tenant on the Mt. Vernon Lease has been Mitra Midwest Operations, which has continued to pay $4,875 per month in rent under the lease. (SoF ¶¶ 21-22, 64(c).) During that time, the total amount unpaid rent on the Mt. Vernon Lease is $367,260.86 and the accrued pre-judgment interest is $133,836.40.[8] (SoF ¶ 36 & Schedule A to Declaration of Tryon N. Sisson (Ex. 24).) Altogether, the total current damages on the claim against Mitra Midwest Operations for breach of the Mt. Vernon Lease are **$501,097.26**.

Summary judgment is properly entered on a breach of contract claim when all elements of the claim are supported by undisputed evidence. *See, e.g.*, *BP Prods. N. Am. Inc. v. Walcott Enters., Inc.*, No. 08-6038-CV-SJ-HFS, 2009 WL 3229024, at *4-8 (W.D. Mo. Sept. 30, 2009); *Icke v. Adams*, No. 4:06CV00685 ERW, 2008 WL 4938413, at *9-10 (E.D. Mo. Nov. 14, 2008) (granting summary judgment for plaintiff on breach of contract claim proven by defendants' admissions). Here, the Court should grant summary judgment in favor of Plaintiffs on the breach of contract claim and enter judgment against the respective defendants in the amounts outlined above.

---

[7] These figures are determined by reference to the Schedule of damages for the Mt. Vernon Property attached to the Declaration of Tryon N. Sisson (Exhibit 24 to this motion). They are the Total Unpaid rent and Total Accrued Interest from August 2012 through April 2013.

[8] These figures are determined by reference to the Schedule of damages for the Mt. Vernon Property attached to the Declaration of Tryon N. Sisson (Exhibit 24 to this motion). They are the Total Unpaid Rent and Total Accrued Interest minus the amounts that had accumulated prior to May 2013 when Mitra Midwest Operations took assignment of the Mt. Vernon Lease.

## II. The Court Should Pierce the Corporate Veil of the Uncapitalized Shell Companies to Hold Manish Patel and Pushpak Patel Liable for Damages on the Claims Against those Entities

Liability for breaches of the leases in this case does not end with the named tenants on the leases. Well-settled Missouri law holds that "[w]hen a corporation or LLC is used for an improper purpose and to perpetrate injustice by which it avoids its legal obligations, equity will step in, pierce the corporate veil and grant appropriate relief." *Mo. Ozarks Radio Network, Inc. v. Baugh*, 598 S.W.3d 154, 169 (Mo. Ct. App. 2020). The decision to pierce the corporate veil is a matter "rooted in equity" and reserved for the Court's determination. *Hibbs v. Berger*, 430 S.W.3d 296, 309 (Mo. Ct. App. 2014); *see also Schlingman v. Reed*, 750 S.W.2d 501, 504 (Mo. Ct. App. 1988) ("[A] court may, in its equitable powers, disregard the separate legal entity of the corporation and the individual where the separateness is used as a subterfuge to defraud a creditor.").

Under a veil-piercing theory, "a court may disregard a corporate entity and hold its owners personally liable for corporate debts." *Mobius Mgmt. Sys., Inc. v. W. Physicians Search, LLC*, 175 S.W.3d 186, 188 (Mo. Ct. App. 2005). More specifically, "if a member of an LLC has complete control of the company and uses that control to commit a wrongdoing that proximately causes an injury, then the individual member will be held liable for the LLC's debts." *Baugh*, 598 S.W.3d at 169 (quoting *State ex rel. Family Support Div. v. Steak'm Take'm, LLC*, 524 S.W.3d 584, 593 (Mo. Ct. App. 2017)). Here, the Court should pierce the corporate veil of the uncapitalized shell companies—Mitra Camdenton, Mira Neosho and Mitra Mt Vernon—used to avoid lease liability and hold the owners of those companies—Manish Patel and Pushpak Patel—liable for the breaches of contract committed by those companies.

Missouri law permits the Court to pierce the corporate veil when the following factors are shown:

1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

2) Such control must have been used by the corporation to commit fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

3) The control and breach of duty must proximately cause the injury or unjust loss complained of.

*66, Inc. v. Crestwood Commons Redevelopment Corp.*, 998 S.W.2d 32, 40 (Mo. 1999). Each of these factors is satisfied on the undisputed facts in this case.

### A. Manish Patel and Pushpak Patel had Complete Control and Domination Over the Finances, Policies and Business Practices of the Shell Companies

For individual owners, the degree of control required to pierce the corporate veil exists when "a corporation is so dominated by a person as to be a mere instrument of that person, and indistinct from the person controlling it." *Mobius*, 175 S.W.3d at 188. The facts of this case readily show that Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon did not have a viable existence, but were controlled and dominated by Manish Patel and Pushpak Patel in all respects.

The Patels were the creators, managers and 50/50 owners of Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon. (SoF ¶ 53.) The Patels were the two individuals completely responsible for making all decisions of those entities regarding the transactions at issue in this case, including the strategic assignments of leases to those entities and the deliberate decision to keep the entities uncapitalized at all times. (SoF ¶¶ 54, 57, 65.) Manish Patel created the entities, and the Patels

jointly executed all documents necessary for the assignments of leases and franchise rights to those shell companies. (SoF ¶¶ 55, 58-59.)

The parties have stipulated that Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon never had any cash or operating capital to pay rent or other expenses of the restaurant operations; that the rent under the leases was always paid by other entities; that the assets and liabilities of the restaurant operations were claimed on the books of other entities; that those entities never had any ability to independently operate the restaurants; that those entities had no income, employees, bank accounts or tax returns; and that insurance coverage, utility services, and business licenses for operation of the restaurants were procured by other entities. (SoF ¶ 64(a)-(f).) These entities did not even have employer identification numbers,[9] and Manish Patel admitted in writing that the entities "were just scare tactics" to leverage rent concessions from Plaintiffs. (SoF ¶¶ 62-63.) The uncapitalized shell companies were created only to be the name tenants on the leases and were kept uncapitalized to avoid lease liability. (SoF ¶ 61.)

These facts demonstrate as a matter of law that Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon were mere instruments under the complete control and domination of Manish Patel and Pushpak Patel. *See Real Estate Investors Four, Inc. v. Am. Design Grp., Inc.*, 46 S.W.3d 51, 57 (Mo. Ct. App. 2001) (finding control element satisfied when an entity had "no capital, assets, revenues, bank accounts, or employees" and existed only to be the "named lessee on the premises"); *see also John Knox Vill. v. Fortis Constr. Co.*, 449 S.W.3d 68, 76 (Mo. Ct. App. 2014) (finding individual owners "were clearly in control" of entity because they were officers, the only shareholders

---

[9]  The Internal Revenue Service explains that an EIN is a federal tax identification number required for operation of a business. *See* Employer ID Numbers, available at: https://www.irs.gov/businesses/small-businesses-self-employed/employer-id-numbers.

and had control of the company's business decisions and finances); *Mobius*, 175 S.W.3d at 188 (finding control element satisfied when individual owner and manager of LLC directed corporate action, had personal involvement in company finances, and signed the defaulted lease at issue in the case); *K.C. Roofing Ctr. v. On Top Roofing, Inc.*, 807 S.W.2d 545, 549 (Mo. Ct. App. 1991) (finding that individual owner was "clearly in control" of corporate entity when he was one of two shareholders and made business decisions).

On virtually identical facts in the *Wise* lawsuit, the Court found that a similar shell company formed as part of the same series of transactions by the Patels "was created and operated in such a way that it had no separate identity from the Patels, and existed only as the named tenant on the [lease]." (Doc. #105-1 at 9-10.) The Court found as a matter of law that the control element was satisfied under the circumstances. (*Id.*) It should reach the same conclusion here.

## B. Manish Patel and Pushpak Patel used Their Control Over the Shell Companies for the Improper Purpose of Avoiding Lease Obligations

To pierce the corporate veil, Missouri law requires that control be used "to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights." *Crestwood Commons*, 998 S.W.2d at 40. It is well-settled that "actual fraud is not necessary" to pierce the corporate veil; "[o]ther conduct that may justify piercing the corporate veil includes . . . undercapitalization," which "tend[s] to show an improper purpose or reckless disregard for the rights of others." *Id.* at 41; *see also Mobius*, 175 S.W.3d at 188-89 ("[T]he corporate veil may be pierced when a corporation is undercapitalized, or when its assets are stripped to avoid creditors.")

Here, the record shows that Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon were not just <u>under</u>capitalized, but that they were completely <u>un</u>capitalized. Those shell companies had no assets or operating capital when they were created and were kept uncapitalized by the Patels at all times; they never had any functional existence, they had no ability to pay the rent on the leases, and they played no part in the operation of the restaurants. (SoF ¶ 64(a)-(f).) With these stipulated facts, "a wrongful purpose is established as a matter of law" because the Patels "create[d] and operate[d] an unfunded, shell corporation . . . without making provision for payment of damages" arising from the conduct of the shell company's purported business. *Crestwood Commons*, 998 S.W.2d at 42.

But there is more. The undisputed facts also show that the Patels deliberately segregated the underperforming restaurants at issue in this case by first assigning them to Mitra Hedgehog (to separate them from healthier restaurants assigned to CMG Operations), and then further assigning each restaurant to a separate uncapitalized shell company (i.e., Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon). (SoF ¶¶ 48-49, 51.) These lease assignments were made without landlord consent, and no consideration was paid for the assignments. (SoF ¶¶ 56, 60.) And it is no secret why the assignments to the shell companies were made. Manis Patel testified that he considered Tryon Sisson to be a "unfriendly" landlord because he would not agree to rent concessions, and Manish Patel further admitted that the assignments were made to uncapitalized shell companies to avoid "lease liability" in the event Plaintiffs sued for breach of the leases. (SoF ¶ 52, 61.) Manish Patel confirmed in an email that the shell companies "were just scare tactics for the landlords" and explained in his deposition that the shell companies were used to leverage rent concessions from Plaintiffs because they were "not really working with" the Patels to agree to the rent modification the Patels wanted. (SoF ¶¶ 62-63.)

In similar circumstances, the court in *Real Estate Investors* noted that inadequate capitalization is particularly "significant" in the context of commercial leases and held that inadequate capitalization and improper purpose could be found as a matter of law when the shell company's owner "admitted the corporation had no money." *Real Estate Investors*, 46 S.W.3d at 58; *see also Steak 'm Take 'm*, 524 S.W.3d at 593 ("Ross Jr. used his control over Steak M LLC to operate and under-capitalized shell corporation to escape liability for paying the debt . . . The second requirement for piercing the corporate veil was met."); *Mobius*, 175 S.W.3d at 189 (finding improper purpose element satisfied when owner "circumvented . . . legal obligations by operating and undercapitalized shell corporation").

Again, on virtually identical facts in the *Wise* lawsuit, this Court held that "the undisputed facts clearly establish that the Patels used their control over [the uncapitalized shell company] for an improper purpose and caused harm to [the landlord]." (Doc. #105-1 at 11-12.) And again, the Court should reach the same conclusion here.

## C. Plaintiffs have been Injured by Their Inability to Collect Judgments from the Shell Companies

As uncapitalized shell companies, Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon are essentially judgment proof. Pushpak Patel admitted that a judgment for money damages against those entities would be uncollectible. (SoF ¶ 66.) The third element required to pierce the corporate veil—proximate causation of injury or unjust loss—is satisfied as a matter of law under these circumstances. In *Mobius*, for example, the court found that the inability to collect a judgment was proximately caused by an owner who created a shell company that "lack[ed] the necessary capital to satisfy th[e] judgment." *Mobius*, 175 S.W.3d at 189. And in *Real Estate Investors*, the court found

that "[w]hen the action of the dominant corporation render[ed] the subservient corporation insolvent, the requisite injury and causal connection [was] established" because the insolvent company "could not pay its obligations under the lease upon default." *Real Estate Investors*, 46 S.W.3d at 58-59; *see also Steak 'm Take 'm*, 524 S.W.3d at 594 (finding that use of uncapitalized shell company to avoid liability on a debt constituted "improper business practices that caused injury to [plaintiff] by preventing it from collecting [the debt]").

### Conclusion

Plaintiffs respectfully request that the Court grant their Motion for Partial Summary Judgment and enter judgment as follows (with all other claims remaining for trial):

- For Plaintiffs Tryon P. Sisson and Shanon G. Sisson and against Defendants Mitra Camdenton, Manish Patel and Pushpak Patel on Count I for breach of the Camdenton Lease, with current total damages of $742,394.10.

- For Plaintiffs Tryon P. Sisson and Shanon G. Sisson and against Defendants Mitra Neosho, Manish Patel and Pushpak Patel on Count I for breach of the Neosho Lease, with current total damages of $65,743.42.

- For Plaintiffs Tryon P. Sisson and Shanon G. Sisson and against Defendant Mitra Midwest Operations on Count I for breach of the Neosho Lease, with current total damages of $627,498.56.

- For Plaintiffs Tryon N. Sisson and Dolores A. Sisson and against Defendants Mitra Mt Vernon, Manish Patel and Pushpak Patel on Count I for breach of the Mt. Vernon Lease, with current total damages of $51,833.48.

- For Plaintiffs Tryon N. Sisson and Dolores A. Sisson and against Defendant Mitra Midwest Operations on Count I for breach of the Mt. Vernon Lease, with current total damages of $501,097.26.

Respectfully submitted,

KRIGEL & KRIGEL, PC

By:  /s/ Stephen J. Moore
         Stephen J. Moore      MO #59080
         4520 Main Street, Suite 700
         Kansas City, Missouri 64111
         Telephone: 816.756.5800
         Facsimile:  816.756.1999
         sjmoore@krigelandkrigel.com

         *Attorneys for Plaintiffs Tryon P. Sisson,*
         *Shanon G. Sisson, Tryon N. Sisson*
         *and Dolores A. Sisson*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed this 22nd day of October 2021 via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

**Counsel for the Mitra Defendants**
Jeffrey D. Morris
Nick J. Kurt
Benjamin B. Donovan
BERKOWITZ OLIVER LLP
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108

          /s/ Stephen J. Moore
         Attorney for Plaintiffs