**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| TRYON P. SISSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 3:20-cv-005101 |
| | ) | |
| MANISH PATEL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**THE MITRA DEFENDANTS' SUGGESTIONS IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**BERKOWITZ OLIVER LLP**
Nick J. Kurt            MO Bar # 52216
Benjamin B. Donovan      MO Bar # 70942
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone:  (816) 561-7007
Facsimile:  (816) 561-1888
Email:  nkurt@berkowitzoliver.com
        bdonovan@berkowitzoliver.com

**Attorneys for Mitra Defendants**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

THE MITRA DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF
    UNCONTROVERTED MATERIAL FACTS ................................................................ 2

THE MITRA DEFENDANTS' STATEMENT OF ADDITIONAL
    UNCONTROVERTED MATERIAL FACTS .............................................................. 27

ARGUMENT .............................................................................................................. 36

I.     LEGAL STANDARD ....................................................................................... 36

II.    PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR
     CLAIM FOR BREACH OF CONTRACT BECAUSE THEY HAVE NOT
     SHOWN THEY HAVE STANDING TO ENFORCE THE LEASES........................... 36

       A.    Plaintiffs have not produced documents showing they were assigned the
            landlord's interest under the Camdenton Lease.................................................... 37

       B.    The lease assignment to Plaintiffs associated with the Neosho Property
            shows Plaintiffs were not in fact assigned the Neosho Lease.............................. 37

       C.    Plaintiffs have not produced a lease assignment assigning them any
            interest in the Mt. Vernon Lease. ....................................................................... 38

III.   PLAINTIFFS ARE NOT ENTITLED TO PRE-JUDGMENT INTEREST
     BEGINNING TO ACCRUE IN AUGUST 2012. ............................................... 38

       A.    Pre-judgment interest is not warranted under the equitable principles of
            fairness and justice. ........................................................................................... 39

       B.    Plaintiffs did not demand rent payments due under the Leases until well
            after August 2012. .............................................................................................. 39

IV.   PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR
     PIERCING CLAIMS TO HOLD MANISH AND PUSHPAK PERSONALLY
     LIABLE. ...................................................................................................... 41

       A.    Plaintiffs' showing of an improper purpose does not rise to the level
            required in a breach of contract action................................................................ 42

       B.    Manish and Pushpak did not use Mitra Camdenton, Mitra Neosho, or
            Mitra Mt Vernon for the improper purpose of avoiding lease liability. .............. 45

            1.    Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon were
                 financially responsible because of Mitra Hedgehog. ................................ 45

i

2. The assignments, by themselves, are immaterial to the improper purpose analysis as it relates to Manish and Pushpak.............................. 46

C. Manish and Pushpak did not proximately cause any loss to Plaintiffs because Mitra Hedgehog has paid all operating expenses................................... 48

D. Plaintiffs' equitable claim of piercing the corporate veil is barred by the doctrine of laches. ................................................................................................ 48

E. Plaintiffs' reliance on *Wise* is misplaced. ......................................................... 49

V. CONCLUSION ................................................................................................................ 49

# **TABLE OF AUTHORITIES**

**Cases**

*66, Inc. v. Crestwood Commons Redevelopment Corp.*,
    998 S.W.2d 32, 40 (Mo. 1999). ......................................................... 42, 43

*Bank of Belton v. Bogar Farms, Inc.*,
    154 S.W.3d 518, 520 (Mo. App. W.D. 2005) .......................................... 41

*Baris v. Layton*,
    43 S.W.3d 390, 397 (Mo. App. E.D. 2001) ............................................ 40

*Catron v. Columbia Mut. Ins. Co.*,
    723 S.W.2d 5, 7 (Mo. 1987) ................................................................. 39

*Children Intern. v. Ammon Painting Co.*,
    215 S.W.3d 194, 203 (Mo. App. W.D. 2006) .......................................... 39

*Graybar Elec. Co., Inc. v. Fed. Ins. Co.*,
    567 F. Supp. 2d 1116, 1128 (E.D. Mo. 2008) ....................................... 40

*Hibbs v. Berger*,
    430 S.W.3d 296, 306 (Mo. App. E.D. 2014) .......................................... 41, 42, 43

*J-R Grain Co. v. FAC, Inc.*,
    627 F.2d 129, 135 (8th Cir. 1980). ....................................................... 43

*K.C. Roofing Ctr. v. On Top Roofing, Inc.*,
    807 S.W.2d 545, 549 (Mo. App. W.D. 1991) .......................................... 42

*Missouri Ozarks Radio, Network, Inc. v. Baugh*,
    598 S.W.3d 154, 169 (Mo. App. S.D. 2020) .......................................... 41

*Mobius Mgt. Sys., Inc. v. W. Phys. Search, L.L.C.*,
    175 S.W.3d 186 (Mo. App. E.D. 2005) .................................................. 44, 48

*Radaszewski by Radaszewski v. Telecom Corp.*,
    981 F.2d 305, 309 (8th Cir. 1992) ........................................................ 45, 46

*Spencer's River Roads Bowling Lanes, Inc. v. Unico Mgt. Co.*,
    615 S.W.2d 121, 124 (Mo. App. E.D. 1981) .......................................... 37

*State ex rel. Fam. Support Div. v. Steak'm Take'm LLC*,
    524 S.W.3d 584, 588 (Mo. App. W.D. 2017) .......................................... 48

*Tolan v. Cotton*
    572 U.S. 650, 656 (2014) ..................................................................... 36

*Transamerica Ins. Co. v. Pennsylvania Nat. Ins. Cos.*,
    908 S.W.2d 173, 177 (Mo. App. E.D. 1995). ........................................................ 39, 40, 41

*Union P. R. Co. v. Midland Equities Inc.*,
    45 F. Supp. 2d 701, 708 (E.D. Mo. 1999) ............................................................... 43

*Real Est. Inv'rs Four, Inc. v. Am. Design Group Inc.*,
    46 S.W.3d 51 (Mo. App. E.D. 2001) ...................................................................... 43, 44

*Watters v. Travel Guard Intern.*,
    136 S.W.3d 100, 111 (Mo. App. E.D. 2004). ......................................................... 40

*Whispering Oaks Residential Care Facility, LLC v. AT & T Wireless PCS, Inc.*,
    No. 4:14-CV-1002 CEJ, 2014 WL 5425559, at *3 (E.D. Mo. Oct. 22, 2014) ............... 36, 37

## **Statutes and Rules**

Fed. R. Civ. P. 56. ........................................................................................................... 36

Mo. Rev. Stat. § 408.020. ................................................................................................ 40

# INTRODUCTION

Plaintiffs Tryon P. Sisson, Shanon G. Sisson, Tryon N. Sisson, and Dolores A. Sisson ("Plaintiffs") seek summary judgment on their claim for breach of contract, and request the Court hold Manish Patel ("Manish") and Pushpak Patel ("Pushpak") personally liable for a portion of the breach of contract damages they seek. Not only should the Court deny Plaintiffs' motion, but, as demonstrated by the Mitra Defendants'[1] own summary judgment motion (ECF Nos. 101, 102), it should enter summary judgment in favor of the Mitra Defendants against Plaintiffs on all counts.

For their breach of contract claim, Plaintiffs cannot establish they were assigned any interest in the Camdenton, Neosho, or Mt. Vernon Leases. Thus, they do not have standing to enforce a breach of contract claim associated with those Leases, and therefore are not entitled to summary judgment. In the event the Court finds Plaintiffs have standing to assert a breach of contract claim, they are not entitled to pre-judgment interest on said claim, or, in the alternative, they are entitled to pre-judgment interest accruing as of the date the Complaint was filed.

For Plaintiffs' piercing claim against Manish and Pushpak, the undisputed facts show Plaintiffs cannot establish that Manish or Pushpak had an improper purpose of avoiding lease liability by creating or operating Mira Camdenton, Mitra Neosho, or Mitra Mt Vernon. This is because Plaintiffs cannot show the particularly strong improper conduct required where the piercing claim arises from a breach of contract. Additionally, Mitra Hedgehog made all operating expense payments for the entities so Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon were financially responsible and able to meet their obligations.

Accordingly, Plaintiffs are not entitled to summary judgment.

---

[1] The Mitra Defendants are Manish, Pushpak, Chalak Mitras Group, LLC ("Chalak Mitras"), Mitra Hedgehog, LLC ("Mitra Hedgehog"), CMG Operations, LLC ("CMG Operations"), Mitra Midwest Operations, LLC ("Mitra Midwest"), Mitra Camdenton, LLC ("Mitra Camdenton"), Mitra Neosho, LLC ("Mitra Neosho"), and Mitra Mt Vernon, LLC ("Mitra Mt Vernon").

## THE MITRA DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1.     Plaintiffs Tryon P. Sisson and Shanon G. Sisson are the owners of the real property located at 298 East U.S. Highway 54, Camdenton, Missouri 65020 (the "Camdenton Property"). (Declaration of Tyron P. Sisson ("TPS Decl."), attached as **EXHIBIT 1**, ¶ 2.)

**RESPONSE:** Controverted.  On August 30, 2006, the Camdenton Property was conveyed from Gardner Properties of Springfield, LLC to Tryon P. Sisson.  (Exh. 1, Declaration of Manish Patel ("Manish Decl.") at ¶ 5; Exh. 8.)  Plaintiffs have not produced a document indicating Shanon G. Sisson has an ownership interest in the Camdenton Property.

2.     Tryon P. Sisson and Shanon G. Sisson purchased the Camdenton Property in August 2006 and took assignment of all rights and interest as landlords under a commercial lease for that property originally executed on April 6, 2005 (the "Camdenton Lease"). (TPS Decl., **EX. 1**, ¶¶ 2-3; *see also* Lease Agreement attached as **EXHIBIT 2**.)

**RESPONSE:** Controverted.  *See* Response to Statement of Fact No. 1 above regarding the purported purchase of the Camdenton Property.   As for the purported assignment, Gardner Properties of Springfield, LLC assigned its interest in the Camdenton Lease to Tryon P. Sisson and Shannon [*sic*] G. Sisson on August 30, 2006.  (Exh. 1, Manish Decl. at ¶ 6; Exh. 9.)  Gardner Properties of Springfield, LLC was not a party to the original Camdenton Lease and Plaintiffs have not produced documents reflecting what interest, if any, Gardner Properties of Springfield, LLC had in the Camdenton Lease on August 30, 2006.  Additional detail summarizing the gap in assignments is found in the Mitra Defendants' Statement of Additional Material Facts Nos. 67–70, which are incorporated by reference herein.

3.     The Camdenton Lease was made for a 20-year term and included the following rent schedule: (a) $9,246.16 per month for the first ten (10) years of the lease; (b) $9,708.47 per month

for the next five (5) years of the lease; and (c) $10,193.89 per month for the last five (5) years of the lease. (Camdenton Lease, **EX. 2**, at 1, § 3.)

      **RESPONSE:** Admit.

      4.     Defendant Mitra Hedgehog, LLC became the tenant under the Camdenton Lease by virtue of an Assignment and Assumption of Lease from Table Rock Restaurants dated November 16, 2010. (TPS Decl., **EX. 1**, ¶ 4; *see also* Assignment and Assumption of Lease attached as **EXHIBIT 3**.)

      **RESPONSE:** Controverted, Mitra Hedgehog executed a document purporting to assign it the Camdenton Lease.  However, discovery has shown there are issues with the chain of the Camdenton Lease and assignments of said Lease.  Additional detail summarizing the assignments and chain of the Lease is found in the Mitra Defendants' Statement of Additional Material Facts Nos. 67–70, which are incorporated by reference herein.

      5.     Mitra Camdenton, LLC became the tenant under the Camdenton Lease by virtue of an Assignment and Assumption of Lease from Mitra Hedgehog dated March 9, 2011. (TPS Decl., **EX. 1**, ¶ 6; *see also* Assignment and Assumption of Lease attached as **EXHIBIT 5**.)

      **RESPONSE:** Controverted, Mitra Camdenton executed a document purporting to assign it the Camdenton Lease.  However, discovery has shown there are issues with the chain of the Camdenton Lease and assignments of said Lease.  Additional detail summarizing the assignments and chain of the Lease is found in the Mitra Defendants' Statement of Additional Material Facts Nos. 67–70, which are incorporated by reference herein.

      6.     Plaintiffs Tryon P. Sisson and Shanon G. Sisson are the owners of the real property located at 3075 Gardner-Edgewood Drive, Neosho, Missouri 64850 (the "Neosho Property). (TPS Decl., **EX.** 1, ¶ 9.)

3

**RESPONSE:** Admit.

7.      Tryon P. Sisson and Shanon G. Sisson purchased the Neosho Property in July 2006 and took assignment of all rights and interest as landlords under a commercial lease for that property originally executed on April 6, 2005 (the "Neosho Lease"). (TPS Decl., **EX. 1**, ¶¶ 9-10; *see also* Lease Agreement attached as **EXHIBIT 8**.)

**RESPONSE:** Controverted as to the purported assignment.  Plaintiffs produced a July 27, 2006 lease assignment through which Richard T. Gregg assigned to Tryon P. Sisson and Shanon G. Sisson all of his rights and interest in "a certain 'Lease' dated April 6, 2005 by and between Assignor[, Richard T. Gregg,] and Ozark Restaurant Systems, Inc."  (Exh. 1, Manish Decl. at ¶ 7; Exh. 10.)  The "Lease" referenced and assigned via the July 27, 2006 lease assignment was not the Neosho Lease.  Additional detail summarizing the gap in assignments is found in the Mitra Defendants' Statement of Additional Material Facts Nos. 71–73, which are incorporated by reference herein.

8.      The Neosho Lease was made for a 20-year term and included the following rent schedule: (a) $8,944.54 per month for the first ten (10) years of the lease; (b) $9,391.76 per month for the next five (5) years of the lease; and (c) $9,861.35 per month for the last five (5) years of the lease. (Neosho Lease, **EX. 8**, at 1, § 3.)

**RESPONSE:** Admit.

9.      Defendant Mitra Hedgehog, LLC became the tenant under the Neosho Lease by virtue of an Assignment and Assumption of Lease from Table Rock Restaurants dated November 16, 2010. (TPS Decl., **EX. 1**, ¶ 11; *see also* Assignment and Assumption of Lease attached as **EXHIBIT 9**.)

4

**RESPONSE:** Controverted, Mitra Hedgehog executed a document purporting to assign it the Neosho Lease. However, discovery has shown there are issues with the chain of the Neosho Lease and assignments of said Lease. Additional detail summarizing the assignments and chain of the Lease is found in the Mitra Defendants' Statement of Additional Material Facts Nos. 71–73, which are incorporated by reference herein.

10.     Mitra Neosho, LLC became the tenant under the Neosho Lease by virtue of an Assignment and Assumption of Lease from Mitra Hedgehog dated March 9, 2011. (TPS Decl., **EX. 1**, ¶ 13; *see also* Assignment and Assumption of Lease attached as **EXHIBIT 11**.)

**RESPONSE:** Controverted, Mitra Neosho executed a document purporting to assign it the Neosho Lease. However, discovery has shown there are issues with the chain of the Neosho Lease and assignments of said Lease. Additional detail summarizing the assignments and chain of the Lease is found in the Mitra Defendants' Statement of Additional Material Facts Nos. 71–73, which are incorporated by reference herein.

11.     Plaintiffs Tryon N. Sisson and Dolores A. Sisson are the owners of the real property located at 1101 East Mt. Vernon Boulevard, Mt. Vernon, Missouri 65712 (the "Mt. Vernon Property). (Declaration of Tryon N. Sisson ("TNS Decl."), attached as **EXHIBIT 24**, ¶ 2.)

**RESPONSE:** Admit.

12.     Tryon N. Sisson and Dolores A. Sisson purchased the Mt. Vernon Property in October 2006 and took assignment of all rights and interest as landlords under a commercial lease for that property originally executed on April 6, 2005 (the "Mt. Vernon Lease"). (TNS Decl., **EX. 24**, ¶¶ 2-3; *see also* Lease Agreement attached as **EXHIBIT 25**.)

**RESPONSE:** Controverted as to the purported assignment. Plaintiffs have not produced an assignment of the Mt. Vernon Lease. Additional detail summarizing the gap in assignments is

5

found in the Mitra Defendants' Statement of Additional Material Facts Nos. 74–76, which are incorporated by reference herein.

13.     The Mt. Vernon Lease was made for a 20-year term and included the following rent schedule: (a) $8,083.51 per month for the first ten (10) years of the lease; (b) $8,487.68 per month for the next five (5) years of the lease; and (c) $8,912.07 per month for the last five (5) years of the lease. (Mt. Vernon Lease, **EX. 25**, at 1, § 3.)

**RESPONSE:** Admit.

14.     Defendant Mitra Hedgehog, LLC became the tenant under the Mt. Vernon Lease by virtue of an Assignment and Assumption of Lease from Table Rock Restaurants dated November 16, 2010. (TNS Decl., **EX. 24**, ¶ 4; *see also* Assignment and Assumption of Lease attached as **EXHIBIT 26**.)

**RESPONSE:** Controverted, Mitra Hedgehog executed a document purporting to assign it the Mt. Vernon Lease.  However, discovery has shown there are issues with the chain of the Mt. Vernon Lease and assignments of said Lease.  Additional detail summarizing the assignments and chain of the Lease is found in the Mitra Defendants' Statement of Additional Material Facts Nos. 74–76, which are incorporated by reference herein.

15.     Mitra Mt Vernon, LLC became the tenant under the Mt. Vernon Lease by virtue of an Assignment and Assumption of Lease from Mitra Hedgehog dated March 9, 2011. (TNS Decl., **EX. 24**, ¶ 6; *see also* Assignment and Assumption of Lease attached as **EXHIBIT 28**)

**RESPONSE:** Controverted, Mitra Mt Vernon executed a document purporting to assign it the Mt. Vernon Lease.  However, discovery has shown there are issues with the chain of the Mt. Vernon Lease and assignments of said Lease.  Additional detail summarizing the assignments and

6

chain of the Lease is found in the Mitra Defendants' Statement of Additional Material Facts Nos. 74–76, which are incorporated by reference herein.

16.    Effective January 1, 2011, the landlords entered into lease amendments with Mitra Hedgehog on all three properties that provided temporary rent reductions for each of the three leases. These amendments were all eventually cancelled when Mitra Hedgehog failed to make the rent payments required by the amendments. (TPS Decl., **EX. 1**, ¶¶ 5, 12; TNS Decl., **EX. 24**, ¶ 5; *see also* Amendments of Leases attached as **EXHIBITS 4, 10 and 27**.)

**RESPONSE:** Controverted.  Plaintiffs have not produced the lease assignment transferring the Mt. Vernon Lease to Tryon N. Sisson and Dolores A. Sisson, or the Neosho Lease to Tryon P. Sisson and Shanon G. Sisson.  Further, Plaintiffs have not provided documents indicating what interest Gardner Properties of Springfield, LLC had in the Camdenton Lease on August 30, 2006. Additional detail is found in the Mitra Defendants' Statement of Additional Material Facts Nos. 71–76, which are incorporated by reference herein.  Therefore, referring to Plaintiffs as "landlords" mischaracterizes the record.

This Statement of Fact is further controverted as to the reason for the cancellation of the first lease amendments.  The first lease amendments were cancelled after the April and May 2011 rents were not paid in full.  (Exh. 1, Manish Decl. at ¶ 8; Exh. 11.)  The Camdenton, Neosho, and Mt. Vernon Leases were assigned from Mitra Hedgehog to Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon respectively on March 9, 2011.  (Exh. 1, Manish Decl. at ¶ 9; Exh. 12.)  As such, although Mitra Hedgehog paid the rent associated with the Leases and all operating expenses for the restaurants, Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon were the parties that failed to make the rent payments for April and May 2011 required by the amendments.

7

17.    Effective August 1, 2011, the landlords entered into second lease amendments with each of the current tenants on the three properties (Mitra Camdenton, Mitra Neosho and Mitra Mt. Vernon) that acknowledged the cancellation of the first lease amendments, acknowledged that rent payments had not been made as required under the first lease amendments, and provided for a new temporary rent reduction for each lease. (TPS Decl., **EX. 1**, ¶¶ 8, 15; TNS Decl., **EX. 24**, ¶ 8; *see also* Second Amendments of Leases attached as **EXHIBITS 7, 13 and 30**.)

**RESPONSE:** Controverted as to Plaintiffs' usage of the term "landlords".  *See* Response to Statement of Fact No. 16 above regarding Plaintiffs' use of the term "landlords".  The Mitra Defendants do not controvert this Statement of Fact if the term "Plaintiffs" is substituted for "landlords".

18.    The second lease amendments for the three properties are not materially different and all provide as follows with respect to the temporary rent modification on each property:

> The Parties agree to modify Paragraph 3 of the Lease to allow for a temporary modification of Rent as described herein below. The parties agree that Tenant's monthly Rent obligation under the Lease for the period consisting of August 1, 2011 through July 31, 2012 shall be Four Thousand Eight Hundred Seventy Five Dollars ($4,875.00) per month ($58,500.00 for the calendar year). After and effective August 1, 2012, the Rent shall resume and continue throughout the remainder of the Lease Term in such amounts as originally set forth in the Lease, unless additional rent modifications are agreed to in writing by the Parties. The parties acknowledge and agree that the Rent reduction set forth in this Amendment is a temporary reduction for the period described herein only and it does not extend beyond said period during the Lease Term.

(TPS Decl., **EX. 1**, ¶ 16; TNS Decl., **EX. 24**, ¶ 9; *see also* Second Amendments of Leases attached as **EXHIBITS 7, 13 and 30**, at 1, § 3.)

**Response:** Admit.

19.    Mitra Hedgehog's guarantee of payment obligations applied only to amounts due under the second lease amendments and did not extend to future payment obligations under the

primary leases after the temporary rent modifications expired. (TPS Decl., **EX. 1**, ¶ 17; Deposition of Manish Patel, attached as **EXHIBIT 32**, at 128:11-129:7, 129:22-130:8; *see also* emails attached as **EXHIBIT 14**.)

**RESPONSE:** Admit.

20.     After the 12-month period of the temporary rent reductions expired and the rent returned to full value on all three properties as of August 1, 2012, Mitra Hedgehog continued to pay only $4,875 in rent every month on each lease for each of the three properties. (TPS Decl., **EX. 1**, ¶ 18; TNS Decl., **EX. 24**, ¶ 11; Manish Patel Depo., **EX. 32**, at 65:2-66:4; Deposition of Pushpak Patel, attached as **EXHIBIT 33**, at 129:6-13, 131:3-12.)

**RESPONSE:** Admit.

21.     Mitra Midwest Operations, LLC became the tenant under both the Neosho Lease and the Mt. Vernon Lease by virtue of assignments from the respective tenants on those properties (Mitra Neosho and Mitra Mt Vernon) dated April 26, 2013. (TPS Decl., **EX. 1**, ¶ 19; TNS Decl., **EX. 24**, ¶ 12; *see also* Assignment and Assumption of Leases attached as **EXHIBITS 15 and 31**.)

**RESPONSE:** Controverted, Mitra Midwest executed a document purporting to assign it the Neosho and Mt. Vernon Leases.  However, discovery has shown there are issues with the chain of the Neosho and Mt. Vernon Leases and assignments of said Leases.  Additional detail summarizing the assignments and chain of the Leases are found in the Mitra Defendants' Statement of Additional Material Facts Nos. 71–76, which are incorporated by reference herein.

22.     After it became the tenant on the Neosho Lease and the Mt. Vernon Lease, Mitra Midwest Operations continued to pay only $4,875 in rent each month on those leases. (TPS Decl., **EX. 1**, ¶ 20; TNS Decl., **EX. 24**, ¶ 13.)

**RESPONSE:** Controverted as to Mitra Midwest being a tenant on the Neosho and Mt. Vernon Leases. *See* Response to Statement of Fact No. 22 above. The Mitra Defendants do not controvert that Mitra Midwest paid only $4,875 in rent each month on the Neosho and Mt. Vernon Leases.

23. In early 2013, Manish Patel was working with Metropolitan Capital Advisors to refinance the loan on stores that would be operated by Mitra Midwest Operations, including the restaurants on the Neosho Property and Mt. Vernon Property owned by Plaintiffs. Manish Patel authorized Jessica Rodriguez with Metropolitan Capital Advisors to work on behalf of the Mitra entities to obtain Landlord Consent and Estoppel forms in conjunction with this refinancing. (TPS Decl., **EX. 1**, ¶ 21; *see also* emails attached as **EXHIBIT 16**.)

**RESPONSE:** Controverted with respect to the extent of the authorization given to Jessica Rodriguez at Metropolitan Capital. Manish authorized Ms. Rodriguez to work with Plaintiffs on the landlord consent and estoppel forms in conjunction with the refinancing only on behalf of Mitra Hedgehog. (Exh. 16 attached to Plaintiffs' Suggestions in Support of Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' Suggestions").)

24. After reviewing the proposed Landlord Consent and Estoppel forms provided by Ms. Rodriguez, Tryon P. Sisson email Ms. Rodriguez advising that Plaintiffs could not sign those forms because they incorrectly represented that rent was paid in full on the leases for the Neosho and Mt. Vernon restaurants. Mr. Sisson specifically advised Ms. Rodriguez that the temporary rent reductions on the leases for the properties expired, and that rent had returned to the full amount effective August 1, 2012. He advised her that $36,625.85 was due and owing in unpaid rent on the Neosho Lease and that $28,876.59 was due and owing in un-paid rent on the Mt. Vernon Lease. (TPS Decl., **EX. 1**, ¶ 22; *see also* email attached as **EXHIBIT 17**.)

**RESPONSE:** Admit, but incomplete as Plaintiffs only "suggest[ed Ms. Rodriguez] have Manish contact [them] to clear up this situation." (*See* Exh. 18 attached to Plaintiffs' Suggestions.)

25. Ms. Rodriguez forwarded Mr. Sisson's email regarding unpaid rent to Manish Patel, asking him to "please read the email below and advise." (TPS Decl., **EX. 1**, ¶ 23; *see also* email attached as **EXHIBIT 18**; *see also* Pushpak Patel Depo., **EX. 33**, at 132:20-133:16.)

**RESPONSE:** Admit.

26. In May 2017, Tryon P. Sisson sent a letter to Pushpak Patel advising him of continued defaults on the leases for all three properties at issue in this case. The letter specifically advised Pushpak Patel that the temporary rent reductions for the properties under the second lease amendments had expired, that the rent due had returned to the full value under the leases, and that substantial amounts of back rent were due on each property because the Mitra entities had continued to pay only $4,875 each month on each of the leases. (TPS Decl., **EX. 1**, ¶ 24; *see also* letter attached as **EXHIBIT 19**.)

**RESPONSE:** Admit.

27. Mr. Sisson's May 2017 letter to Pushpak Patel was sent via Federal Express with tracking to ensure delivery. Pushpak Patel later confirmed by email that he had received the letter via Federal Express. (TPS Decl., **EX. 1**, ¶ 25; *see also* email attached as **EXHIBIT 20**.)

**RESPONSE:** Amit.

28. Following delivery of Mr. Sisson's May 2017 letter, the parties engaged in negotiations to attempt to resolve the unpaid back rent and determine a new rental rate moving forward for each of the three properties. (TPS Decl., **EX. 1**, ¶ 26; *see also* letter attached as **EXHIBIT 21**.) These negotiations were not successful. (TPS Decl., **EX. 1**, ¶ 26.)

**RESPONSE:** Admit, but incomplete. Additional detail is found in the Mitra Defendants' Statement of Additional Material Facts Nos. 90–108, which is incorporated by reference herein.

29. In September 2017, Tryon P. Sisson directed his attorney to send further correspondence to Pushpak Patel regarding lease defaults for unpaid rent and negotiations to potentially resolve the matter. (TPS Decl., **EX. 1**, ¶ 27; *see also* letter attached as **EXHIBIT 22**.)

**RESPONSE:** Admit.

30. This letter prompted a follow up letter from counsel representing the Mitra entities, acknowledging receipt of the letter from Mr. Sisson's attorney and indicating a willingness to continue negotiations to resolve the matter. (TPS Decl., **EX. 1**, ¶ 28; *see also* letter attached as **EXHIBIT 23**.) Further negotiations were not successful. (TPS Decl., **EX. 1**, ¶ 28.)

**RESPONSE:** Admit, but incomplete. Additional detail is found in the Mitra Defendants' Statement of Additional Material Facts Nos. 90–108, which is incorporated by reference herein.

31. The restaurant on the Camdenton Property was closed in or around May 2017. (Second Am. Compl., Doc. #57, ¶ 45; Answer, Doc. #61, ¶ 45.)

**RESPONSE:** Admit.

32. After the Camdenton restaurant was closed, and continuing to the present day, the Mitra entities maintained possession of the property and continued to pay rent on the property in the amount of $4,875 per month, keep insurance on the property, make routine inspections of the property, maintain the condition of the property, and pay real estate taxes on the property. (Pushpak Patel Depo., **EX.33**, at 110:7-111:18, 116:15-118:12.)

**RESPONSE:** Controverted with respect to the generalized usage of the term "Mitra entities." After the Camdenton restaurant closed, Mitra Hedgehog maintained possession of the property and continued to pay rent on the property, kept insurance on the property, made routine

inspections of the property, maintained the condition of the property, and paid the real estate taxes on the property. (Exh. 2, Deposition of Pushpak Patel ("Pushpak Depo.") at 110:7–111:18; Exh. 3, Declaration of Pushpak Patel ("Pushpak Decl.") at ¶ 5; Exh. 22 at Sisson 0515.)

33. After the Camdenton restaurant was closed, Mitra Hedgehog attempted as quickly as possible to sublease the property. (Pushpak Patel Depo., **EX. 33**, at 111:19-112:23.) Pushpak Patel is not aware of any sublease opportunity that was presented to the landlords of the Camdenton property for consent. (*Id.* at 119:14-23, 162:10-14.) Email correspondence produced by Defendants indicates that a prospective subtenant decided not to move forward with leasing the property due to the condition of the property and cost of repair. (*See* emails attached as **EXHIBIT 34** at MITRA 010038-010040.)

**RESPONSE:** Controverted as to Plaintiffs' usage of the term "landlords". *See* Response to Statement of Fact No. 16 above regarding Plaintiffs' use of the term "landlords". The Mitra Defendants do not controvert this Statement of Fact if the term "Plaintiffs" is substituted for "landlords of the Camdenton property".

34. At all times pertinent to this lawsuit, the landlords have performed all obligations required by the leases for all three properties. (TPS Decl., **EX. 1**, ¶ 29; TNS Decl., **EX. 24**, ¶ 15.)

**RESPONSE:** Controverted as to Plaintiffs' usage of the term "landlords". *See* Response to Statement of Fact No. 16 above regarding Plaintiffs' use of the term "landlords". The Mitra Defendants do not controvert this Statement of Fact if the term "Plaintiffs" is substituted for "landlords".

35. Manish Patel testified at his deposition that he is not aware of any conditions under the lease that the landlords failed to perform. (Manish Patel Depo., **EX. 32**, at 160:9-12.)

**RESPONSE:** Controverted as to Plaintiffs' usage of the term "landlords". *See* Response to Statement of Fact No. 16 above regarding Plaintiffs' use of the term "landlords". The Mitra Defendants do not controvert this Statement of Fact if the term "Plaintiffs" is substituted for "landlords".

36.     Underpayments on the leases for all three properties have continued to the present, with Mitra Hedgehog and/or Mitra Midwest Operations paying just $4,875 each month for rent on each lease. From August 2012 to October 2021, the total amount of unpaid rent on the Camdenton Lease is $530,944.23; the total amount of unpaid rent on the Neosho Lease is $495,971.53; and the total amount of unpaid rent on the Mt. Vernon Lease is $396,137.45. The accrued pre-judgment interest on the unpaid rent (calculated on a monthly basis as simple interest at the statutory rate of 9 percent per annum) totals $211,449.87 on the Camdenton Lease; $197,270.45 on the Neosho Lease; and $156,793.29 on the Mt. Vernon Lease. These sums will all continue to grow as rent is underpaid each month and pre-judgment interest accumulates. (TPS Decl., **EX. 1**, ¶ 30 & Schedule A; TNS Decl., **EX. 24**, ¶ 16 & Schedule A.)

**RESPONSE:** Controverted as to Plaintiffs' calculation of pre-judgment interest. Whether Plaintiffs are entitled to pre-judgment interest is a legal conclusion. As detailed *infra*, Plaintiffs are not entitled to pre-judgment interest beginning to accrue in August 2012.

The Mitra Defendants admit Mitra Hedgehog and/or Mitra Midwest Operations has paid $4,875 each month for rent each month while the terms of the Camdenton, Neosho, and Mt. Vernon Leases call for a greater amount of rent due. The Mitra Defendants admit that the difference between the amount of rent Mitra Hedgehog and/or Mitra Midwest Operations paid and the amount of rent owed under the Leases from August 2012 to October 2021 is $530,944.23 for the Camdenton Lease, $495,971.53 for the Neosho Lease, and $396,137.45 for the Mt. Vernon Lease.

37.     The landlords have never agreed orally or in writing to any further rent modification after the second lease amendments on the three properties expired as of August 1, 2012. Since that time, the landlords also have never agreed to accept reduced rent payments in full satisfaction of the amounts due under those leases, and they have never deliberately or affirmatively acquiesced to the underpayments of rent or relinquished their rights to challenge those payments or seek damages for breach of the leases. No payment of rent has ever been tendered to the landlords with the express condition that it be accepted in full satisfaction of the rent due and owing. (TPS Decl., **EX. 1**, ¶ 31; TNS Decl., **EX. 24**, ¶ 17.)

**RESPONSE:** Controverted as to Plaintiffs' usage of the term "landlords". *See* Response to Statement of Fact No. 16 above regarding Plaintiffs' use of the term "landlords".

The Mitra Defendants further controvert this Statement of Fact. Prior to the execution of the second lease amendments, Plaintiffs proposed that prior to August 1, 2012, the parties would renew discussions and analyze the actual gross revenues from the preceding year so "[t]he parties will agree upon whether further adjustments to the rental amounts are justified." (Exh. 1, Manish Decl. at ¶ 4; Exh. 7 at Sisson 0150.) After signing the second lease amendments, Plaintiffs did not renew discussions, and instead have accepted a modified rent payment for over nine years. Indeed, in March 2020, Plaintiffs thanked Pushpak for "continu[ing] to pay the rent" on the Properties. (Exh. 3, Pushpak Decl. at ¶ 4; Exh. 21 at Sisson 0483.) At that time, continuing to pay rent on the Camdenton, Neosho, and Mt. Vernon Properties would have been continuing to pay the modified rent payments that the Mitra Defendants had been making since 2011. (Exh. 4, Tryon P. Depo. at 97:5–15.)

38.     Manish Patel admitted in his deposition that the landlords never told him verbally or in writing that they were accepting monthly payments of $4,875 in full satisfaction of the rent

due on each of the three properties. He also admitted that there was never another agreement after the second lease amendments expired to modify the rent on those properties. (Manish Patel Depo., **EX. 32**, at 69:5-70:1, 163:23-164:15.)

 **RESPONSE:** Controverted as to Plaintiffs' usage of the term "landlords". *See* Response to Statement of Fact No. 16 above regarding Plaintiffs' use of the term "landlords".

 The Mitra Defendants further controvert this Statement of Fact. Manish testified in his deposition that he believed Plaintiffs were accepting monthly payments of $4,875 in full satisfaction of the rent due on the three properties until May 2017 because they continued to accept the checks that were sent to them and they never sent a default notice until May 2017. (Exh. 5, Manish Depo. at 67:11–70:5; 151:8–22.) Additionally, in March 2020, Plaintiffs thanked Pushpak for "continu[ing] to pay the rent" on the Properties. (Exh. 3, Pushpak Decl. at ¶ 4; Exh. 21 at Sisson 0483.) At that time, continuing to pay rent on the Camdenton, Neosho, and Mt. Vernon Properties would have been continuing to pay the modified rent payments that the Mitra Defendants had been making since 2011. (Exh. 4, Tryon P. Depo. at 97:5–15.)

 39. Pushpak Patel admitted in his deposition that the landlords never told him verbally that they were accepting monthly payments of $4,875 in full satisfaction of the rent due on each of the three properties. (Pushpak Patel Depo., **EX. 33**, at 17:9-23.)

 **RESPONSE:** Controverted as to Plaintiffs' usage of the term "landlords". *See* Response to Statement of Fact No. 16 above regarding Plaintiffs' use of the term "landlords". The Mitra Defendants do not controvert that Plaintiffs never told him <u>verbally</u> that they were accepting monthly payments of $4,875 in full satisfaction of the rent due on each of the three properties.

40. Manish Patel acknowledged in his deposition that the rent on all three properties has been underpaid since the second lease amendments expired and the rent returned to full value. (Manish Patel Depo., **EX. 32**, at 65:20-67:10; 81:11-20; 151:2-11.)

**RESPONSE:** Controverted. Manish testified in his deposition that he believed Plaintiffs were accepting monthly payments of $4,875 in full satisfaction of the rent due on the three properties until May 2017 because they continued to accept the checks that were sent to them and they never sent a default notice until May 2017. (Exh. 5, Manish Depo. at 67:11–70:5; 151:8–22; 169:6–22; 170:3–71:6.)

41. In emails exchanged on June 5, 2017, regarding negotiations to resolve the rent dispute on the three properties, Chalak Mitras Group Managing Director Al Bhakta wrote to Pushpak Patel: "You need to deal with arrears. [Tryon P. Sisson] is expecting some payment towards a huge back balance." Pushpak Patel responded: "ok makes sense." (*See* emails attached as **EXHIBIT 35** at MITRA 010956; *see also* Pushpak Patel Depo., **EX. 33**, at 138:22-144:24.)

**RESPONSE:** Admit, but incomplete as this email exchange occurred after Plaintiffs' May 16, 2017 letter in which they made Pushpak aware of their position regarding the modified rent payment issue. (Exh. 2, Pushpak Depo. at 15:6–19.) In their May 16, 2017 letter, Plaintiffs informed Pushpak, for the first time, of their view that the Mitra defendants "owe[] substantial amounts of back rent" under the Leases and requested that the Mitra Defendants respond in writing with their "intent to cure the defaults on all three properties." (Exh. 3, Pushpak Decl. at ¶ 6; Exh. 23.)

42. In a January 26, 2019, email to Pushpak Patel regarding the properties at issue in this case, Mitra property manager Thomas Michael wrote: ". . . we have been paying 50% of the rent stated in the lease on all three sites for a number of years. I do not have a current tally, but I

believe our outstanding rent could be ~$900m," meaning $900,000. (*See* emails attached as **EXHIBIT 36** at MITRA 009802; *see also* Pushpak Patel Depo., **EX. 33**, at 160:20-161:22, 165:8-17.)

> **RESPONSE:** Admit, but incomplete as this email exchange occurred after Plaintiffs' May 16, 2017 letter in which they made Pushpak aware of their position regarding the modified rent payment issue. (Exh. 2, Pushpak Depo. at 15:6–19.) Further, Mr. Michael's email only references what the leases provide regarding rent due, and does not address the Plaintiffs' prior conduct or whether the Mitra Defendants had in fact been paying less than the full amount of rent due under the Leases pursuant to that conduct. (Exh. 2, Pushpak Depo at 165:24–66:15.)

43.     In a July 18, 2019, email discussing potential options to offer to buy the Camdenton Property from the owners, Pushpak Patel wrote: "I doubt that he will sell us for $350k, as we owe them more than that in back rent." (*See* emails attached as **EXHIBIT 37** at MITRA 010045; *see also* Pushpak Patel Depo., **EX. 33**, at 153:17-155:8.)

> **RESPONSE:** Admit, but incomplete as this email exchange occurred after Plaintiffs' May 16, 2017 letter in which they made Pushpak aware of their position on the modified rent payment issue and the fact that they believed back rent was owed. (Exh. 2, Pushpak Depo. at 15:6–19; 155:13–56:24.)

44.     In November 2010, an Asset Purchase Agreement was executed to acquire rights of operation for a portfolio of 32 restaurants from Table Rock Restaurants. Counsel for the acquiring parties explained the deal as follows:

> As you may know, [Chalak Mitras Group] is purchasing these assets as-is, essentially, in exchange for a very low purchase price. Our clients have performed significant due diligence, however, and are satisfied that they are getting a very good deal. . . .

Manish Patel and Pushpak Patel are approved franchisees and are the sole owners of CMG Operations, LLC, and Mitra Hedgehog, LLC. Those two LLCs will be the operating entities and will hold the franchise agreements. As is explained below, the operating entities will also hold the leases. They will lease the equipment, inventory, etc. from Chalak Mitras Group, LLC, and will be given the right to operate the stores for Chalak Mitras Group, LLC, in exchange for payment of profits to Chalak Mitras Group, LLC. . . .

(Laura Hebert email attached as **EXHIBIT 38**, at MITRA 001051; *see also* Manish Patel Depo.,

**EX. 32**, at 25:5-26:6, 31:10-34:4.)

    **Response:** Controverted.  The purported facts asserted in Ms. Hebert's email are supported

by inadmissible hearsay statements made by a third-party.  Further, Plaintiffs cite no evidence from

Manish or Pushpak that they were "satisfied that they [got] a very good deal."  In fact, Manish

testified that the purchase price was negotiated and "it was [a] fair purchase price both for buyer

and seller."  (Exh. 5, Manish Depo. at 30:6–14.)  Pushpak testified that he did not think it was a

good deal.  (Exh. 2, Pushpak Depo. at 26:24–28:1.)  Additionally, Plaintiffs cite no evidence from

Manish and Pushpak that they "performed significant due diligence."  In fact, Pushpak testified to

the opposite:  that they did not have time to perform significant due diligence.  (Exh. 2, Pushpak

Depo. at 24:13–25:13.)

    45.    Manish Patel and Pushpak Patel were the two managers to Chalak Mitras Group.

(Pushpak Patel, **EX. 33**, at 33:15-25.)

    **RESPONSE:** Admit.

    46.    Mannish Patel and Pushpak Patel knew that many of the stores being acquired from

Table Rock Restaurants were under lease to the property owners. They were able to review those

leases before the deal closed, knew the terms of those leases (including rent), and took assignment

of the leases voluntarily with the understanding and knowledge that they would be legally

obligated to pay the rent required by those leases. (Manish Patel Depo., **EX. 32**, at 40:18-23, 41:16-42:1, 42:11-43:6; Pushpak Patel Depo., **EX. 33**, at 28:13-18, 30:4-18, 71:2-6.)

**RESPONSE:** Controverted. Manish and Pushpak did not personally take assignment of any of the leases that were included in the Asset Purchase Agreement. (Exh. 5, Manish Depo. at 32:16–23, 43:7–12.) Further, this Statement of Fact is controverted to the extent it calls for a legal conclusion regarding Manish and Pushpak being "legally obligated to pay the rent required by those leases."

The Mitra Defendants admit that Manish and Pushpak knew that many of the stores being acquired from Table Rock were under lease to the property owners, that they (Manish and Pushpak) were able to review those leases before the deal closed, and that they (Manish and Pushpak) knew the terms of those leases (including rent).

47. Manish Patel and Pushpak Patel also performed due diligence before the acquisition closed, including review of store financials that showed them some restaurants in the portfolio were profitable and others were losing money. (Pushpak Patel Depo., **EX. 33**, at 25:14-26:11.)

**RESPONSE:** Admit.

48. After the Asset Purchase Agreement with Table Rock Restaurants closed, the 32 restaurants acquired in the deal were immediately allocated between two entities—CMG Operations and Mitra Hedgehog. (Manish Patel Depo., **EX. 32**, at 43:7-12.)

**RESPONSE:** Admit.

49. The division of restaurants between the two operating entities was based "strictly on economics"—"healthier stores" were assigned to CMG Operations and "underperforming stores" were assigned to Mitra Hedgehog. (Manish Patel Depo., **EX. 32**, at 50:17-51:10, 88:9-90:8.)

**RESPONSE:** Admit, but incomplete. Both Manish and Pushpak testified during their depositions that one factor taken into account for dividing the stores was that the stores that needed the most attention were assigned to Mitra Hedgehog while the stores that did not need as much attention were assigned to CMG Operations. (Exh. 5, Manish Depo. at 50:17–51:3; Exh. 2, Pushpak Depo. at 34:20–35:18.) Further, an equal number of stores assigned to Mitra Hedgehog and CMG Operations have closed since the Asset Purchase Agreement. (Exh. 5, Manish Depo. at 51:8–20; Exh. 1, Manish Decl. at ¶ 20; Exh. 20.)

50. Other than the restaurant allocations, there was no operational difference between Mitra Hedgehog and CMG Operations. (Manish Patel Depo., **EX. 32**, at 91:15-21.)

**RESPONSE:** Admit.

51. The Camdenton, Neosho and Mt. Vernon restaurants were considered "underperforming stores" and were assigned to Mitra Hedgehog at the outset. (Manish Patel Depo., **EX. 32**, at 56:21-57:11, 90:1-8.)

**RESPONSE:** Admit.

52. Manish Patel considered Tyron Sisson to be an "unfriendly" landlord because they could not come to terms on new rent and he believed Mr. Sisson was "a landlord that's not going to work with" the Mitra entities. (Manish Patel Depo., **EX. 32**, at 121:21-7.)

**RESPONSE:** Controverted as to Plaintiffs' usage of the term "landlord". *See* Response to Statement of Fact No. 16 above regarding Plaintiffs' use of the term "landlords".

This Statement of Fact is further controverted as the testimony provided in Exhibit 32 does not support the quotation.

53. Manish Patel and Pushpak Patel are (and always have been) the creators, managers and 50/50 owners of Mitra Hedgehog, CMG Operations, Mitra Camdenton, Mitra Neosho, Mitra

Mt. Vernon and Mitra Midwest Operations. (Manish Patel Depo., **EX. 32**, at 36:3-37:7; 51:21-52:5, 149:24-150:8; Pushpak Patel Depo., **EX. 33**, at 31:9-19, 57:3-6, 57:15-58:8, 101:18-102:10.)

    **RESPONSE:** Admit.

54.    Manish Patel and Pushpak Patel are the two individuals completely responsible for making all decisions of Mitra Hedgehog, CMG Operations, Mitra Camdenton, Mitra Neosho, Mitra Mt. Vernon and Mitra Midwest Operations regarding all the transactions at issue in this case. (Manish Patel Depo., **EX. 32**, at 52:6-10, 83:16-84:1, 150:9-21; Pushpak Patel Depo., **EX.33**, at 31:20-23, 57:7-9.)

    **RESPONSE:** Admit.

55.    Manish Patel signed and filed the creation documents for Mitra Camdenton, Mitra Neosho, Mitra Mt. Vernon with the Missouri Secretary of State. (*See* Articles of Organization, attached as **EXHIBIT 39**.)

    **RESPONSE:** Admit.

56.    The respective assignments of the leases for the three properties to Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon were made without landlord consent pursuant to Section 26 of each lease, which states in part: ". . . Tenant may assign this Lease . . . to a KFC Corporation franchisee or licensee (an "Approved Franchisee"), without consent of Landlord." Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon were all approved KFC franchisees that had received the rights to operate the restaurants on the respective properties through franchise assignments from Mitra Hedgehog. (TPS Decl., **EX. 1**, ¶¶ 7, 14; TNS Decl., **EX. 24**, ¶ 7; *see also* Assignment of Franchise attached as **EXHIBITS 6, 12 and 29**.)

**RESPONSE:** Controverted as to Plaintiffs' usage of the term "landlord" in in the phrase "were made without landlord consent". *See* Response to Statement of Fact No. 16 above regarding Plaintiffs' use of the term "landlords".

The Mitra Defendants do not controvert that Plaintiffs did not consent to the purported assignments of the Camdenton, Neosho, or Mt. Vernon Leases to Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon; the quoted language from Section 26 of each Lease; or that Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon were all approved KFC Franchisees.

57.     Manish Patel and Pushpak Patel were responsible for making and executing the decision to have Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon approved as KFC franchisees so that the respective leases for each property could be assigned to those entities. (Manish Patel Depo., **EX. 32**, at 59:21-60:13, 133:1-12; Pushpak Patel Depo., **EX. 33**, at 58:9-60:5.)

**RESPONSE:** Admit.

58.     Pushpak Patel signed each lease assignment to Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon as the manager of those companies and Manish Patel signed the assignments as the manager of Mitra Hedgehog. (Manish Patel Depo., **EX. 32**, at 131:10-132:19, 133:13-134:9; *see also* Assignment and Assumption of Lease attached as **EXS. 5, 11 and 28**.)

**RESPONSE:** Admit.

59.     Manish Patel signed each franchise assignment to Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon in a dual capacity as both manager of those entities and manager of Mitra Hedgehog, and Pushpak Patel signed as a witness on the assumption of franchisee obligations by Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon. (*See* Assignment of Franchise and Release attached as **EXS. 6, 12 and 29**.)

**RESPONSE:** Admit.

60.     No consideration was paid by Mitra Camdenton, Mitra Neosho and Mitra Mt. Vernon for the assignments of the leases. (Manish Patel Depo., **EX. 32**, at 132:20-25.)

**RESPONSE:** Admit.

61.     Manish Patel admitted in his deposition that avoiding lease liability was one reason why the leases for the Camdenton, Neosho and Mt. Vernon restaurants were assigned to Mitra Camdenton, Mitra Neosho and Mitra Mt. Vernon (what he referred to as "single-purpose entities"). Avoiding vendor liability was another reason. (Manish Patel Depo., **EX. 32**, at 43:21-44:16, 45:9-13, 46:13-47:10, 52:11-53:11.)

**RESPONSE:** Admit.

62.     In December 2012, Manish Patel sent an email to Sunny Sajnani of Metropolitan Capital Advisors in connection with refinancing of the bank loan on the restaurant portfolio stating that the single-purpose entities (including Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon) did not have employer identification numbers and "were just scare tactics for landlords." (Emails attached as **EXHIBIT 40**, at MITRA 010963; *see also* Manish Patel Depo., **EX. 32**, at 134:14-136:16, 140:12-141:1.)

**RESPONSE:** Admit that the email is properly quoted, but the Statement of Fact is incomplete as the email further states that "all bills [for the stores] are still paid through . . . Mitra Hedgehog", and Manish testified the single-purpose entities were negotiation tactics. *See* the Mitra Defendants' response to Statement of Fact No. 63 for additional detail, which is incorporated by reference herein.

63.     Manish Patel explained in his deposition that Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon did not have any functional existence and were used to scare Plaintiffs into giving

rent concessions on the leases for the properties because Plaintiffs were "not really working with" Manish Patel and Pushpak Patel on the issue of rent. (Manish Patel Depo., **EX. 32**, 141:2-142:19, 144:1-8.)

**RESPONSE:** Controverted. During his deposition, Manish explained that Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon were used as negotiation tactics to negotiate the rent because Plaintiffs were not working with the Mitra Defendants. (Exh. 5, Manish Depo. at 140:24–41:4, 142:2–19, 144:1–8.) Manish did not agree with Plaintiffs' counsel's use of the phrase "scare tactics." Additionally, Manish testified that EINs were never assigned to Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon because Mitra Hedgehog made all the payments for those entities. (*Id.* at 141:14–42:10.)

64. The parties have made the following stipulations regarding the financial condition of Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon:

(a) From their creation to their dissolution, Mitra Camdenton, LLC, Mitra Mt Vernon, LLC, and Mitra Neosho, LLC had no cash or operating capital. They held the leases for the properties and the franchise agreements for the restaurants. They did not have operating capital to pay rent or the other expenses of the restaurant operations.

(b) After the Camdenton lease was assigned to Mitra Camdenton, LLC, Mitra Hedgehog, LLC continued to pay all operating expenses at the Camdenton property, including rent payments.

(c) After the Mt. Vernon and Neosho leases were assigned to Mitra Mt Vernon, LLC and Mitra Neosho, LLC respectively, Mitra Hedgehog, LLC continued to pay all operating expenses at the Mt. Vernon and Neosho properties, including rent payments due through May 2013 (paid April 23, 2013). Thereafter, following an assignment of the leases to Mitra Midwest Operations, LLC, and starting with the rent payments due for June 2013 (paid May 23, 2013), Mitra Midwest Operations, LLC has paid all operating expenses at the Mt. Vernon and Neosho properties, including rent payments.

(d)     The assets and liabilities of the Camdenton, Mt. Vernon, and Neosho properties have been claimed on the financial statements of either Mitra Hedgehog, LLC or Mitra Midwest Operations, LLC since November 2010. At no time did Mitra Camdenton, LLC, Mitra Mt Vernon, LLC, and Mitra Neosho, LLC have the ability to independently operate the respective restaurants.

(e)     Mitra Camdenton, LLC, Mitra Mt Vernon, LLC, and Mitra Neosho, LLC had no income, employees, bank accounts, or tax returns.

(f)     At all times since November 2010, entities other than Mitra Camdenton, LLC, Mitra Mt Vernon, LLC, and Mitra Neosho, LLC have procured insurance coverage, utility services and business licenses for operation of the restaurants on the Camdenton, Mt. Vernon, and Neosho properties.

(Stipulations attached as **EXHIBIT 41**.)

**Response:** Admit.

65.     Manish Patel and Pushpak Patel were responsible for deciding that all financial operations for the restaurants at issue in this case would be run through Mitra Hedgehog and/or Mitra Midwest Operations and that Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon would not have any bank accounts, would not have any cash or operating capital, would not file any separate tax returns, would not have any employees, and would not make any rent payments. (Pushpak Patel Depo., **EX. 33**, at 60:13-66:5.)

**RESPONSE:** Admit.

66.     Pushpak Patel admitted in his deposition that a judgment against Mitra Camdenton, Mitra Neosho and Mitra Mt Vernon would be uncollectible from any of those entities. (Pushpak Patel Depo., **EX. 33**, at 168:5-170:7.)

**RESPONSE:** Admit.

## THE MITRA DEFENDANTS' STATEMENT OF ADDITIONAL
## UNCONTROVERTED MATERIAL FACTS

### The Camdenton Property and Lease

67.     On April 6, 2005, Richard T. Gregg and Jenny D. Gregg, as landlords, and Ozark Restaurants, Inc., as tenant, entered into the Camdenton Lease.  (Exh. 2 attached to Plaintiffs' Suggestions.)

68.     On August 30, 2006, Gardner Properties of Springfield, LLC conveyed the Camdenton Property to Tryon P. Sisson.  (Exh. 8.)

69.     On August 30, 2006, Gardner Properties of Springfield, LLC assigned all of its interest in the Camdenton Lease to Tryon P. Sisson and Shannon [*sic*] G. Sisson.  (Exh. 9.)

70.     During discovery, Plaintiffs produced a Tenant's Estoppel Certificate signed by Ozark Restaurants Inc. identifying Richard T. Gregg as the landlord under the Camdenton Lease. (Exh. 1, Manish Decl. at ¶ 10; Exh. 13.)

### The Neosho Property and Lease

71.     On April 6, 2005, Bull Creek Ranch, LLC, as landlord, and Ozark Restaurants, Inc., as tenant, entered into the Neosho Lease.  (Exh. 8 attached to Plaintiffs' Suggestions.)

72.     On July 27, 2006, Bull Creek Ranch, LLC conveyed the Neosho Property to Tryon P. Sisson and Shannon [*sic*] G. Sisson.  (Exh. 1, Manish Decl. at ¶ 11; Exh. 14.)

73.     On July 27, 2006, Richard T. Gregg assigned his rights in a certain lease to Tryon P. Sisson and Shannon G. Sisson.  (Exh. 10.)  In the lease assignment, Richard T. Gregg stated that the Neosho Property "is presently subject to a certain 'Lease' dated April 6, 2005 by and between Assignor[, Richard T. Gregg,] and Ozark Restaurant Systems, Inc." (*Id.*)  After making that statement, Richard T. Gregg assigned all of his interest in "the Lease" (which was earlier

identified as the "certain 'Lease' dated April 6, 2005 by and between Assignor[, Richard T. Gregg,] and Ozark Restaurant Systems, Inc.") to Tryon P. Sisson and Shanon G. Sisson.  (*Id.*)

### The Mt. Vernon Property and Lease

74.     On April 6, 2005, Bull Creek Ranch, LLC, as landlord, and Ozark Restaurants, Inc., as tenant, entered into the Mt. Vernon Lease.  (Exh. 25 attached to Plaintiffs' Suggestions.)

75.     On October 10, 2006, Bull Creek Ranch, LLC, conveyed the Mt. Vernon Property to Tryon N. Sisson and Dolores A. Sisson.  (Exh. 1, Manish Decl. at ¶ 12; Exh. 15.)

76.     During discovery, Plaintiffs did not produce an assignment assigning them any interest in the Mt. Vernon Lease.  (Exh. 1, Manish Decl. at ¶ 13.)

### The Leases

77.     For Notices, the Camdenton, Neosho, and Mt. Vernon Leases provide:

> NOTICES.  Any notice given hereunder shall be in writing and may be delivered in person or sent by certified or registered mail, postage prepaid, addressed to the party to receive the notices at the address of that party as shown on the signature page hereof or any other address as that party may hereafter furnish to the other in writing.

(Exhs. 2, 8, 25 attached to Plaintiffs' Suggestions.)

Lease Amendments Plaintiff Tryon P. Sisson Entered Into With Table Rock

78.     Plaintiff Tryon P. Sisson entered into a written lease amendment with Table Rock Restaurants, LLC ("Table Rock") while Table Rock was a tenant in the Camdenton and Neosho buildings.  (Exh. 4, Tryon P. Depo. at 39:6–40:18.)  The amendments changed the terms of the rent.  (*Id.*)  During discovery, Plaintiffs did not produce any lease amendments they entered into with Table Rock.  (Exh. 1 Manish Decl. at ¶ 14.)

### Cancelation of First Lease Amendment

79.     In a letter from Plaintiffs' attorney dated May 16, 2011, Plaintiffs sent a formal Cancellation of Rent Reduction and Notice of Non-Payment of Rent, dated May 12, 2011, to Mitra

Hedgehog, Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon because "full payment of the April 2011 rent was not received by the landlords under any of the Leases." (Exh. 11 at Sisson 0127–28; Exh. 4, Tryon P. Depo. at 67:24–68:20.) Plaintiffs sent the formal Cancellation of Rent Reduction and Notice of Non-Payment of Rent less than two weeks after not receiving the May 2011 rent. (Exh. 6, Tryon N. Depo at 71:12–15.) Plaintiffs' attorney also put Manish on notice that Plaintiffs were uncertain whether the assignments from Mitra Hedgehog to Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon were valid because Plaintiffs believed those companies (Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon) had no assets. (Exh. 11 at Sisson 0126; Exh. 6, Tryon N. Depo. at 68:15–69:10; Exh. 4, Tryon P. Depo. at 63:24–64:3.)

## Second Lease Amendments

80.  After the January 1, 2011 lease amendments were cancelled, Plaintiffs and the Mitra Defendants engaged in negotiations for a second lease amendment. On June 21, 2011, Plaintiffs' attorney sent Manish, as an agent for Mitra Hedgehog, Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon, and their attorney a letter wherein he informed Manish that although Plaintiffs "instructed [him] to proceed with the filing of lawsuits in Missouri under the Leases to enforce their rights", he "convinced [Plaintiffs] to give [Manish] one last chance to do the right thing." (Exh. 1, Manish Decl. at ¶ 15; Exh. 16.)

81.  In the letter, the letter, Plaintiffs' attorney states that, at that time, Plaintiffs believed Manish "inappropriately implemented the plan of assignment of the [Camdenton, Neosho, and Mt. Vernon] Leases to shell companies to avoid liability under the Leases", that "[t]his tactic will not be accepted", and that Plaintiffs "intend to pursue [their] full legal rights if the terms of the Leases are not satisfied." (*Id.*)

82.     On June 28, 2011, as the negotiations continued, in response to Plaintiffs' request

for the financials of the tenants in the Camdenton, Neosho, and Mt. Vernon Properties, the Mitra

Defendants' attorney stated that the tenants' financials "will be closely tied to the performance of

the restaurants they lease as the tenants have no other assets.  We are happy to represent and

warrant those facts to you."  (Exh. 1, Manish Decl. at ¶ 16; Exh. 17 at Sisson 0144–45.)  The Mitra

Defendants' attorney continued:

> We thought we had made clear that the tenants did not have any significant assets
> apart from the restaurants and the restaurants would need to stand alone or it would
> be difficult to pay the rent.  If that was not clear, we are sorry. . . .  The stores are
> not producing as they once were and absent rent concessions, they do not make
> much sense.  I think we have been clear about that.
>
> . . . .  We understand your client's need for a reasonable return on their investment
> and it is our hope that the restaurants will recover in the future sufficient to provide
> that return.  In the interim, we have asked if your client would prefer to have the
> restaurants back and empty or would want to pursue negotiations to arrive at a rent
> we both can live with for some period of time.  That is up to your client, we are not
> trying to dictate what he should do.

(Exh. 17.)

83.     After the Mitra Defendants' attorney's email to Plaintiffs' attorney, Plaintiffs

continued with the rent modification negotiations.  (*Id.* at Sisson 0144.)

84.     On July 27, 2011, in a letter to Manish, as an agent for Mitra Hedgehog, Mitra

Camdenton, Mitra Neosho, and Mitra Mt Vernon, Plaintiffs proposed:

> (a) [the Mitra Defendants] bring all [back] rent current . . ., (b) the parties agree to
> temporarily reduce the rent to $5,250 at each of [Plaintiffs'] three (3) store locations
> for one (1) year beginning with the August 2011 rent and (c) Mitra Hedgehog, LLC
> shall sign a guaranty of all obligations under the three (3) leases.

(*Id.* at Sisson 0148.)   Plaintiffs continued that "[t]he one year period will allow us to have

approximately eighteen months of operational figures at the locations for us to analyze and

consider whether additional rent modifications are appropriate."  (*Id.*)

85. On August 1, 2011, Manish responded by stating Plaintiffs' rent offer of $5,250 was too high, and counteroffered that rent would be $4,000 for the Camdenton Property, $4,350 for the Neosho Property, and $4,100 for the Mt. Vernon Property. (Exh. 7 at Sisson 0150.) Further, Manish stated the guaranty would come from Mitra Camdenton, Mitra Neosho, and Mitra Mt. Vernon, not Mitra Hedgehog. (*Id.*)

86. On August 5, 2011, Plaintiffs sent an offer to Manish, as the agent for Mitra Hedgehog, Mitra Camdenton, Mitra Mt Vernon, and Mitra Neosho, proposing that (1) all back rent would be paid in full in accordance with the rental figures of the original leases; (2) from August 2011 through July 31, 2012, the monthly rent would be $4,875 for each location; and (3) prior to August 1, 2012, the parties would renew discussions and analyze the actual gross revenues from the preceding year so "[t]he parties will agree upon whether further adjustments to the rental amounts are justified." (*Id.* at Sisson 0157.)

87. On August 8, 2011, Manish accepted Plaintiffs' rent offer of $4,875 for each Property, and the parties further negotiated the amount of back rent due. (Exh. 1, Manish Decl. at ¶ 17; Exh. 18 at Sisson 0171.)

88. Plaintiffs again brought up Mitra Hedgehog's guaranty and requested that Mitra Hedgehog be added as a guarantor to the lease amendments for one year because they felt Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon were "insolvent when it came down to any obligations to pay any money." (*Id.*; Exh. 6 Tryon N. Depo. at 86:21–87:1, 88:13–16, 90:5–9; 91:9–22.)

89. Despite being aware of Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon's financial situation and having the feeling that Mitra Camdenton, Mitra Neosho, and Mitra Mt

Vernon were "insolvent", Plaintiffs entered into the second lease amendments with Mitra Hedgehog as a guarantee for only one year.  (*See* Statement of Fact Nos. 18–19, 82, 88.)

### Plaintiffs' Communication with the Mitra Defendants

90.     From August 2011 through May 2017, Plaintiffs did not contact an employee of the Mitra Entities[2] or Manish or Pushpak regarding the modified rent payments.  (Exh. 4, Tryon P. Depo. at 80:10–15, 82:22–83:7; Exh. 5 Manish Depo. at 170:3–7.)

91.     From August 2012 until May 2017, the Mitra Defendants continued to pay $4,875 for each Property, as they believed that was the rent amount due and had not heard otherwise from Plaintiffs.  (Exh. 5, Manish Depo. at 170:11–16; Exh. 3, Pushpak Depo. at 13:9–23.)  For the Mt. Vernon and Neosho Properties, Mitra Hedgehog made rent payments under those leases from August 2012 through May 2013's rent payment, after which point, Mitra Midwest has made rent payments.  (Exh. 1, Manish Decl. at ¶ 18; Exh. 19 (rent payment stipulation).)  For the Camdenton Property, Mitra Hedgehog has made rent payments since August 2012.  (*Id.*)

92.     In May 2017, Pushpak called Plaintiffs to inform them that, even with the modified rent payment, the restaurant on the Camdenton Property had to close.  (Exh. 4, Tryon P. Depo. at 88:8–16.)

93.     Following the phone call, Plaintiffs sent a letter to Pushpak raising for the first time any issue with the amount of rent payments they received.  (Exh. 4, Tryon P. Depo. at 88:8–16; Exh. 23.)

94.     In the letter, Plaintiffs note that Pushpak was "the first person since August 2011, to make contact with [them] since [their] prior dealings with Mitra and their representative, Manish

---

[2]     The Mitra Entities are Mitra Hedgehog, CMG Operations, Mitra Midwest, Chalak Mitras, Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon.

Patel." (Exh. 23 at 0540.) Plaintiffs further requested that Pushpak provide a proposal to resolve the rent issue. (*Id.* at Sisson 0541; Exh. 4, Tryon P. Depo. at 92:14–22.)

95.     Pushpak sent Plaintiffs two proposals in June 2017 to resolve the rent issue. (Exh. 3, Pushpak Decl. at ¶ 7; Exh. 24 at Sisson 0402–03.)

96.     Plaintiffs did not respond to Pushpak's proposals until their attorney sent a letter in September 2017. (Exh. 24 at Sisson 0402; Exh. 3, Pushpak Decl. at ¶ 8; Exh. 25.)

97.     The September 2017 letter from Plaintiffs' attorney rejected Pushpak's proposals, provided Plaintiffs' offer to resolve the back rent issue, and proposed to modify the terms of the Leases. (Exh. 25.)

98.     On September 25, 2017, the Mitra Defendants' attorney sent a letter to Plaintiffs' attorney providing a counteroffer to resolve the back rent issue and modify the rent terms. (Exh. 3, Pushpak Decl. at ¶ 9; Exh. 26.)

99.     On October 20, 2017, after not receiving a response to his attorney's September 25 offer, and in the hopes of "work[ing] things out as soon as possible", Pushpak contacted Plaintiffs inquiring about a response to their offer. (Exh. 3, Pushpak Decl. at ¶ 10; Exh. 27 at Sisson 0438–39.)

100.     In their response, Plaintiffs commented that they "had some other more urgent pressing matters that [they] have dealt with" and stated that they would have a formal response to the Mitra Defendants' offer soon. (Exh. 27 at Sisson 0439.)

101.     In November 2017, after not having received a response from Plaintiffs, the Mitra Defendants' attorney contacted Plaintiffs' attorney for a response. (Exh. 3, Pushpak Decl. at ¶ 11; Exh. 28.) Plaintiffs' attorney said he would check with Plaintiffs. (Exh. 28.)

102.     Plaintiffs did not contact an employee of the Mitra Entities or Manish or Pushpak regarding the modified rent payments for the rest of 2017 and the entirety of 2018 and 2019.  (Exh. 4, Tryon P. Depo. at 94:5–10, 95:12–16; Exh. 6, Tryon N. Depo. at 105:21–06:1.)

103.     In March 2020, after receiving a letter from Pushpak regarding a rent abatement or deferment due to the COVID-19 health crisis, Plaintiffs emailed Pushpak requesting financials so they could determine how to respond to his request.  (Exh. 21.)

104.     In their March 2020 email, Plaintiffs acknowledged that the parties' prior negotiations "have been on hold."  (*Id.* at Sisson 0485.)

105.     Pushpak responded by stating that the Mitra Defendants would continue to pay rent on the Camdenton, Neosho, and Mt. Vernon Properties.  (*Id.* at Sisson 0484.)

106.     In response, Plaintiffs thanked Pushpak for "continu[ing] to pay the rent" on the Properties and stated that they "were preparing to contact [him] to resume [the] negotiations that have been on hold."  (*Id.* at Sisson 0483)  At that time, continuing to pay rent on the Camdenton, Neosho, and Mt. Vernon Properties would have been continuing to pay the modified rent payments that the Mitra Defendants had been making since 2011.  (Exh. 4, Tryon P. Depo. at 97:5–15.)

107.     Plaintiffs did not contact Pushpak, Manish, or an employee of the Mitra Entities regarding the modified rent payments until October 2020, when Pushpak emailed Plaintiffs regarding the filing of this lawsuit.  (Exh. 3, Pushpak Decl. at ¶ 12; Exh. 29 at Sisson 0517; Exh. 2, Pushpak Depo. at 152:5–20.)

108.     Between September 2017 and immediately prior to the filing of this lawsuit, Pushpak believed the parties would resolve the newly raised issues with the modified rent payments through negotiation.  (Exh. 2, Pushpak Depo. at 152:5–20; 177:4–18.)

109.     While the Camdenton, Neosho, and Mt. Vernon Leases were (or are still) assigned to Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon, Mitra Hedgehog paid all operating expenses for those entities.  (Exh. 5, Manish Depo. at 75:12–25, 79:20–80:23; Exh. 2, Pushpak Depo. 91:24–92:8, 92:22–93:5.)

## ARGUMENT

### I. Legal Standard

Summary judgment is appropriate only if the moving parties demonstrate that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving parties and draws all reasonable inference in those parties' favor. *Tolan v. Cotton* 572 U.S. 650, 656 (2014).

### II. Plaintiffs Are Not Entitled to Summary Judgment on Their Claim for Breach of Contract Because They Have Not Shown They Have Standing to Enforce the Leases.

Plaintiffs argue that they have established all essential elements on their breach of contract claim; however, Plaintiffs fail to even address whether they have standing to enforce a breach of contract claim against the Mitra Defendants. Plaintiffs' assertions that they were assigned "all rights and interest as landlords" under the Camdenton, Neosho, and Mt. Vernon Leases are not supported by the documents they have produced during discovery. As such, Plaintiffs are not entitled to summary judgment on their breach of contract claim.

"In a diversity case, a federal court may not address a party's claims unless the party establishes standing to sue under both Article III of the United States Constitution and the relevant state law." *Whispering Oaks Residential Care Facility, LLC v. AT & T Wireless PCS, Inc.*, No. 4:14-CV-1002 CEJ, 2014 WL 5425559, at *3 (E.D. Mo. Oct. 22, 2014). "Under Missouri law, only the parties to a contract and any third-party beneficiaries of a contract have standing to enforce that contract." *Id.* Plaintiffs do not claim to be third-party beneficiaries of the Leases. Instead, Plaintiffs assert they are parties to the Camdenton, Neosho, and Mt. Vernon Leases because they were purportedly assigned those Leases. (SOF ¶¶ 2, 7, 12.)

Missouri caselaw requires Courts to dismiss a plaintiff's breach of contact action if the plaintiff is not able to establish it is a party to the underlying lease. *Whispering Oaks*, 2014 WL 5425559, at *3–4 (dismissing the purported landlords' breach of contract claim because they "presented no documents supporting their claim that the [applicable] lease agreement was assigned to either of them by" the original landlord identified in the lease agreement); *see also Spencer's River Roads Bowling Lanes, Inc. v. Unico Mgt. Co.*, 615 S.W.2d 121, 124 (Mo. App. E.D. 1981) (affirming circuit court's denial of injunctive relief because, although the purported tenant was in possession of the property, the purported tenant was never substituted as a lessee or sublessee under the lease and thus lacked standing to bring a claim). In this case, Plaintiffs cannot establish they are parties to the Camdenton, Neosho, or Mt. Vernon Leases.

### A. Plaintiffs have not produced documents showing they were assigned the landlord's interest under the Camdenton Lease.

Tryon P. Sisson and Shanon G. Sisson purportedly received an interest in the Camdenton Lease via the August 30, 2006 lease assignment from Gardner Properties of Springfield, LLC. (SOF ¶ 2.) However, Gardner Properties of Springfield, LLC was not an original party to the Camdenton Lease, and it is unclear what, if any, interest in the Lease Gardner Properties of Springfield, LLC had to convey as the Tenant's Estoppel Certificate produced by Plaintiffs in discovery identifies Richard T Gregg as the landlord. (SOF ¶¶ 2, 69–70.) Richard T. Gregg was one of the landlords identified in the Camdenton Lease. (SOF ¶ 67.)

### B. The lease assignment to Plaintiffs associated with the Neosho Property shows Plaintiffs were not in fact assigned the Neosho Lease.

Tryon P. Sisson and Shanon G. Sisson's purported interest in the Neosho Lease stems from the July 27, 2006 lease assignment from Richard T. Gregg. (SOF ¶ 7.) However, this lease assignment transfers interest in an entirely different lease to Tryon P. Sisson and Shanon G. Sisson. Indeed, the July 27, 2006 lease assignment transfers to Tryon P. Sisson and Shanon G. Sisson

37

interest in a lease dated April 6, 2005 by and between <u>Richard T. Gregg</u> and <u>Ozark Restaurant</u> <u>Systems, Inc.</u> (SOF ¶ 73.) Here, the Neosho Lease Plaintiffs are attempting to enforce is dated April 6, 2005, but is between <u>Bull Creek Ranch, LLC</u> and <u>Ozark Restaurants, Inc.</u> (SOF ¶ 71.)

## C. Plaintiffs have not produced a lease assignment assigning them any interest in the Mt. Vernon Lease.

Tryon N. Sisson and Dolores A. Sisson's purported interest in the Mt. Vernon Lease stems from an October 2006 assignment. (SOF ¶ 12.) However, Plaintiffs have entirely failed to produce any lease assignment assigning them any interest in the Mt. Vernon Lease. (SOF ¶ 76.)

***

Plaintiffs cannot establish that they were assigned any interest in the Camdenton, Neosho, or Mt. Vernon Leases. Thus, they do not have standing to enforce a breach of contract claim associated with those Leases. Therefore, Plaintiffs are not entitled to summary judgment, and their breach of contract claims should be dismissed.[3]

## III. Plaintiffs Are Not Entitled to Pre-Judgment Interest Beginning to Accrue in August 2012.

In the event the Court finds Plaintiffs have standing to enforce the Camdenton, Neosho, and Mt. Vernon Leases, Plaintiffs are not entitled to the amount of pre-judgment interest that they seek. As part of their breach of contract claim, Plaintiffs seek pre-judgment interest in the amount of $211,449.87 under the Camdenton Lease, $197,270.45 under the Neosho Lease, and $156,793.29 under the Mt. Vernon Lease. (SOF ¶ 36.) In calculating these amounts of purported pre-judgment interest, Plaintiffs have pre-judgment interest accruing from August 2012. (*Id.*) However, for the

---

[3]     Alternatively, Plaintiffs have not established the terms of the Camdenton or Neosho Leases. Plaintiffs admitted that they entered into a written lease amendment with Table Rock that modified the terms of the rent due under the Leases. (SOF ¶ 78.) However, Plaintiffs have not produced the amendments that modified the terms of the Leases they are attempting to enforce. (*Id.*) As such, Plaintiffs have not established the terms of the Camdenton or Neosho Leases.

reasons stated below, Plaintiffs are either not entitled to pre-judgment interest, or only entitled to pre-judgment interest accruing at a point in time after August 2012.

## A. Pre-judgment interest is not warranted under the equitable principles of fairness and justice.

When awarding pre-judgment interest, Courts may consider "equitable principles of fairness and justice." *Catron v. Columbia Mut. Ins. Co.*, 723 S.W.2d 5, 7 (Mo. 1987). "The purpose of statutory prejudgment interest is to promote settlement of lawsuits and fully compensate plaintiffs by accounting for the time-value of money." *Children Intern. v. Ammon Painting Co.*, 215 S.W.3d 194, 203 (Mo. App. W.D. 2006). "Generally, prejudgment interest is not warranted when the debtor is unaware of the amount owed." *Transamerica Ins. Co. v. Pennsylvania Nat. Ins. Cos.*, 908 S.W.2d 173, 177 (Mo. App. E.D. 1995).

Here, Plaintiffs failed to timely communicate to Manish or Pushpak any objection to the modified rent payments until May 2017. (SOF ¶¶ 26, 90.) During this time, the Mitra Defendants continued to pay $4,875 in rent for each Property, as they believed that was the rent amount due and had not heard otherwise from Plaintiffs. (SOF ¶ 91.) Even after Plaintiffs raised the modified rent payment issue in 2017, only Pushpak attempted to "work things out as soon as possible", while Plaintiffs unilaterally placed the negotiations to resolve the issue on hold until filing this lawsuit. (SOF ¶¶ 95–107.) As such, equitable principles of fairness and justice dictate that Plaintiffs are not entitled to any pre-judgment; or, in the alternative, pre-judgment interest should not start accruing until the Complaint in this lawsuit was filed on October 21, 2020.

## B. Plaintiffs did not demand rent payments due under the Leases until well after August 2012.

In the event the Court finds pre-judgment interest is warranted, Plaintiffs are not entitled to pre-judgment interest accruing in August 2012, as they did not make a demand for alleged unpaid rent to Manish, Pushpak, or an employee of the Mitra Entities until May 2017.

Section 408.020 permits pre-judgment interest on liquidated claims; *i.e.*, claims that are fixed and determined. *Watters v. Travel Guard Intern.*, 136 S.W.3d 100, 111 (Mo. App. E.D. 2004). "Under section 408.020, prejudgment interest on liquidated claims is allowed only after demand of payment is made." *Id.* (awarding pre-judgment interest on Plaintiff's breach of contract claim running from the date of her demand to the insurance company that issued her the travel-insurance policy). "A demand for payment may be made any time after the debt becomes due." *Transamerica Ins.*, 908 S.W.2d at 177. In order to meet the demand of payment requirement of § 408.020, the demand "must be definite as to both time and amount, and made on the debtor party." *Graybar Elec. Co., Inc. v. Fed. Ins. Co.*, 567 F. Supp. 2d 1116, 1128 (E.D. Mo. 2008); *see also Baris v. Layton*, 43 S.W.3d 390, 397 (Mo. App. E.D. 2001). "In terms of timing, a definite future date on which payment is due, or a demand for immediate payment is required." *Id.*

Here, the undisputed facts show that Plaintiffs did not make a demand for payment on Manish, Pushpak, or an employee of a Mitra Entity until May 2017.[4] Indeed, in their May 2017 letter to Pushpak, Plaintiffs acknowledged that Pushpak was the first person "since August 2011, to make contact with me and my father." (SOF ¶ 94.) Moreover, in their depositions, Plaintiffs again acknowledged that they did not raise an issue with the modified rent payments to Manish, Pushpak, or an employee of the Mitra Entities until May 2017. (SOF ¶ 90.) Therefore, Plaintiffs are not entitled to pre-judgment interest beginning to accrue in August 2012 as a demand was not made until May 2017. Instead, Plaintiffs are entitled to pre-judgment interest accruing from May 16, 2017 on all rent due from August 2012 through May 16, 2017.

_____

[4] Ms. Rodriguez at Metropolitan Capital is not an employee of the Mitra Entities (SOF ¶ 23). However, even if she is considered an employee of a Mitra Entity, Plaintiffs' April 2013 email did not meet the notice requirement under the Leases as it was not sent via certified or registered mail. (SOF ¶¶ 24, 77.) Further, Plaintiffs' email only "suggest[ed]" Ms. Rodriguez "have Manish contact [Plaintiffs] to clear up this situation." (SOF ¶ 78.) As such, Plaintiffs did not make a demand for payment on Manish, Pushpak, or an employee of a Mitra Entity in April 2013.

As for rent due after May 17, 2017, a demand for payment must be made "after the debt becomes due." *Transamerica Ins.*, 908 S.W.2d at 177. The next demand Plaintiffs made for payment of rent was in the September 8, 2017 letter to Pushpak from Plaintiffs' attorney. (SOF ¶ 96.) Therefore, for rent due between May 17, 2017 and September 8, 2017, Plaintiffs are entitled to interest running accruing as of September 8, 2017.

Last, Plaintiffs did not make another demand for payment of rent until the filing of the Complaint in this lawsuit on October 21, 2020. (SOF ¶¶ 102–03, 107.) Therefore, for rent due between September 9, 2017 and the filing of this lawsuit, Plaintiffs are entitled to interest accruing as of October 21, 2020.[5]

## IV. Plaintiffs Are Not Entitled to Summary Judgment on Their Piercing Claims to Hold Manish and Pushpak Personally Liable.

In the event the Court finds Plaintiffs have standing to bring their breach of contract claim, under Missouri law, ordinarily, business entities, such as limited liability companies, are distinct from the members or owners who compose them and affiliated companies, and thus are regarded as wholly separate legal entities. *Hibbs v. Berger*, 430 S.W.3d 296, 306 (Mo. App. E.D. 2014). As such, generally, members of a limited liability company are not liable for the debts of the limited liability company. *Id.* In rare circumstances however, a court may disregard a corporate entity and pierce the entity's veil to hold its members liable for corporate debts. *See Missouri Ozarks Radio, Network, Inc. v. Baugh*, 598 S.W.3d 154, 169 (Mo. App. S.D. 2020).

The circumstances under which a corporate veil may be pierced are narrow, "and courts do not take this action lightly." *Bank of Belton v. Bogar Farms, Inc.*, 154 S.W.3d 518, 520 (Mo. App. W.D. 2005). Further, the applicability of piercing the corporate veil depends upon the particular

---

[5] For the rent due after the filing of the Complaint, Plaintiffs would only be entitled to interest accruing as of the date the rent was due.

facts of each case. *Hibbs*, 430 S.W.3d at 309. As such, piercing the corporate veil "is the exception rather than the rule, and, ordinarily, a corporation will be regarded as a separate legal entity." *K.C. Roofing Ctr. v. On Top Roofing, Inc.*, 807 S.W.2d 545, 549 (Mo. App. W.D. 1991).

In this case, the parties agree on the three-part test that a plaintiff must prove to pierce the corporate veil. Specifically, for a Missouri court to disregard a corporate entity and hold the individual members liable, a plaintiff must prove:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> (2) Such control must have been used by the [defendant] to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and
>
> (3) The control and breach of duty must proximately cause the injury or unjust loss complained of.

*66, Inc. v. Crestwood Commons Redevelopment Corp.*, 998 S.W.2d 32, 40 (Mo. 1999).

### A. Plaintiffs' showing of an improper purpose does not rise to the level required in a breach of contract action.

In this case, Plaintiffs are attempting to pierce Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon's corporate veil to hold Manish and Pushpak personally liable for breaches of contract committed by those entities.[6] Plaintiffs argue they have met their burden of proving the second element of a piercing claim based on Manish and Pushpak's creation and operation of insufficiently capitalized entities.

As to the second element, Plaintiffs must prove that the "control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive

---

[6]     Plaintiffs are attempting to pierce Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon's corporate veil to hold Manish and Pushpak personally liable for rent allegedly due for the Camdenton Property since August 2012 and the Neosho and Mt. Vernon Properties from August 2012 to April 2013.

legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights." *Hibbs*, 430 S.W.3d at 306. In some circumstances, a corporate veil may be pierced when an entity is undercapitalized. *Crestwood Commons*, 998 S.W.2d at 41. This is because "[i]nadequate capitalization is circumstantial evidence tending to show an improper purpose or reckless disregard for the rights of others." *Id.* However, "where the piercing claim arises from a breach of a contract, the showing of improper conduct must be particularly strong." *Union P. R. Co. v. Midland Equities Inc.*, 45 F. Supp. 2d 701, 708 (E.D. Mo. 1999); *see also J-R Grain Co. v. FAC, Inc.*, 627 F.2d 129, 135 (8th Cir. 1980).

In *Union Pacific*, although the Court found that an acquisition entity was insufficiently capitalized, it denied the plaintiff's motion to pierce the acquisition entity's corporate veil to hold an affiliated company liable for breaches of contract committed by the acquisition entity. 45 F. Supp. 2d at 708. In arriving at its holding, the Court noted that, during the negotiation of the contract in which the acquisition entity was substituted for the affiliated entity in the contract, the plaintiff knew facts sufficient to put it on notice that the acquisition entity may not have sufficient capital to pay plaintiff pursuant to the contract. *Id.* at 709. Further, the Court found that the affiliated company did not conceal the financial condition of the acquisition entity or attempt to defraud the plaintiff during the negotiation of the contract. *Id.* Because the plaintiff "entered into a consensual contractual relationship with an unfamiliar party, [the acquisition entity], without making a sufficient investigation into [that party's] ability to pay" and also "failed to sufficiently protect itself" in the contract, the Court found that the plaintiff failed to make the required "particularly strong" improper conduct showing required where the piercing claim arises from a breach of contract. *Id.* 708–09.[7]

---

[7] The only cases cited in the improper purpose section of Plaintiffs' Suggestions where the piercing claim arises directly from a breach of contract are consistent with *Union Pacific*. In *Real Est. Inv'rs Four, Inc. v. Am. Design*

As in *Union Pacific*, Plaintiffs cannot make the particularly strong showing requirement. Here, the undisputed evidence shows there was no fraud or misrepresentation by either Manish or Pushpak during the negotiation of the purported second lease amendments. Further, the undisputed evidence is clear, Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon were not unfamiliar parties to Plaintiffs, as they purportedly had a contractual relationship before the second lease amendment was negotiated. (SOF ¶¶ 5, 10, 15.) Moreover, when Plaintiffs canceled the purported first lease amendment in in May 2011, almost three months *before* the purported second lease amendment became effective, Plaintiffs believed Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon had no assets. (SOF ¶ 79.) Indeed, in June 2011, Plaintiffs' threatened to file a lawsuit against the Mitra Defendants because they allegedly "inappropriately implemented the plan of assignment of the [Camdenton, Neosho, and Mt. Vernon] Leases to shell companies to avoid liability under the Leases." (SOF ¶¶ 80–81.) Despite this threat of litigation, Plaintiffs entered into negotiations with the Mitra Defendants. During those negotiations, in June 2011, the Mitra Defendants' attorney represented to Plaintiffs that Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon "did not have any significant assets apart from the restaurants." (SOF ¶ 82.) Despite this representation, Plaintiffs continued to engage in negotiations with the Mitra Defendants and

*Group Inc.*, 46 S.W.3d 51 (Mo. App. E.D. 2001), the Court pierced an entity's corporate veil after it breached a lease agreement to hold an affiliated corporation liable for the breaches. In rejecting the affiliated corporation's argument that the plaintiff should have protected itself against default in the contract, the Court noted "[t]here was affirmative misrepresentation, failure to disclose facts which required disclosure under the lease, and undisclosed breach of other lease provisions by which the controlling corporation, which was not the lessee, occupied the premises and carried on its own business thereon." *Id.* at 59.

In *Mobius Mgt. Sys., Inc. v. W. Phys. Search, L.L.C.*, 175 S.W.3d 186 (Mo. App. E.D. 2005), the Court pierced an entity's corporate veil to hold its managing member personally liable after he signed a consent judgment on the entity's behalf but the entity failed to make any payments. *Id.* at 187–88. In piercing the entity's corporate veil, the Court noted that the managing member signed the consent judgment "one year after [the entity] had been abandoned" and, that he "admitted that, when he agreed to and signed the Consent Judgment, he knew [the entity] was unable to pay it." *Id.* at 189.

These additional misrepresentations and failure to disclose in *Real Estate Investors* and *Mobius* meet the particularly strong showing requirement of *Union Pacific*.

ultimately entered into the purported second lease amendments for the Camdenton, Neosho, and Mt. Vernon Leases with Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon. (SOF ¶89.)

The Court should deny Plaintiffs' motion to hold Manish and Pushpak personally liable for the breach of contract by Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon because Plaintiffs have not met the particularly strong improper conduct showing required by *Union Pacific*.

### B. Manish and Pushpak did not use Mitra Camdenton, Mitra Neosho, or Mitra Mt Vernon for the improper purpose of avoiding lease liability.

Plaintiffs contend they established the improper purpose element by showing Manish and Pushpak: (1) created and operated Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon as uncapitalized entities without making provisions for payment of damages, and (2) deliberately segregated the Camdenton, Neosho, and Mt. Vernon restaurants by assignments in 2010 and 2011. First, Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon were Approved Franchisees of KFC and held the restaurant's franchise agreements with KFC. (SOF ¶¶ 56, 64(a).) Therefore, the entities were undercapitalized, not uncapitalized. Next, although Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon were undercapitalized entities, Mitra Hedgehog paid their operating expenses. Thus, Manish and Pushpak did not create or operate Mitra Camdenton, Mitra Neosho, or Mitra Mt Vernon without making provisions for payments associated with the Leases. Last, the 2010 and 2011 assignments, by themselves, do not support an improper purpose showing.

### 1. Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon were financially responsible because of Mitra Hedgehog.

"The whole purpose of asking whether a[n entity] is 'properly capitalized,' is precisely to determine its 'financial responsibility.' If the [entity] is financially responsible, whether by means of insurance or otherwise, the policy behind the second part of the *Collet* test is met." *Radaszewski by Radaszewski v. Telecom Corp.*, 981 F.2d 305, 309 (8th Cir. 1992) (holding the defendant was

45

not improperly motivated in setting up an affiliated company because, although the affiliated company was undercapitalized, it was financially responsible).

The evidence in this case is that Manish and Pushpak have treated Mitra Hedgehog as the guarantor for all the payments associated with the Camdenton, Neosho, and Mt. Vernon restaurants while the Leases associated with those restaurants were assigned to Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon. (SOF ¶ 16, 62, 64(b)–(c), 109.) Indeed, for the time relevant to Plaintiffs' piercing claim, Mitra Hedgehog has paid or is continuing to pay all operating expenses at the Camdenton, Neosho, or Mt. Vernon Properties. (SOF ¶ 64(b)–(c).) This includes making all the rent payments that Plaintiffs claim were partial payments as well as property tax payments. (*Id.*) Further, Plaintiffs were fully aware that Mitra Hedgehog was the entity making the relevant payments as the rent and property tax checks were from it. (SOF ¶¶ 16, 32, 91 (Exh. 19).)

Because Mitra Hedgehog was (or still is) paying the operating expenses, Manish and Pushpak could not have established Mitra Camdenton, Mitra Neosho, or Mitra Mt Vernon either deliberately or recklessly in an effort to avoid lease obligations. *Radaszewski*, 981 F.2d at 310 ("If a parent has established a financially responsible subsidiary, then that subsidiary is not 'undercapitalized' in the only sense that matters for present purposes. That subsidiary, in other words, is not unable to meet its obligations."). Therefore, Plaintiffs are not entitled to summary judgment on their piercing claim against Manish or Pushpak.

###          2.          The assignments, by themselves, are immaterial to the improper purpose analysis as it relates to Manish and Pushpak.

Plaintiffs further argue the assignments of the Camdenton, Neosho, and Mt. Vernon Leases, first to Mitra Hedgehog in 2010, and then to Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon in 2011, show Manish and Pushpak had an improper purpose to avoid lease obligations. Specifically, Plaintiffs contend they made this showing because there was something improper

with the actual mechanics of the assignments (they were made without landlord consent and no consideration was paid) and there was an improper motive in making the assignments (they were made as part of negotiation tactics and done to limit lease liability).

As to the mechanics of the assignments, there is no dispute that the assignments were permitted under the Leases. (SOF ¶ 56.) So, the fact that Plaintiffs did not consent to the assignments does not support an improper purpose. Further, it is not uncommon for affiliated entities to make assignments unsupported by consideration. In fact, the lease and franchise assignments from Mitra Neosho and Mitra Mt Vernon to Mitra Midwest were not supported by consideration. (SOF ¶ 64(a).) Plaintiffs are not attempting to pierce Mitra Midwest's corporate veil because it is financially responsible. Therefore, the mechanics of the assignments themselves are immaterial to whether Manish or Pushpak had an improper purpose of avoiding lease liability.

As for Plaintiffs' improper motive argument, this argument turns on the financial responsibility of Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon. This is because Plaintiffs' argument is that the Leases were assigned to those entities as part of negotiation tactics to avoid lease obligations (*i.e.*, rent payments). However, if those entities were financially responsible, then the purported motives for assigning the Leases is immaterial. As detailed *supra*, those entities were financially responsible because of Mitra Hedgehog. Therefore, lease assignments to financially responsible entities do not support an improper purpose showing.

Thus, even if the Court does not apply the particularly strong improper conduct requirement, Plaintiffs have still not shown that Manish or Pushpak had an improper purpose in creating or operating Mitra Camdenton, Mitra Neosho, or Mitra Mt Vernon. As such, Plaintiffs are not entitled to summary judgment on their piercing claim.[8]

---

[8]   In the alternative, there is at a minimum, a disputed issue of material fact regarding whether Manish and Pushpak used Mitra Camdenton, Mitra Neosho, or Mitra Mt Vernon for an improper purpose of avoiding lease

**C.**     **Manish and Pushpak did not proximately cause any loss to Plaintiffs because Mitra Hedgehog has paid all operating expenses.**

As to the third element, Plaintiffs cannot establish that Manish or Pushpak's actions proximately caused their loss because all the evidence suggests that any obligations from a judgment would be met.  The modified rent payments relevant to the piercing question have been paid by Mitra Hedgehog—even years after the Camdenton restaurant closed.  (*See* SOF ¶ 91.)  Moreover, even after the Camdenton restaurant closed, Mitra Hedgehog maintained possession of the property and continued to pay rent on the property, kept insurance on the property, made routine inspections of the property, maintained the condition of the property, and paid the real estate taxes on the property.  (SOF ¶ 32.)  Although there is a dispute over whether additional rent is owed, unlike some of the cases cited by Plaintiffs, here, Plaintiffs cannot point to any evidence to suggest that a judgment would not be satisfied.  *See Mobius*, 175 S.W.3d at 187 ("Because [plaintiff] was unsuccessful in its attempts to collect this judgment from [the entity], it filed a Motion to Pierce the Corporate Veil . . . seeking to recover personally from [the entity's managing member]."); *State ex rel. Fam. Support Div. v. Steak'm Take'm LLC*, 524 S.W.3d 584, 588 (Mo. App. W.D. 2017) (noting that the restaurant had paid nothing on the withholding orders, so the Division filed a petition to pierce the corporate veil).  Therefore, Plaintiffs have not established the proximate cause element, and thus are not entitled to summary judgment on the piercing claim.

**D.**     **Plaintiffs' equitable claim of piercing the corporate veil is barred by the doctrine of laches.**

To the extent the Court views this as an equitable issue, the Court should deny Plaintiffs' motion to pierce Mitra Camdenton, Mitra Neosho, and Mitra Mt Vernon's veil to hold Manish and

---

liability.  This is because Manish and Pushpak utilized Mitra Hedgehog as the guarantor of all the payments associated with the Leases.  Therefore, at a minimum, the Court should submit the factual issue regarding the veil piercing claim to a jury.  (*See* Exh. 30 at 8–9 (Court's summary judgment order from *Wise* ruling that "the law supports submitting the factual issues regarding the veil piercing claim to a jury" when there is a genuine issue of material fact).

Pushpak personally liable. For the reasons stated in the Mitra Defendants' Suggestions in Support of their Motion for Summary Judgment (ECF No. 102 at 29–30), Plaintiffs have "slumber[ed] on their rights" and are not entitled to equitable relief.

### E. Plaintiffs' reliance on *Wise* is misplaced.

Throughout their piercing argument, Plaintiffs reference this Court's prior decision in *Wise*. Plaintiffs argue the facts of this case are "virtually identical" to *Wise*, so the Court should reach the same conclusion here. This argument is flawed because the facts of this case are distinct from those in *Wise*. Although the leases in *Wise* and in this case were acquired by the Mitra Defendants via the same Asset Purchase Agreement and assigned to special purpose entities while Mitra Hedgehog paid rent, that is where the similarities end. In *Wise*, Mitra Hedgehog stopped paying rent and vacated the restaurant with approximately twelve years remaining on the lease. (Exh. 30 at 3.) Here, Mitra Hedgehog or Mitra Midwest have continued to pay a modified amount of rent to the present date and have made all operating expense payments associated with the restaurants. (SOF ¶ 64(b)–(c).) Further, the Neosho and Mt. Vernon Leases were quickly assigned to Mitra Midwest – a financially sound entity. And, most importantly, only in this case have the plaintiffs collected modified rent payments for nearly five years without raising an issue with said payments, unilaterally put the negotiations to resolve that issue on hold for over three years, and then filed a lawsuit.

## V. CONCLUSION

For the foregoing reasons, the Mitra Defendants respectfully request the Court deny the motion for partial summary judgment filed by Plaintiffs. For the reasons discussed above and in their own summary judgment papers, the Court should instead enter summary judgment in favor of the Mitra Defendants.

Respectfully submitted,

**BERKOWITZ OLIVER LLP**

By: /s/ Nick J. Kurt
    Nick J. Kurt        MO Bar #52216
    Benjamin B. Donovan    MO Bar # 70942
    2600 Grand Boulevard, Suite 1200
    Kansas City, Missouri 64108
    Telephone: (816) 561-7007
    Facsimile: (816) 561-1888
    Email: nkurt@berkowitzoliver.com
            bdonovan@berkowitzoliver.com

**Attorneys for Mitra Defendants**

## CERTIFICATE OF SERVICE

      I hereby certify that on November 15, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Nick J. Kurt
**Attorney for Mitra Defendants**